**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

STEVEN ANTHONY WRIGHT, Civil Action No. 1:25-cv-04220-BAH

Plaintiff, *

v. *

Hon. Brendan A. Hurson

MARYLAND JUDICIARY, et al., *

Defendants. *

HD

Rcv'd by: AW

USDC- BALTIMORE
'26 JUN 30 PM12:53

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S SUPPLEMENTAL COMPLAINT**
**(Fed. R. Civ. P. 15(d))**

## NATURE OF THIS SUPPLEMENTAL PLEADING

**95.** This is a supplemental complaint under Federal Rule of Civil Procedure 15(d). It sets out transactions, occurrences, and events that happened after the date of the operative First Amended Complaint (ECF 24, filed March 11, 2026). It supplements, and does not supersede or replace, the First Amended Complaint, which remains the operative pleading as to all matters it pleads. Plaintiff incorporates the First Amended Complaint by reference and adds the allegations, parties, and claims below to address the Defendants' retaliatory conduct from May and June 2026.

**96.** Plaintiff brings this supplement to place the post-filing conduct before the Court as pleaded claims, to add the individual official who directed that conduct, and to assert the additional causes of action that the post-filing conduct supports. The new matter arises from the same employment relationship and the same protected activity (Plaintiff's requests for reasonable accommodation under the Americans with Disabilities Act and the filing and prosecution of this action) already at issue in the First Amended Complaint.

## SUPPLEMENTAL PARTIES

**97.** Defendant LIONEL MOORE is, and at all relevant times was, the Court Administrator of the Circuit Court for Baltimore City, with supervisory authority over the Family Division. He is sued in his individual capacity for damages and in his official capacity for prospective injunctive relief. He acted under color of state law.

**98.** All Defendants named in the First Amended Complaint remain Defendants. The Circuit Court for Baltimore City and the Administrative Office of the Courts / Maryland Judiciary are the entity employers; the Mayor and City Council of Baltimore City is the joint employer for human-resources, payroll, classification, and benefits functions and has judicially admitted joint-employer status for compensation claims arising from Plaintiff's employment, which began on his May 29, 2025 hire date (ECF 34-1; ECF 34-2 paragraph 5; see also ECF 41 (admitting joint-employer status for compensation claims, using the date May 30, 2025, a one-day difference the City itself concedes is immaterial)).

## SUPPLEMENTAL FACTUAL ALLEGATIONS

**99.** The granted accommodation. On February 18, 2026, Deputy Court Administrator and ADA Coordinator Sophia Sanders informed Plaintiff in writing that Administrative Judge Carrion had granted his ADA accommodation for receiving written instructions for tasks that deviate from governing policies, pertaining to "(1) Situations involving core validity requirements, such as signatures and authorization, specifically the signature requirements for pro se litigants, and (2) Any additional situations involving core validity requirements, which will be brought to the supervisor's attention, to request written instructions." That written grant, quoted above from Sanders's February 18, 2026 communication, expressly covered the signature requirements for filings, the subject on which Plaintiff was later disciplined. Defendant Banister separately confirmed under oath that Plaintiff's request for written instructions on tasks involving core validity requirements was granted. (ECF 66-4, Banister Declaration paragraph 8.)

**100.** The accommodation request and Defendant Banister's response. On January 16, 2026, Plaintiff submitted a written request for reasonable accommodation grounded in his diagnosed conditions. The State filed that request as Attachment B to Defendant Banister's declaration. Defendant Banister swears that her response to the request was to advise Plaintiff to contact Human Resources. (ECF 66-4, Banister Declaration paragraph 7.) Her deflection of the request to Human Resources, rather than engaging Plaintiff in the interactive process, is part of the conduct underlying the interference and retaliation claims below.

**101.** Federal financial assistance. The Family Division of the Circuit Court for Baltimore City receives federal financial assistance, including Jurisdictional Family Services grant funds, records of which the Maryland Judiciary produced to Plaintiff on June 5, 2026. The Entity Defendants have therefore waived sovereign immunity as to claims under Section 504 of the Rehabilitation Act. 42 U.S.C. Section 2000d-7; Constantine v. Rectors and Visitors of George Mason University, 411 F.3d 474 (4th Cir. 2005).

**102.** The May 7, 2026 closure of the interactive-process records track. On May 7, 2026, the Human Resources Officer notified Plaintiff that no additional employment records would be provided, closing the records track Plaintiff had identified as necessary to the interactive process

under the ADA. This occurred seven days before Plaintiff's May 14, 2026 disability-related leave and thirteen days before the May 20, 2026 events described below.

**103.** Continued duty stripping. Continuing the duty-stripping pled in the First Amended Complaint, on or about April 10, 2026 and into May 2026 the Defendants further removed the substantive duties of Plaintiff's Administrative Paralegal position, reducing his role to clerical tasks, while Plaintiff's January 16, 2026 written ADA accommodation requests remained pending and unresolved.

**104.** Protected disclosure to the press. On May 13, 2026, Plaintiff disclosed in writing to Dylan Segelbaum, a reporter for the Baltimore Banner, that domestic violence petitioners in the Family Division were being compelled by staff, under unauthorized local directives, to list all of their children contrary to the statewide Petition for Protection form and the governing statute, in a manner that could trigger Department of Human Services involvement without the petitioners' informed consent, and that the institution had responded to his internal reports by reassigning him. The disclosure identified no individual petitioner, child, or case; it concerned the integrity of the court's protective-order process and the rights of self-represented litigants. Within days, Plaintiff was removed from the operational group chat on May 18, 2026 and subjected to the May 20, 2026 escalation described below.

**105.** The May 20, 2026 Letter of Warning, removal, and relocation. On May 20, 2026, within approximately ten minutes after a non-management staff member left the office to file a complaint with Human Resources, Defendant R. Suzanne Banister left the Family Division office, a meeting was convened in Defendant Banister's office, a uniformed, armed sheriff's deputy was stationed at the front of the office where staff pass to enter and leave, and Court Administrator Moore and the deputy escorted Plaintiff out of the office in full view of the non-management staff. Plaintiff was issued a Letter of Warning and relocated away from the office and from the percipient witnesses to Room 302 in the criminal division administration, a division in which Plaintiff has no role or duties, while management retained continuous access to those witnesses. Although the institution had deployed a uniformed, armed sheriff's deputy in connection with the removal and treated Plaintiff as requiring that deployment, it relocated him into a shared office assigned to two of its own female employees, a placement inconsistent with any genuine concern that Plaintiff posed a threat.

**106.** The illusory reinstatement and the no-work gap. The May 20, 2026 Letter of Warning listed several administrative duties as reinstated, but those duties required Plaintiff's presence in the Family Division office from which he had just been removed and relocated, so they could not be performed. Plaintiff had no assigned work from May 20, 2026 until June 1, 2026. On or about May 28, 2026, Court Administrator Moore came to Plaintiff's relocated workspace and confirmed that the absence of assigned work was what he had come to discuss.

**107.** The June 8, 2026 Letter of Warning and the fitness-for-duty demand. On June 8, 2026, at an in-person meeting attended by Defendant Banister, Court Administrator Moore, and Plaintiff, the Defendants issued a Second Letter of Warning that threatened termination. When Plaintiff stated that his granted accommodation covered the subject of the discipline and asked why the institution was not following the administrative judge's directive, Court Administrator Moore refused to provide the written guidance the granted accommodation entitled Plaintiff to receive, stated that the letter "is not an adverse action," stated that if Plaintiff could not accept supervisory and judicial authority he might need to find other employment, and raised the possibility of a fitness-for-duty examination. The Defendants had no objective evidence that Plaintiff was unable to perform the essential functions of his position or posed any direct threat; the discussion concerned Plaintiff's insistence that instructions comply with the Maryland Rules and his disability-related need to confirm that compliance.

**108.** Unlawful medical inquiry. The Defendants made a disability-related inquiry of Plaintiff, demanding that he justify his disability-driven questions about whether instructions complied with the governing rules and that he accept supervisory and judicial authority on that subject, that was not job-related or consistent with business necessity within the meaning of 42 U.S.C. Section 12112(d)(4)(A). The Defendants further raised and threatened a fitness-for-duty examination. Both the inquiry and the threatened examination were made in response to Plaintiff's accommodation advocacy and during the pendency of this action, without any reliable, objective basis to believe Plaintiff could not perform his job or posed a direct threat. As a result, Plaintiff experienced stress-related symptoms that contributed to a documented worsening of his treated psychiatric conditions, including an adjustment to his prescribed medication.

**109.** Witness intimidation. On May 20, 2026, in full view of the non-management Family Division staff, Court Administrator Moore and a uniformed, armed sheriff's deputy escorted Plaintiff from the office and relocated him; the June 8, 2026 Second Letter of Warning admits in writing that the institution had a deputy standing by. At least one member of the non-management staff is now unwilling to come forward in support of Plaintiff for fear of the same treatment. The non-management staff are percipient witnesses whose testimony is material to this federal action. Plaintiff had been removed from the operational Family Division group chat on or about May 18, 2026, two days before the May 20 meeting, isolating him from those witnesses while management retained access to them. On information and belief, after the May 20, 2026 removal, a member of Family Division management, Shannon Thomas, who was not present at the meeting, circulated to office staff an account describing Plaintiff as aggressive and other staff as frightened, which a staff member who was present did not corroborate. The escort and relocation, the deployment of the uniformed, armed deputy in front of the witnesses, and the circulation of that account had the effect of deterring those witnesses, and Plaintiff, from participating freely in this federal proceeding.

**110.** Defendant Banister initiated and approved the duty stripping and signed both the May 20, 2026 and June 8, 2026 Letters of Warning. Court Administrator Moore presided over the May 20

and June 8, 2026 meetings, directed and participated in the May 20 escort and relocation, and made the statements described above. The conduct was taken because of Plaintiff's protected activity, including his requests for reasonable accommodation and the filing and prosecution of this action, and was carried out by the Defendants in the course of and after the filing of this lawsuit.

**111.** The grievance process and the May 20, 2026 timekeeping directive. On April 16, 2026, Plaintiff filed a formal internal grievance concerning Human Resources employee Pamela Jackson, which Court Administrator Moore acknowledged and referred for investigation the same day. No investigation followed for thirty-six days; the institution first responded on May 22, 2026, the day after Plaintiff filed his Motion for a Preliminary Injunction. On May 20, 2026, approximately two minutes before Plaintiff received the invitation to the disciplinary meeting, Ms. Jackson, the same employee who was the subject of the grievance, sent Plaintiff a high-importance, read-receipt email directing him to alter his May 14, 2026 disability-related leave record, and that employee then attended the disciplinary meeting. The timing and sequence of these events are evidence that the institution's internal processes functioned not as a neutral avenue but as part of the retaliatory and interfering course of conduct.

**112.** Administrative exhaustion. Plaintiff's claims under Section 504 of the Rehabilitation Act require no administrative exhaustion. To the extent any claim in this supplement under the Americans with Disabilities Act is subject to a charge-filing requirement, the post-filing conduct alleged here is reasonably related to, and grew out of, the accommodation dispute and the retaliation that were the subject of EEOC Charge No. 531-2025-03965 and of the prosecution of this action, and need not be separately exhausted. Jones v. Calvert Group, Ltd., 551 F.3d 297, 303-04 (4th Cir. 2009) (reasonably-related retaliation may be raised first in federal court), abrogated on other grounds by Fort Bend County v. Davis, 587 U.S. 541 (2019) (the charge-filing requirement is a non-jurisdictional claim-processing rule).

## COUNT XIV - FIRST AMENDMENT RETALIATION (42 U.S.C. Section 1983)

***(Against Defendants Moore and Banister in their individual capacities for damages and their official capacities for prospective relief)***

**113.** Plaintiff incorporates the foregoing. Plaintiff's primary protected activity is his May 13, 2026 disclosure to the press. On that date, Plaintiff spoke as a citizen to a reporter for the Baltimore Banner on a matter of public concern, reporting that the Family Division was compelling domestic violence petitioners to provide information the statewide Petition for Protection form and the governing statute do not require, in a manner that could trigger Department of Human Services involvement without the petitioners' consent, under directives not properly authorized. A public employee's speech to an outside reporter, made as a citizen and not pursuant to any official duty or chain of command, on a matter of public concern, is protected by the Free Speech Clause, even when it draws on information the employee learned through his employment. Pickering v. Board of Education, 391 U.S. 563 (1968); Lane v. Franks,

573 U.S. 228 (2014). After and because of that protected speech, Defendants Moore and Banister subjected Plaintiff to materially adverse actions that would deter a person of ordinary firmness, including the duty stripping, the May 20 and June 8, 2026 Letters of Warning, the sheriff-deputy escort and relocation, the termination threat, the fitness-for-duty demand, and the find-other-employment statement; the May 18, 2026 removal from the operational group chat and the May 20, 2026 escalation followed within days of the May 13 press disclosure. The protected speech was a substantial or motivating factor in those actions, as shown by the timing and by the June 8, 2026 statements made in the course of the discipline. In the alternative, the filing and prosecution of this lawsuit is petitioning activity protected by the Petition Clause, and that petition addresses a matter of public concern only insofar as it concerns the Family Division's division-wide systemic intake and signature-validation practices affecting self-represented litigants across the division; Plaintiff does not rest the Petition-Clause branch on his personal employment grievance, and disclaims reliance on that personal grievance as the basis of this count. Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011). Defendants Moore and Banister are liable in their individual capacities for damages and, under Ex parte Young, 209 U.S. 123 (1908), in their official capacities for prospective injunctive relief only; Plaintiff does not seek official-capacity damages.

**COUNT XV - UNLAWFUL DISABILITY-RELATED INQUIRY (42 U.S.C. Section 12112(d)(4)(A))**

***(ADA against the named officials in their official capacities; Section 504 of the Rehabilitation Act against the Entity Defendants)***

**114.** Plaintiff incorporates the foregoing. The Defendants made a disability-related inquiry of Plaintiff that was not job-related and consistent with business necessity, in violation of 42 U.S.C. Section 12112(d)(4)(A). The inquiry was the Defendants' demand that Plaintiff justify his disability-driven questions about whether his instructions complied with the governing rules and that he accept supervisory and judicial authority on that subject, made in response to his accommodation advocacy and during the pendency of this action. The Defendants had no reasonable, objective basis to believe that Plaintiff was unable to perform the essential functions of his position or posed a direct threat. See EEOC v. McLeod Health, Inc., 914 F.3d 876 (4th Cir. 2019). The Defendants' separate act of raising and threatening a fitness-for-duty examination, while not itself the examination the statute also reaches, is pleaded as evidence of the Defendants' discriminatory animus and supports the interference claim in Count XVI. Plaintiff suffered tangible injury as alleged above. Section 12112(d)(4)(A) protects all employees and does not require proof that Plaintiff is an individual with a disability. The same conduct violates Section 504 of the Rehabilitation Act, under which the Entity Defendants accept federal financial assistance and have waived immunity. As against the named officials in their official capacities, Plaintiff seeks prospective injunctive relief under the ADA pursuant to Ex parte Young, 209 U.S. 123 (1908), and Garrett, 531 U.S. 356, 374 n.9 (2001); as against the State Entity Defendants, Plaintiff seeks make-whole equitable and economic relief under Section 504. The stress-related

symptoms alleged above are pleaded as evidence of the adverse action, not as a basis for emotional-distress damages under Section 504. The Eleventh Amendment limits the ADA Title I damages remedy against the State entities, which is why no ADA damages relief is sought against them. Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001).

**COUNT XVI - INTERFERENCE WITH ADA RIGHTS (42 U.S.C. Section 12203(b))**
***(ADA against the named officials in their official capacities; Section 504 against the Entity Defendants)***

**115.** Plaintiff incorporates the foregoing. The Defendants coerced, intimidated, threatened, and interfered with Plaintiff in the exercise and enjoyment of his rights under the ADA, including his right to request and rely upon reasonable accommodations and to participate in the interactive process, in violation of 42 U.S.C. Section 12203(b). The interference includes the cease-and-desist directive, discipline on the subject of the granted accommodation, the disability-related inquiry and fitness-for-duty demand, and the termination threat delivered while the accommodation requests were pending. Defendant Banister's deflection of Plaintiff's accommodation request to Human Resources, rather than engaging in the interactive process, is further evidence of the interference and supports the inference of pretext. Jacobs v. N.C. Administrative Office of the Courts, 780 F.3d 562 (4th Cir. 2015). The same conduct violates Section 504 of the Rehabilitation Act, and that Section 504 violation occurred because of Plaintiff's disability and his exercise of disability-accommodation rights. As against the named officials in their official capacities, Plaintiff seeks prospective injunctive relief under the ADA pursuant to Ex parte Young; as against the State Entity Defendants, Plaintiff seeks make-whole equitable and economic relief under Section 504. The Eleventh Amendment limits the ADA Title I damages remedy against those entities, which is why no ADA damages relief is sought against them.

**COUNT XVII - RETALIATION (Section 504 of the Rehabilitation Act)**
***(Against the Entity Defendants - post-filing conduct)***

**116.** Plaintiff incorporates the foregoing. Plaintiff engaged in protected activity under Section 504, namely his requests for reasonable accommodation and his participation in the interactive process under the Rehabilitation Act. The Entity Defendants, which accept federal financial assistance and have waived sovereign immunity as to Section 504, retaliated against Plaintiff because of that disability-accommodation activity, through the May-June 2026 adverse actions described above. That disability-accommodation activity was the but-for cause of the adverse actions. Plaintiff rests this Section 504 count on his disability and disability-accommodation activity alone; his press disclosure and the filing of this action are pleaded as protected activity only under his First Amendment and ADA-retaliation theories, not as the basis of this Section 504 count. Plaintiff seeks make-whole equitable relief, restoration of his duties and access, and declaratory and prospective injunctive relief under Section 504. The stress-related symptoms

alleged above are pleaded as evidence of the materially adverse character of the Defendants' actions, not as a basis for emotional-distress damages under Section 504.

## PRAYER FOR RELIEF

**117.** WHEREFORE, in addition to the relief requested in the First Amended Complaint, Plaintiff respectfully requests that the Court grant the following relief, each item severable from the others: (a) a declaration that the Defendants' post-filing conduct violated the ADA, Section 504, and the First Amendment; (b) a prohibitory injunction barring the Defendants from further retaliation and interference and from requiring any medical or fitness-for-duty examination absent a showing of job-relatedness and business necessity; (c) to the extent the Court grants prospective relief, an order under Ex parte Young directing the official-capacity Defendants to restore Plaintiff's duties and access and to complete the interactive process; (d) make-whole equitable and declaratory relief under Section 504; (e) compensatory and, where available, punitive damages against the individual Defendants under Section 1983; and (f) such further relief as is just. Plaintiff does not seek official-capacity damages.

Respectfully submitted,

Steven Wright
_______________________________
Steven Anthony Wright, Pro Se
(570) 494-8422
stevendiet@gmail.com
Dated: 6/30, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date written below I filed the foregoing in person with the Clerk of the Court, and that the Court's CM/ECF system will transmit a Notice of Electronic Filing to all counsel of record registered with the system, including Bryan A. Upshur, Assistant Attorney General, Office of the Attorney General of Maryland, and Elisabeth B. Hofmann, Baltimore City Department of Law, constituting service under Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 102.1.c.

Steven Wright
_______________________________
Steven Anthony Wright, Pro Se
Dated: 6/30, 2026