**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| STEVEN ANTHONY WRIGHT, | | Civil Action No. 1:25-cv-04220-BAH |
| Plaintiff, | * | |
| v. | * | Hon. Brendan A. Hurson |
| MARYLAND JUDICIARY, et al., | * | |
| Defendants. | * | |
| | * | |

HD
Rcv'd by: [signature]

USDC- BALTIMORE
'26 JUN 30 PM12:50

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION (ECF 44)**

**INTRODUCTION**

Plaintiff Steven Anthony Wright submits this reply in support of his Motion for Preliminary Injunction (ECF 44), and in response to the State Defendants' omnibus opposition (ECF 65) as to that motion. The opposition rests on the premise that this Court resolved these questions at ECF 23. It did not. ECF 23 ruled on the record then before the Court, which predated the post-filing retaliation now at issue, including the June 8, 2026 Second Letter of Warning (ECF 57, Exhibit V) and the June 22, 2026 meeting. The opposition also misstates the law in two respects: it treats the accommodation claim as a bare interactive-process theory when the claim is the denial of accommodations, and it invokes sovereign immunity as though it bars prospective relief, which binding precedent forecloses. The core sequence is simple: the institution granted Plaintiff an accommodation covering the signature requirements for pro se litigants, then disciplined him on that very subject while his other accommodation requests went unanswered.

## ARGUMENT

### I. ECF 23 Ruled on the Then-Existing Record and Does Not Foreclose This Motion.

ECF 23 denied a renewed motion for a temporary restraining order and preliminary injunction (ECF 19) on the record then before the Court. The decisive change since then is the June 8, 2026 Letter of Warning, in which the institution admitted in writing that it stripped Plaintiff's duties while expressly referencing his expressed anxiety and while awaiting Human Resources guidance on his requested accommodations (Part II.A). That admission supplies the precise element ECF 23 found missing: a showing of discriminatory and retaliatory motive in the employer's own words, rather than the temporal proximity the Court held insufficient (ECF 23 at 9). Plaintiff does not ask the Court to revisit its ECF 23 rulings on the record then before it; he asks the Court to rule on a materially changed record. Interlocutory orders remain subject to revision, Fed. R. Civ. P. 54(b), and the law-of-the-case doctrine reaches only issues actually decided on the record then presented. The renewed relief is anchored to the operative pleading, which answers the Court's observation that the earlier interim relief was "divorced from the operative complaint" (ECF 23 at 1; see ECF 12): the post-filing duty stripping, interference, and refusal to complete the interactive process fall within the failure-to-accommodate, ADA retaliation, and Section 12203(b) interference claims pleaded in the operative First Amended Complaint (ECF 24), as a continuing course of the same conduct, and Federal Rule of Civil Procedure 65 permits prospective relief on a developing record.

Nor does the State's separately filed motion to dismiss (ECF 66) counsel waiting. That motion tests the sufficiency of the pleadings; this Motion rests on a developed record of post-filing conduct the motion to dismiss does not address, and the ongoing retaliation does not abate while a pleadings motion is briefed. The prospective official-capacity relief sought reaches

conduct neither sovereign immunity nor the Commissioner-era Release touches. The two are independent, and dismissal briefing is no reason to defer the injunction.

**II. The Preliminary-Injunction Factors Favor Relief.**

**A. The institution's interference with Plaintiff's ADA rights independently shows likely success and escapes the two holdings the State invokes.**

Plaintiff now makes, on the developed record, the clear showing of likely success the Court found absent on the prior record; the written admissions set out below are that showing. One theory independently establishes a likelihood of success because it escapes both holdings the State invokes from ECF 23. The ADA's interference provision makes it unlawful to "coerce, intimidate, threaten, or interfere with" any individual "in the exercise or enjoyment of ... any right granted or protected by" the Act, 42 U.S.C. Section 12203(b), and makes the Title I remedies available for its violation, id. Section 12203(c). The right Plaintiff was exercising is his right to a reasonable accommodation and to the interactive process the statute requires. 42 U.S.C. Section 12112(b)(5)(A). By its text, Section 12203(b) reaches any effort to "coerce, intimidate, threaten, or interfere with" an individual in the exercise of an ADA-protected right; on that broad statutory language, an interference violation does not depend on a completed interactive process, on a temporal-proximity inference, or on an ultimate adverse employment action. Interference is a distinct cause of action, separate from retaliation, and is not surplusage. Menoken v. Dhillon, 975 F.3d 1, 8 (D.C. Cir. 2020). The holdings that an interactive-process theory alone (ECF 23 at 8) and temporal proximity alone (ECF 23 at 9) do not suffice address the failure-to-accommodate and retaliation theories, not this distinct statutory interference claim. The institution admitted the interference in its own writing. The June 8, 2026 Second Letter of Warning states: "In full understanding of your expressed anxiety and refusing to complete your job duties in the way you

have been instructed, I began removing certain duties from your tasks while waiting for Human Resources to provide guidance to me regarding how to proceed with your requested accommodations." ECF 57, Ex. V. Removing an employee's duties while his accommodation request is pending, and disciplining him on the very subject the granted accommodation covers, is evidence of interference with the exercise of an ADA-protected right. That admission, in the institution's own words, supplies the clear showing the prior record lacked.

**B. The claim is the denial of a reasonable accommodation, not a freestanding interactive-process theory.**

The opposition repeats that "a failure to engage in the interactive process is not, in and of itself, a violation" of the ADA. ECF 23 at 8; see ECF 65 at 3. True, but beside the point. The Fourth Circuit's failure-to-accommodate test ends in the employer's refusal: the plaintiff must show a disability, employer notice, that he could perform the essential functions with accommodation, and "that the employer refused to make such accommodations." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Where the employer causes the breakdown of the interactive process, that breakdown is itself evidence of refusal to accommodate, the final element of the Wilson test. Wilson, 717 F.3d at 345. Responsibility for a failed process turns on which party caused the breakdown; unlike the employee in Tarquinio, who declined to provide the medical documentation his employer requested, Plaintiff identified specific limitations and it was the institution that caused the breakdown. Tarquinio v. Johns Hopkins Univ. Applied Physics Lab, No. 24-1432 (4th Cir. June 25, 2025). Even on the institution's own narrowed account of the grant, the accommodation it granted on February 18, 2026 expressly covered "signature requirements for pro se litigants" (Second Suppl. Decl. paras 2-3), a grant reported to this Court at ECF 11; it then provided no written instructions on that topic; and in the June 8,

2026 letter it disciplined Plaintiff for his interpretation of the very signature requirement the granted accommodation covered. A written grant, an operational non-performance, and discipline on the granted topic is itself evidence of the refusal. The refusal here is direct, not inferred: at the June 8, 2026 meeting Court Administrator Moore expressly refused to provide Plaintiff the written guidance the granted accommodation entitled him to receive, told him to research it in public records himself, and said he would not continue to have staff address the request (Second Suppl. Decl. para 16). The June 8 letter's admitted affirmative removal of duties is itself evidence of refusal, and the institution treated Accommodations #2 through #4 as "outside the scope of the ADA" without engaging them (id. para 3). The institution's later willingness, at the June 22, 2026 meeting, to discuss adding duties back does not undo a refusal already completed; an employer does not cure a failure to accommodate by negotiating after disciplining the employee on the accommodated subject. A state judiciary's failure to act on an accommodation request states a claim and can defeat summary judgment. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 575-81 (4th Cir. 2015). To the extent the opposition implies Plaintiff is not a qualified individual, he performed the essential functions of Administrative Paralegal from May 29, 2025 forward with no identified deficiency until the institution began stripping his duties, and an accommodation that lets an employee do the job correctly is evidence that he is qualified, not a concession that he cannot perform. The Rehabilitation Act reaches this state-judiciary employer directly. Reyazuddin v. Montgomery County, 789 F.3d 407 (4th Cir. 2015) (reversing summary judgment for the public employer on an employee's Section 504 failure-to-accommodate claim).

**C. The retaliation showing now rests on more than temporal proximity.**

ECF 23 found that temporal proximity alone is insufficient to prove causation. ECF 23 at 9. Plaintiff no longer relies on proximity. Even were proximity all that were shown, establishing a causal relationship at the prima facie stage is not an onerous burden. Strothers v. City of Laurel, 895 F.3d 317, 327 (4th Cir. 2018). His January 16, 2026 accommodation request and his reliance on the accommodation the institution granted are protected activity. Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001) (reversing summary judgment and treating a request for accommodation as protected activity under the ADA). The same June 8 admission quoted in Part II.A supplies the institution's retaliatory motive in its own words, and it establishes retaliation on either reading, because neither reading describes a lawful basis for stripping his duties. If the operative reason is Plaintiff's "expressed anxiety," the stripping was disability-based. If, as the State will urge, the operative reason is his "refusing to complete [his] job duties in the way [he had] been instructed," that refusal was his insistence on performing the work consistent with the Maryland Rules and the accommodation the institution had granted, which is protected conduct; and the letter's own next clause, that the removal occurred "while waiting for Human Resources to provide guidance ... regarding [Plaintiff's] requested accommodations," ties the action to the pending accommodation. Where an employer's stated reasons are its own contemporaneous words, pretext may be inferred. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

The institution's own writing also impeaches the basis it asserted for disciplining Plaintiff, a further indicator of pretext. Reeves, 530 U.S. at 147. The June 8 letter recites a Rules-Committee-confirmed position that "/s/" signatures were acceptable and brands Plaintiff's contrary reading "erroneous." But Defendant Banister's own January 14, 2026 email to the Clerk's Office stated that Administrative Judge Middleton "is going to clarify" the digital-

signature question "per the requirements under the Maryland Rules," in the future tense, and the specific Rules-Committee directive the letter invokes was not produced to Plaintiff despite his requests. The institution's own records are difficult to reconcile: it now invokes a Rules-Committee directive it says it had already obtained, yet its own contemporaneous email shows the question still remained for the Administrative Judge to clarify. The rule text moreover vindicated Plaintiff: Maryland Rule 20-107(e) requires that documents signed under oath, including affidavits of service, be hand-signed, so Plaintiff's rejection of typed-signature affidavits of service was rule-bound, not erroneous. Disciplining an employee on a stated basis the institution's own records contradict supports an inference of pretext. See Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 647 (4th Cir. 2002) (an employer's "inconsistent post-hoc explanations for its employment decisions" are probative of pretext).

A further fact reinforces the inference and is consistent with an effort to move Plaintiff out rather than to manage his performance: the May 20, 2026 letter listed six duties as "reinstated" the same afternoon Plaintiff was escorted from the office and relocated away from where they must be performed, with no queue work assigned until June 1, 2026 (Second Suppl. Decl. para 7). That pattern is evidence of pretext, not legitimate workforce planning. Reeves, 530 U.S. at 147.

Plaintiff was never issued formal disciplinary action or documented concerns across his employment, as his sworn EEOC Charge (No. 531-2025-03965, filed June 10, 2025) attests: "[t]o the best of [his] knowledge, [he] was never issued any formal disciplinary action or documented concerns throughout [his] employment." The Charge further notes that, in his prior role as a District Court Commissioner, "Commissioners do not receive formal performance evaluations." The absence of any contemporaneous documentation supporting the institution's

asserted performance rationale itself supports an inference of pretext. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 576 (4th Cir. 2015). At the May 20, 2026 meeting, Court Administrator Moore stated that Plaintiff's duties "should not have been removed" (Second Suppl. Decl. para 8), and the institution stated the duties would be reinstated. Moore holds supervisory authority over the Family Division and the personnel decisions at issue and chaired the disciplinary meetings, so his statement falls within the scope of his agency for the entity State Defendants and is their party admission under Federal Rule of Evidence 801(d)(2)(D). Defendant Banister's own June 1, 2026 email confirms the duties were not reinstated, advising only that "[m]ore tasks will be added to your workload as written instructions are completed for each task" ("Queue tasks - starting June 1" email, June 1, 2026). The May 20 letter's stated reinstatement of duties was thus illusory.

Defendants also mistake the adverse-action standard. For the ADA discrimination and accommodation claims, an employee need show only some disadvantageous change in the terms or conditions of employment, not a significant or material one. Muldrow v. City of St. Louis, 601 U.S. 346, 354-55 (2024). The Fourth Circuit has applied that standard to a disability reassignment that left pay and benefits unchanged, holding it could still be adverse. Herkert v. Bisignano, No. 24-1420 (4th Cir. Aug. 14, 2025). The duty stripping here, which removed Plaintiff's substantive responsibilities, is at least that disadvantageous. For the retaliation claim, the standard is the materially-adverse formulation, which the duty stripping, the Letters of Warning, and the termination threat readily meet. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). The same standard reaches the June 8, 2026 meeting, where Court Administrator Moore told Plaintiff he "might need to find other employment" and raised a fitness-for-duty examination (Second Suppl. Decl. para 16); that suggestion, delivered during the

pendency of his retaliation motion, is itself materially adverse under Burlington Northern and is a party admission of the entity State Defendants for the same agency reasons set out above. Defendant Banister initiated and approved the duty stripping and signed both the May 20, 2026 and June 8, 2026 Letters of Warning; because the supervisor who held the animus drove the adverse action, it is attributable to the State Defendants. Staub v. Proctor Hospital, 562 U.S. 411, 422 (2011).

At the June 22, 2026 meeting the institution agreed to limited operational adjustments: that Plaintiff continue his work with Defendant Banister's initials placed on completed tasks, and that duties would be added back "in steps as the queue is cleared" (Second Suppl. Decl. para 11). Those concessions show the relief is needed, not that the dispute has resolved: the listed duties remain stripped, the adjustments are unwritten, unilateral, and revocable, and a defendant's voluntary cessation does not moot injunctive relief unless the defendant shows the conduct cannot reasonably be expected to recur, a burden Defendants have not attempted to carry. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). The June 8 letter and its termination threat remain in force; until the June 22 statements are operationalized and stable, prospective protection remains necessary.

**D. The June 8, 2026 Second Letter of Warning is itself post-filing retaliation.**

While this Motion was pending, Defendant Banister issued Plaintiff a six-page Second Letter of Warning, signed by Banister and expressly threatening "termination of employment with the Circuit Court for Baltimore City." ECF 57, Ex. V. The letter supplies causation beyond temporal proximity from its own dates. Every incident it recites occurred on or before May 20, 2026, the latest being the May 20 meeting itself, and its stated basis is Plaintiff's conduct "over the past five months," a span that closed on May 20. The institution had this entire set of

incidents in hand when it issued the first Letter of Warning on May 20; nineteen days later it issued a second warning escalating to a termination threat, assembled from the same closed set, with no new disciplinable conduct in between. The inference rests not on the letter being drafted from the Motion but on the structure of that discipline, which is not ordinary progressive discipline. It issued during the pendency of Plaintiff's protected motion, days after the Court directed transmission of the sealed papers to counsel (ECF 52 paragraph 2(a); ECF 57 paragraphs 6-7). The escalation of a closed, months-old disciplinary file at that moment supports a retaliatory inference. The letter independently disciplines Plaintiff for stating he would "continue to perform [his] assigned duties consistent with the statewide form, the governing statutes, and the written accommodation currently in effect," and for requesting an agenda and representation before a disciplinary meeting; treating reliance on an approved accommodation and a request for representation as insubordination is retaliation, not management. Its recitals are contradicted by the institution's own contemporaneous records (Second Suppl. Decl. paras 2-7, 11) and are internally inconsistent: the letter recasts Plaintiff's request for "48 hours" to review the May 20 letter as a refusal to sign it, but asking for time to review is not a refusal, and the May 20 letter bears no employee signature line for him to sign (ECF 44, Ex. A). The Court need not resolve those disputes: a formal step threatening termination, aimed at Plaintiff's accommodation-related communications and his request for representation, is materially adverse regardless of the friction the letter recounts.

**E. Sovereign immunity does not bar prospective injunctive relief.**

The opposition invokes the Court's observation that "questions of sovereign immunity would prevent a finding of likelihood of success." ECF 65 at 4; ECF 23 at 9 n.6. But those authorities do not foreclose prospective official-capacity relief; the Eleventh Amendment bars

retrospective and monetary relief, not an order to cease an ongoing violation of federal law. Plaintiff's ADA prospective relief is directed at the named officials in their official capacities, including Defendants Banister, Sanders, Carrion, and Moore, under Ex parte Young; relief running against the entity State Defendants themselves Plaintiff presses under Section 504, as set out below. Each item of relief Plaintiff seeks is tied to an ongoing violation and asks the named State officials to stop it, not to perform a discrete past obligation: the June 8 termination threat remains in force, the duty stripping continues, and Accommodations #2 through #4 remain unanswered. The requested order, cessation of the retaliation and completion of the interactive process the institution left unfinished, is therefore prospective cessation of continuing conduct, not retrospective specific performance, and Plaintiff seeks no Title I damages from the State. Under Ex parte Young, 209 U.S. 123 (1908), and Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645 (2002), the Eleventh Amendment does not bar a suit that alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, even where official-capacity damages would be barred. The Supreme Court confirmed this precise point for Title I in the very decision the State relies on for immunity: although Title I does not abrogate state immunity for damages, its standards "can be enforced ... by private individuals in actions for injunctive relief under Ex parte Young." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001). McCray held that the Eleventh Amendment bars an ADA Title I claim against a state agency. McCray v. Md. Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014). Plaintiff does not seek Title I damages from the State; he seeks prospective official-capacity relief under Ex parte Young, which McCray did not address. The Court's reference to Tall (ECF 23 at 9 n.6) does not change the analysis, and Plaintiff does not rely on it for the contrary proposition. Separately, to the extent the Judiciary accepts federal

financial assistance, it has waived immunity as to Plaintiff's Section 504 claim, 42 U.S.C. Section 2000d-7; Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 490-96 (4th Cir. 2005); in all events, Ex parte Young independently permits the prospective relief sought.

**F. Plaintiff faces irreparable harm that is not financial.**

ECF 23 addressed only the reduced-pay harm, observing that financial harms ordinarily are not irreparable. ECF 23 at 9. The harms Plaintiff presses here are not that reduced-pay harm; they are present injuries no later award undoes, whatever damages may ultimately be available against the State. The retaliation is producing concrete physical and psychological harm now: weight loss, difficulty eating, and inability to sleep, and the aggravation of Plaintiff's diagnosed Post-Traumatic Stress Disorder and Autism Spectrum Disorder, worsened by the unremedied sensory conditions of the relocation site, which contributed to a documented worsening of his treated psychiatric conditions, including an adjustment to his prescribed medication (Second Suppl. Decl. paras 4, 7; ECF 44 Decl. para 3). The relocation independently inflicts a non-economic injury no award restores: by isolating Plaintiff, whose primary social participation was his work, in an office where he has no one to speak with during the workday, it deprives him daily of his sole means of social connection (id. para 7). These daily, accruing harms to Plaintiff's health are not compensable in damages against an immune State. The disciplinary record compounds them: the May 20 and June 8 Letters of Warning build the for-cause file the institution would use to separate Plaintiff, and a live termination threat held over him during the pendency of his retaliation motion is an ongoing injury that becomes irreversible if a termination issues on that file. Roe v. U.S. Dep't of Defense, 947 F.3d 207, 228 (4th Cir. 2020) (finding irreparable harm where the discharge could not be remedied through post-discharge procedures);

see Sampson v. Murray, 415 U.S. 61, 92 n.68 (1974) (reserving the genuinely extraordinary case).

**G. The balance of equities and the public interest favor relief.**

The State Defendants frame the public interest as a bar against "judicial micromanagement of state court operations." ECF 65 at 4. That inverts the inquiry. Enforcing the Americans with Disabilities Act against a state instrumentality is not judicial micromanagement; it is the exercise of the jurisdiction Congress conferred. The public interest is served by a court following its own rules, not by insulating it from them. The conduct for which Plaintiff was disciplined was his insistence that filings, including affidavits of service, bear signatures that satisfy the applicable signing requirements, the same requirements Defendant Banister herself set out in her January 14, 2026 written directive (Second Suppl. Decl. paras 2-3). An employee disciplined for asking that the court's own filings comply with the court's own signing requirements has been disciplined for protecting, not disrupting, the public interest. The balance of equities tips sharply toward Plaintiff. He faces ongoing health deterioration, aggravation of a diagnosed disability, stripped duties, and an unrescinded threat of termination, none compensable in damages against the State, while Defendants face only the minimal burden of rescinding two disciplinary letters, refraining from further accommodation-related discipline, and restoring access and duties that Court Administrator Moore admitted "should not have been removed" (Second Suppl. Decl. paras 4, 8). The prohibitory, status-quo-restoring core is rescission of the May 20, 2026 and June 8, 2026 Letters of Warning, the successive steps of the same progressive-discipline cycle this Motion challenges; an order barring execution of the termination the June 8 letter threatens and renewed discipline on the same closed set of incidents; an end to further discipline for Plaintiff's accommodation-related communications; and withdrawal of the directive

limiting his written communications. League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014). Two items are mandatory rather than prohibitory: restoration of the operational access and duties removed in May 2026, and completion of the interactive process on Accommodations #2 through #4. The governing standard for each, an indisputably clear right to relief, is met by the written admissions here, including Court Administrator Moore's statement that those duties "should not have been removed." Pashby v. Delia, 709 F.3d 307, 319-20 (4th Cir. 2013). The institution has not meaningfully engaged the interactive process: it treated Accommodations #2 through #4 as "outside the scope of the ADA" and never supplied the written guidance the granted accommodation required. Because every individual who has conducted the interactive process to date is a named Defendant or reports to one, an order merely directing the institution to complete the process would return it to the same conflicted decision-makers; completion must therefore be routed through a neutral reviewer such as the Job Accommodation Network, the U.S. Department of Labor's free accommodation-guidance service, which supplies the neutral assessment the process has lacked. That asks the Court not to supervise the Division but to route a stalled process through a free federal resource. Plaintiff requests the prohibitory core and these two severable mandatory items, and asks that the Court grant the prohibitory core even if it declines the mandatory items.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Preliminary Injunction (ECF 44). Plaintiff withdraws the proposed order submitted with ECF 44 and presses only the relief identified herein: the prohibitory, status-quo-restoring core described above and, separately and severably, the two mandatory items, completion of the interactive process on Accommodations #2 through #4 and restoration of Plaintiff's workstation,

access, and duties, supported by the written admissions under the clear-right standard. That relief is expressly severable; Plaintiff asks, in the alternative, that the Court grant such narrower relief as it deems appropriate, and the prohibitory core may be entered even if the Court declines the mandatory items. Plaintiff reserves the further affirmative directives in the withdrawn ECF 44 proposed order for the merits. Plaintiff will separately move under Federal Rule of Civil Procedure 15(d) to supplement the pleadings to reflect this post-filing conduct, which continues the course of conduct the operative First Amended Complaint already pleads, and the relief requested here rests on that operative pleading and does not depend on the supplement. Plaintiff requests such further relief as the Court deems just and proper.

Respectfully submitted,

[signature]

Steven Anthony Wright, Pro Se
(570) 494-8422
stevendiet@gmail.com
Dated: 6/30, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on the date written below I filed the foregoing in person with the Clerk of the Court, and that the Court's CM/ECF system will transmit a Notice of Electronic Filing to all counsel of record registered with the system, including Bryan A. Upshur, Assistant Attorney General, Office of the Attorney General of Maryland, and Elisabeth B. Hofmann, Baltimore City Department of Law, constituting service under Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 102.1.c.

[signature] 6/30/26

Steven Anthony Wright, Pro Se