**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

STEVEN ANTHONY WRIGHT, Plaintiff, *

v. *

MARYLAND JUDICIARY, et al., Defendants. * *

Civil Action No. 1:25-cv-04220-BAH

Hon. Brendan A. Hurson

HD
Rcv'd by: ____

USDC- BALTIMORE
'26 JUN 30 PM12:50

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR A WITNESS PROTECTIVE ORDER (ECF 50)**

**INTRODUCTION**

Plaintiff Steven Anthony Wright submits this reply in support of his Motion for a Witness Protective Order (ECF 50), and in response to the State Defendants' omnibus opposition (ECF 65) as to that motion. The opposition resists the order as premature under the discovery rules, as speculative, as reaching only management conduct rather than the Defendants, and as inadequately conferred. None of those grounds withstands the record. The order rests on the Court's inherent authority to protect the integrity of its proceedings and on the freestanding ADA anti-interference provision, 42 U.S.C. Section 12203(b), neither of which depends on whether discovery has begun, so the opposition's discovery-timing objection does not reach it. The relief is anchored in conduct Plaintiff witnessed firsthand and, as the Defendants now admit in their own writing, in the deliberate deployment of a sheriff's deputy; its prohibitions principally restrain coercion, and the one prong that restrains the content of witness-directed

communications satisfies the heightened scrutiny the opposition invokes; and Plaintiff attempted in writing to confer with the counsel who had then appeared for the Defendants before filing.

## LEGAL STANDARD

Two independent sources of authority support the order Plaintiff requests, and neither depends on the discovery clock. First, a federal court has inherent authority to protect the integrity of its own proceedings, including authority to restrain conduct that would intimidate witnesses or chill their participation, because such conduct is "a wrong against the institutions set up to protect and safeguard the public." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). That authority is not contingent on the commencement of discovery; it exists to safeguard the court's truth-seeking function whenever a proceeding is pending before it. Second, Title V of the Americans with Disabilities Act, 42 U.S.C. Section 12203(b), is a freestanding substantive prohibition that makes it unlawful to coerce, intimidate, threaten, or interfere with any individual on account of that individual's having aided or encouraged another in the exercise of rights protected by the Act. That provision reaches the conduct at issue directly and is not bounded by the discovery process. Federal Rule of Civil Procedure 26(c) supplies a further, supplementary basis: on a showing of good cause, the Court may issue an order to protect "a party or person" from "annoyance, embarrassment, oppression, or undue burden or expense," and the rule reaches non-party witnesses. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984). Because the inherent-authority and Section 12203(b) bases do not depend on open discovery, a ruling that a Rule 26(c) order is premature would not defeat this Motion.

The heightened scrutiny on which the opposition relies applies only to an order that restrains speech; such an order must serve a compelling interest by the least restrictive means. Doe v. Mast, 173 F.4th 524, 535 (4th Cir. 2026). The order Plaintiff requests has three operative

prohibitions, and they are not uniform on this point. Two of them restrain conduct, not speech, and so do not trigger Mast scrutiny: the prohibition on coercing, intimidating, threatening, or interfering with the witnesses, and the prohibition on taking or threatening adverse action against them on account of this action. The third prohibition, on communicating with the witnesses for the purpose of influencing their account or recollection of the events at issue, does restrain the content of certain communications and so is a speech restraint subject to Mast. Plaintiff does not argue otherwise as to that prong; he shows below that it satisfies strict scrutiny, because it serves a compelling interest in the integrity of this proceeding and the protection of its witnesses from being chilled, and is narrowly tailored to influencing-communications alone. The neutral opt-in notice is a less-restrictive measure, but because it cannot by itself prevent coercive influence on the witnesses, the narrowly drawn order is the least-restrictive means that is also adequate.

## ARGUMENT

### A. The Neutral Opt-In Notice Is the Least-Restrictive Alternative, Available Even If the Court Reserves the Order.

Plaintiff's primary request is the protective order, addressed in the subsections that follow. In the alternative, ECF 50(C) requests a neutral notice to the office staff with the option to participate, and Plaintiff highlights that alternative because the Court can reach it without resolving any speech question. A notice that imposes no restriction on anyone does not implicate the heightened scrutiny the opposition invokes and requires no compelling-interest showing. The notice simply informs the office staff that this proceeding is pending and that they may participate, and leaves participation to each person's choice. It neither restrains the Defendants nor compels any witness, so the managerial-prerogatives and Doe v. Mast objections the opposition presses do not reach it. The notice does not displace the protective order; it is the least

intrusive form of the relief ECF 50 requests, available even if the Court reserves the broader order. Court-authorized notice is the recognized, least-intrusive means of countering the potential for misleading communications in the employment setting. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171-172 (1989).

**B. The Order Restrains Witness-Directed Coercion and Rests on the Court's Inherent Authority and Section 12203(b), Not on the Discovery Rules.**

The opposition's framing assumes the order is, in whole, a speech restriction governed by Doe v. Mast. ECF 65 at 3. It is not. As set out above, two of the order's three prohibitions restrain conduct, coercion, intimidation, and retaliation directed at witnesses, and they rest on the Court's inherent authority to protect the integrity of its proceedings, Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991), and on the freestanding ADA anti-interference provision, 42 U.S.C. Section 12203(b). Neither source depends on whether discovery has commenced. A court's authority to prevent the intimidation of the witnesses to a case pending before it does not wait on the discovery clock, and Section 12203(b) prohibits coercion and interference as a matter of substantive law regardless of the procedural posture. The opposition's argument that Rule 26(c) is unavailable because "no discovery obligations are active" and the conduct is not "litigation activity within the scope of Rule 26(c)" (ECF 65 at 5-6) therefore misses the order's principal footing: even if the Court agreed that a Rule 26(c) order is premature, the inherent-authority and Section 12203(b) bases remain, and they support the same relief. The Court's protective authority is also codified in the All Writs Act, 28 U.S.C. Section 1651, which empowers a court to issue orders necessary or appropriate in aid of its jurisdiction, including orders reaching persons who, though not parties, are in a position to frustrate the proper administration of justice. United States v. New York Telephone Co., 434 U.S. 159, 172 (1977). Such an order is not predicated on a

cause of action and does not turn on the discovery rules; it requires only an ongoing proceeding the integrity of which is threatened by another's conduct. Cf. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1098-1102 (11th Cir. 2004) (stating the rule, though reversing the particular injunction).

Section 12203(b) is not only a source of the Court's authority; it independently makes the conduct at issue unlawful, which gives the Court a basis to act now, before discovery. The provision makes it unlawful to coerce, intimidate, or interfere with any individual on account of that individual's having aided or encouraged another in the exercise of rights protected by the Act, 42 U.S.C. Section 12203(b), and its remedies, made available by Section 12203(c), include injunctive relief. The office staff are within that protection, and at least one of them is now unwilling to come forward for fear of the same treatment directed at Plaintiff (ECF 50, Att. #1, para 6), which is the distinct and palpable injury that interference under this provision requires. Brown v. City of Tucson, 336 F.3d 1181, 1192 (9th Cir. 2003); see Frakes v. Peoria Sch. Dist. No. 150, 872 F.3d 545, 550-51 (7th Cir. 2017) (stating the elements of an interference claim). Because that interference is an ongoing statutory violation rather than a discovery dispute, the opposition's premise that no discovery obligation is active does not reach it.

The conduct the order restrains is measured by whether it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination, the standard the Fourth Circuit applies to retaliation and interference under the Act. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Laird v. Fairfax County, 978 F.3d 887, 893 (4th Cir. 2020). A uniformed, armed sheriff deployment, a removal under escort in front of the office staff, and a circulated account branding the removed employee aggressive are not ordinary supervision under that test; they are precisely the conduct that dissuades a reasonable witness, and the record shows

it already has, because at least one staff member is unwilling to come forward for fear of the same treatment (ECF 50, Att. #1, para 6). Reaching the witnesses is a recognized means of reaching Plaintiff. See Thompson v. North American Stainless, LP, 562 U.S. 170, 174, 178 (2011).

A compelling interest supports the influencing-communications prong, and so it satisfies Mast. The integrity of a pending federal judicial proceeding and the protection of its witnesses from being chilled are compelling interests in their own right: a court's power to keep the witnesses to its own case free from coercion goes to the core of its truth-seeking function, the very interest Chambers identifies. That interest is grounded in the firsthand record. As set out in the next section, Plaintiff personally witnessed the May 20, 2026 deployment of a uniformed, armed sheriff's deputy and his removal under escort in front of the office staff, and the Defendants themselves admit in writing that, in their own words, "Because of your inappropriate and uncontrolled behavior over the past five months, we had a deputy standing by to assist if necessary." (Second Suppl. Decl. para 6; ECF 57, Ex. V.) The "to assist if necessary" framing does not blunt the admission; under Burlington Northern, a uniformed, armed deputy stationed where the witnesses pass, during a paperwork dispute in which no act of violence occurred, well might dissuade a reasonable worker, whatever label management places on it. The institution's own conduct belies any genuine safety concern: having deployed an armed deputy, it relocated Plaintiff that same afternoon into a shared office assigned to two of its female employees (Second Suppl. Decl. para 6), placement no employer makes if it actually believes the employee is dangerous, which confirms that the deputy was stationed to influence the witnesses rather than to address a real threat. The deputy deployment also bears on the witnesses: at least one member of the office staff is now unwilling to come forward, for fear of being subjected to the same

treatment directed at Plaintiff, as Plaintiff sets out on information and belief (ECF 50, Att. #1, para 6). The prohibition is also narrowly tailored: it forbids only communications made for the purpose of influencing a witness's account or recollection, leaving the Defendants free to manage and communicate with their staff on every other subject. The neutral opt-in notice is a less-restrictive measure but is not by itself adequate to prevent coercive influence, so the narrowly drawn order is the least-restrictive adequate means. That is the standard the Fourth Circuit applied in affirming the order in Mast. Doe v. Mast, 173 F.4th 524, 535 (4th Cir. 2026). The Supreme Court has long recognized that a court may, on a clear record and by a carefully drawn order that limits speech as little as possible, restrain a party's communications with the witnesses whose participation the proceeding depends on. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100-102 (1981). Where, as here, those persons are the party's own subordinate employees, the communications carry an inherent potential for coercion by virtue of the relationship, and the restraint is measured by the severity and likelihood of the harm, the precision of the order, the availability of a less onerous alternative, and the duration of the order. Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1199, 1202 (11th Cir. 1985). The influencing-communications prong meets that standard on this record.

**C. The Conduct Is Firsthand, Not Speculative, and the Order Is Conduct-Specific.**

The opposition characterizes the motion as resting on "second-hand reports" and on "no direct statements, threats, or conduct." ECF 65 at 5-6. The opposite is true at the load-bearing point. The order is needed because of conduct Plaintiff witnessed firsthand. On May 20, 2026, within roughly ten minutes after a non-management staff member went to Human Resources to file paperwork about her job classification, Defendant Banister, who rarely leaves the office during the workday, left it; a meeting was convened that afternoon; and a uniformed, armed

sheriff's deputy was stationed at the front of the Family Division office where the office staff pass to enter and leave. At approximately 3:45 PM, Court Administrator Moore and the deputy escorted Plaintiff from the office and relocated him, in full view of the non-management staff who are the percipient witnesses to the events at issue. These facts are within Plaintiff's personal knowledge and are sworn (Second Suppl. Decl. para 6). The deputy deployment is not merely Plaintiff's characterization: the Defendants admit it in their own writing. The June 8, 2026 Second Letter of Warning, signed by Defendant Banister and before the Court as Exhibit V to Plaintiff's Supplement Declaration, states in full: "Because of your inappropriate and uncontrolled behavior over the past five months, we had a deputy standing by to assist if necessary." (Second Suppl. Decl. para 6; ECF 57, Ex. V.) That is a party admission under Federal Rule of Evidence 801(d)(2)(D) that the deployment was deliberate and was directed at Plaintiff, which defeats the opposition's contention that the Defendants engaged in no direct conduct. The "to assist if necessary" qualifier the State will press under Federal Rule of Evidence 106 does not save it: under Burlington Northern, a uniformed, armed deputy stationed where the percipient witnesses pass, during a paperwork dispute in which no act of violence occurred, well might dissuade a reasonable worker, regardless of the safety label the institution attaches to it. Plaintiff was also removed from the operational case-routing Microsoft Teams channel on May 18, 2026, two days before the meeting, isolating him from those same witnesses while management retained continuous access (Second Suppl. Decl. para 9).

A protective showing under the Court's inherent authority and Rule 26(c) does not require firsthand proof that a witness has already been deterred from testifying. A reasonable apprehension of interference suffices, and here that apprehension is anchored to the firsthand, admitted facts set out above: the uniformed, armed deputy stationed where the witnesses pass

and Plaintiff's removal under escort in front of them, which the Defendants concede in writing. The Family Division's non-management office staff numbers only six, so the deputy's deployment at the entrance and Plaintiff's removal under escort in their presence were necessarily known to all of them, and in a group that small the chilling effect of such conduct cannot be confined to one person. Two further facts corroborate that apprehension, and Plaintiff sets them out on information and belief, identifying them as such rather than as direct proof. First, at least one member of the office staff is unwilling to come forward, for fear of being subjected to the same treatment directed at Plaintiff (ECF 50, Att. #1, para 6). Second, a member of management who was not present at the May 20 meeting circulated to staff an account describing Plaintiff as aggressive and other staff as frightened, which a staff member who was present did not corroborate (ECF 50, Att. #1, paras 4-5). An information-and-belief averment is competent where the declarant states its basis, and Plaintiff does: he was removed from the office on May 20 and learns of the staff's apprehension and of the circulated account from the staff themselves. The order does not rest on those relayed statements as direct proof; it rests on the firsthand, admitted conduct, which the relayed statements confirm. Good cause is established.

The order is also tailored to that harm. Its prongs are conduct-specific: they reach only communications intended to influence a witness's account of the events at issue or to retaliate for participation in this action; they run to the identified percipient witnesses, the non-management Family Division staff; and they are bounded in time to the pendency of this proceeding. Each prong is the least restrictive means of preventing the chilling shown above. The prohibition on influencing-communications and on retaliation leaves the Defendants free to manage and to communicate with their staff on every ordinary subject; it forbids only the narrow category of witness-directed conduct the record shows is occurring. The preservation prong imposes only a

duty already owed once litigation is pending. None of this restrains lawful supervision; it restrains coercion of the witnesses to this case.

**D. Conferral Was Adequate.**

The opposition faults Plaintiff for failing to confer in good faith. ECF 65 at 5-6. The premise is mistaken on the record. When Plaintiff filed this Motion on June 1, 2026, the State Defendants whose conduct it addresses, including Defendant Banister, were not yet represented by counsel: the Office of the Attorney General had appeared only for the Administrative Office of the Courts (ECF 7) and did not appear for the Circuit Court for Baltimore City and the individual Defendants until June 18, 2026 (ECF 64), more than two weeks after this Motion was filed. There was thus no counsel for the parties whose conduct is at issue with whom a Rule 26(c) conferral could have occurred. Plaintiff nonetheless gave written notice, on May 29, 2026, to the counsel who had then entered an appearance, Bryan A. Upshur of the Office of the Attorney General and Elisabeth B. Hofmann of the Baltimore City Department of Law, describing the conduct directed at potential witnesses and asking that it be stopped. ECF 65, Ex. 1; ECF 50 at 7-8. Counsel for the State dismissed the notice as "vague" rather than asking for any particulars, while in the same exchange demanding the unredacted ECF 42 through 45 pleadings; counsel for the City did not respond at all. Plaintiff thus attempted to confer with every counsel who had appeared, which is all Rule 26(c) requires, and the breakdown was counsel's dismissiveness, not any omission of Plaintiff's. The objection is the harder to credit because counsel left Plaintiff's own earlier conferral, his April 13, 2026 request that the Office of the Attorney General accept service of process on Defendant Banister's behalf, unanswered. The conduct, moreover, was ongoing, so further informal exchange would have been futile and prompt consideration is warranted.

More fundamentally, Rule 26(c)(1) asks only that the movant have "conferred or attempted to confer with other affected parties" in an effort to resolve the dispute. That obligation runs to the parties in the case, through their counsel, and it presupposes an opposing party that has appeared and can be engaged; it cannot be owed to, or discharged with, a party that has not appeared. The State Defendants whose conduct this Motion addresses, the Circuit Court for Baltimore City and the individual Defendants, had not appeared when Plaintiff filed it, and counsel for the State had then appeared only for the Administrative Office of the Courts. Plaintiff therefore cannot be charged with a failure to confer as to the parties whose conduct is at issue, and counsel's reaction to the May 29 notice, given before he represented those parties, does not establish that a good-faith conferral with them was attempted and refused.

Conferral, in any event, did not require Plaintiff to disclose to opposing counsel which witnesses he intends to call. The protection Plaintiff seeks does not rest on anonymity: the witnesses are public employees the Defendants already know, and what they need protection from is the Defendants' conduct toward them, not the concealment of their identities. Conferral was directed at the conduct itself, asking counsel to instruct their clients to refrain, and that is all good-faith conferral on this Motion required.

**E. The Order Binds the Defendants and Their Agents Under Rule 65(d)(2).**

The opposition recasts the conduct at issue as falling within "normal managerial prerogatives" by management rather than by the Defendants. ECF 65 at 6. That framing does not avoid an order. Federal Rule of Civil Procedure 65(d)(2) provides that an order binds the parties, the parties' officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with them who receive actual notice. An order against the State Defendants therefore reaches a management-level employee acting within the scope of her

duties. The non-defendant manager who circulated the account describing Plaintiff as aggressive, Family Support Services Coordinator Shannon Thomas, is a State Judiciary employee whose conduct is reachable for that reason; she need not be named as a defendant for the order to bind her as the Defendants' agent. The point is not that the Defendants may not supervise their staff. It is that conduct calculated to chill the witnesses to this proceeding is enjoinable regardless of the managerial label placed on it, and Rule 65(d)(2) ensures the order reaches those who carry it out in the Defendants' name.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for a Witness Protective Order (ECF 50) and the relief set out in its prayer. Specifically, Plaintiff requests that the Court:

(A) identify the non-management Family Division office staff as witnesses entitled to protection under Federal Rule of Civil Procedure 26(c) and 42 U.S.C. Section 12203(b), each of which reaches non-party witnesses;

(B) as his primary relief, enter the protective order set out in ECF 50(B), restraining the Defendants and their officers, agents, servants, employees, and attorneys from coercing, intimidating, or interfering with the identified percipient witnesses, from communicating with them for the purpose of influencing their account of the events at issue, and from taking or threatening adverse action against them on account of this action, and directing the preservation of communications and records bearing on the conduct described above;

(C) in the alternative, and as the least-restrictive step the Court may reach first, transmit the neutral opt-in notice set out in ECF 50(C), which restrains no one and informs the office staff of this proceeding and their option to participate;

(D) consider this Motion in conjunction with the pending Motion for Preliminary Injunction (ECF 44) and, given the ongoing nature of the conduct, on an expedited basis; and

(E) grant such other and further relief as the Court deems just and proper.

These forms of relief are severable. The Court may grant the protective order, the neutral notice, or both, and may grant the notice even if it reserves the broader order.

Respectfully submitted,

Steven Anthony Wright, Pro Se
(570) 494-8422
stevendiet@gmail.com
Dated: 6/30, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on the date written below I filed the foregoing in person with the Clerk of the Court, and that the Court's CM/ECF system will transmit a Notice of Electronic Filing to all counsel of record registered with the system, including Bryan A. Upshur, Assistant Attorney General, Office of the Attorney General of Maryland, and Elisabeth B. Hofmann, Baltimore City Department of Law, constituting service under Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 102.1.c.

Steven Anthony Wright, Pro Se
Dated: 6/30, 2026