Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 1 of 7
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

STEVEN ANTHONY WRIGHT,

*Plaintiff,*

v.

MARYLAND JUDICIARY, et al.,

*Defendants.*

Civil Action No. 1:25-cv-04220-BAH

# SUPPLEMENTAL DECLARATION OF STEVEN ANTHONY WRIGHT

USDC-BALTIMORE
26 APR 22 AM10:53

I, Steven Anthony Wright, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

## A. Autism Spectrum Disorder Diagnosis

**1.** On April 7, 2026, I received a formal diagnosis of F84.0 Autism Spectrum Disorder, without intellectual/developmental delay or significant language impairment, requiring support at Level 1, issued by Philip Stoner, Ph.D., a Maryland-licensed psychologist (license number 07288). The diagnosis was communicated to me at the conclusion of a clinical evaluation conducted across three sessions on March 19, 2026, March 23, 2026, and April 7, 2026. The written clinical evaluation report documenting the diagnosis was issued on April 18, 2026. The evaluation was prompted by a colleague with personal experience with ASD who independently recognized traits consistent with autism in my workplace behavior and suggested I pursue evaluation. I self-referred to the evaluating practice. The evaluation was not initiated for litigation purposes.

**2.** Autism Spectrum Disorder is a lifelong neurodevelopmental condition. I was autistic throughout my entire career with the Maryland Judiciary, including during my tenure as a District Court Commissioner, during the events leading to my March 7, 2025 termination, during my written disclosure of OCPD to Director Haven on March 4, 2025, and throughout every adverse action documented in the operative complaint. The diagnosis does not identify a new condition. It identifies a condition that has been present and affecting my employment at all times relevant to this case.

**3.** The ASD diagnosis by a licensed psychologist provides a more specific clinical identification of the same functional limitations previously documented under OCPD by a licensed therapist. The two diagnoses are not inconsistent. ASD is a neurodevelopmental condition that frequently presents alongside OCPD traits. The clinical evaluation identified clearly evident differences in social-emotional reciprocity, clearly evident differences in navigating social relationships, a

HD
Rcv'd by: AK

Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 2 of 7

clearly evident need for routines and sameness, and clearly evident sensory response differences. The evaluator further identified functional impact including prior loss of employment due to rigidity and difficulty accepting deviation from established rules. The functional limitations relevant to my ADA accommodation requests remain the same under either or both diagnoses.

**4.** ASD was not pled in the operative complaint (ECF 24) because it had not yet been diagnosed at the time of filing. Its inclusion in this Declaration preserves the factual record. I am not seeking to amend the complaint through this Declaration and will pursue any amendment, if needed, through a separate motion under Federal Rule of Civil Procedure 15. The clinical evaluation report dated April 18, 2026 is not attached to this Declaration. The report is available to be produced through discovery subject to appropriate protective measures given the sensitive personal health information it contains.

**B. Continued Post-Filing Retaliation**

**5.** A consistent pattern has emerged and accelerated since the operative complaint was filed. Each time I raise a question about my duties or a compliance concern, the task that generated the question is removed and the underlying question is not answered. The pattern is now documented across multiple task categories within a four-month period.

**6. First instance (January–February 2026).** I raised compliance concerns about digital signature requirements for pro se filers, as described in the operative complaint (ECF 24, paragraphs 53–58). On January 23, 2026, Defendant Banister issued a written cease-and-desist ordering me to stop documenting compliance concerns. On February 2, 2026, she removed my core paralegal review duties. The underlying compliance question was never answered in writing.

**7. Second instance (March 30 through April 10, 2026).** On March 30, 2026, I emailed Defendant Banister with two specific questions regarding resubmitted pro se forms in two separate cases. The forms had been previously denied, corrected by the litigants, and resubmitted bearing the original signatures, the original signature dates, and two received stamps each (the original and a new one added upon resubmission). The questions I raised were: (a) whether an original signature executed under previously incorrect information covers the document as currently submitted, and (b) given the two received stamps on the same document, which stamp controls and what my review responsibilities are. Both questions are core validity questions regarding signatures, and as such fall squarely within the scope of the granted accommodation issued on February 18, 2026, which required written instructions for core validity situations including signatures. Defendant Banister stated in writing: "We should not be questioning service. If there is a service issue and it is raised by the Defendant, the Judge or Magistrate will deal with it in the hearing." Ms. Shannon Thomas, Family Support Services Coordinator, responded on April 1, 2026 stating that the scratch-out-and-restamp practice was common across form types. Defendant Banister concurred on April 1, 2026, stating that she had spoken with Judge Middleton and that Judge Middleton had agreed, and that any issue would be addressed at the hearing by the judge or magistrate. I acknowledged the directive on April 1, 2026, noted for the record that my two specific questions had not been directly addressed, and followed the directive as given. Neither question was subsequently answered in writing. No statutory authority, rule, case law, or administrative order supporting the directive was provided.

Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 3 of 7

**8.** The direct consequence of my raising these core validity questions was the removal of the very duties under which the questions arose. On April 10, 2026, nine days after the April 1, 2026 concurrence, Ms. Thomas sent me an email attaching a document reviewed and approved by Defendant Banister. Ms. Thomas stated in her email that "Suzanne has reviewed and approved the document." The document was titled "Steven Pro-se Duties." It reduced my role to exclusively clerical tasks: stocking filing cabinets, preparing case folders for two employees, scanning intake forms, and using the Xerox machine. The document explicitly stated: "No need to seek corrections on any documents" and "No more queue tasks or document review outside of what is requested by Dan or Deb." The title of the document references me by first name and by my status as a pro se litigant in this federal action. None of the duties enumerated in the "Steven Pro-se Duties" document correspond to the duties for which I was hired as an Administrative Paralegal in the Family Division. A copy is attached as Exhibit A.

**9.** On April 14, 2026, I confirmed receipt of the April 10 document and enumerated each duty in writing. I stated: "My understanding is that my prior paralegal duties are no longer part of my role and that my work is limited to the tasks listed above. If any part of this is incorrect, advise." Defendant Banister responded: "Thank you." She did not dispute or correct that characterization. A copy of my confirmation email and her response is attached as Exhibit B.

**10.** On April 17, 2026, Ms. Thomas sent me an updated version of the "Steven Pro-se Duties" document, again stated to have been approved by Defendant Banister. The updated version retained the title, the clerical task structure, and the instruction that I was not to perform queue tasks or document review outside of what is requested by Dan or Deb. The updated version added a procedure for escalating missing case documents verbally to Ms. Banister, Ms. Johnson, or Ms. Thomas. A copy of the April 17, 2026 transmittal and the updated document is attached as Exhibit C.

**11. Third instance (April 20, 2026 — DV protective order directive).** On April 20, 2026, Defendant Banister issued a written directive stating that, per Judge Middleton, children's names and dates of birth must be added to petitions for temporary protective orders by the petitioner. The stated rationale was to establish that the petitioner is filing in the correct courthouse and is a person eligible for relief under the protective order statute. I raised in writing that under Md. Code, Fam. Law § 4-504(a), a petition for a protective order may be filed in any District Court or circuit court in the State and therefore there is no venue requirement that children's information could establish, and that eligibility for relief under § 4-501(m) applies to children the petitioner is seeking to protect rather than to every petitioner with minor children. I asked Defendant Banister to confirm in writing which of two readings of the directive Judge Middleton intended.

**12.** Rather than answering the question, Defendant Banister issued a second directive later that afternoon, effective immediately, assigning me responsibility for entering petitions in the DV Office when Ms. Thomas is unavailable, with Ms. Johnson or Defendant Banister conducting the intake interview and petition completion. My name attaches to each record I enter. I responded in writing that I was unable to enter petitions containing children's information collected under an unclarified rule because I could not confirm whether the information was properly required. I copied Ms. Jacqueline Hale, the HR contact, because my granted ADA accommodation requires written instructions for tasks that deviate from governing policies, including core validity situations brought to the supervisor's attention with a request for written instructions.

Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 4 of 7

**13.** Defendant Banister responded in writing at 2:58 PM. She addressed statutory content regarding filing on behalf of a child, but did not answer the specific question I had asked about whether children's information was required only when relief was being sought on their behalf or from every petitioner with minor children. In the same email, Defendant Banister stated that my duties may be restructured at any time to accommodate my new tasks and that written instructions would be provided "as quickly as possible given the parameters of the task load of your supervisor." I responded the same afternoon, again identified that my specific questions had not been directly answered, noted the procedural instruction differed from the governing statute and from the current CC-DC-DV-001 (Rev. 10/2025) petition form, and asked for the statutory authority, rule, case law, or administrative order supporting the directive. As of the date of this Declaration, no such authority has been provided in writing. The full April 20, 2026 email sequence is attached as Exhibit D.

**14.** The April 20, 2026 exchange establishes three facts that advance the pattern documented in this Declaration. First, I invoked my granted ADA accommodation in writing on a specific task and requested the written instruction the accommodation requires. Second, the response reassigned a task to me rather than providing the written clarification I requested. Third, Defendant Banister stated in writing that compliance with the accommodation would be subordinated to her own workload, which is not a lawful limitation on the interactive process.

**C. ADA Interactive Process**

**15.** The history of my January 16, 2026 ADA accommodation request, the January 28, 2026 submission of completed Judiciary accommodation forms and medical documentation, the February 18, 2026 partial grant communicated by Defendant Sanders (granting Accommodation #1 as to core validity situations including signatures and authorization for pro se litigants, and stating that any additional core validity situations would be brought to the supervisor's attention to request written instructions), my February 20, 2026 written response identifying that Accommodations #2, #3, and #4 remained unaddressed, the February 26, 2026 attempted retroactive reframing of Accommodation #2, and Defendant Sanders's March 3, 2026 statement that a written response to the outstanding accommodations would be provided by close of business March 6, 2026, is described in the operative complaint and documented in the exhibits attached to my prior Declaration in support of the Motion for Temporary Restraining Order. On March 6, 2026 at 4:59 PM, twenty-nine minutes after my scheduled workday ended at 4:30 PM, Defendant Sanders transmitted a response. The response characterized my accommodation requests regarding retaliation and penalty as matters that were "outside the scope of the ADA" and that "would be handled outside the ADA." The response deflected Accommodations #2, #3, and #4 to standard escalation channels that route through Defendant Banister, whose conduct is central to my retaliation claims. The response further stated that Accommodation #4 "was determined to be addressed in the accommodation that was granted." That retroactive recharacterization contradicts the plain text of Accommodation #4 in my January 16, 2026 request. Separately, since the February 18, 2026 grant, I have not received any written instruction from Defendant Banister or any other supervisor on core validity situations to which the granted accommodation applies, notwithstanding specific written requests. The March 30 through April 1, 2026 exchange described in Section B, paragraph 7 (regarding signature validity on a resubmitted form and the scope of my review responsibilities) and the April 20, 2026 sequence described in Section B, paragraphs 11

Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 5 of 7

through 14 (regarding the DV protective order directive) are the two documented post-filing instances of that failure.

**16.** On April 15, 2026, I notified Ms. Jacqueline Hale, the employer's Human Resources Officer, in writing that I had been formally diagnosed with Autism Spectrum Disorder at the conclusion of a clinical evaluation. I referenced the April 7, 2026 date on which the diagnosis was communicated to me. The written clinical evaluation report documenting the diagnosis was subsequently issued on April 18, 2026, as described in Section A of this Declaration. My April 15, 2026 email to Ms. Hale referred to the diagnosing clinician as a licensed psychiatrist. The diagnosing clinician is in fact a Maryland-licensed psychologist, Philip Stoner, Ph.D. (license number 07288). That distinction does not affect the validity of the diagnosis for ADA purposes. In my April 15, 2026 email, I requested that the narrow partial grant of Accommodation #1 be re-evaluated in light of the updated diagnosis, that the interactive process on Accommodations #2, #3, and #4 be completed, and that Ms. Hale identify the specific components of supporting documentation she would require so that I could provide exactly what was needed without unnecessary delay.

**17.** On April 16, 2026, Ms. Hale responded and provided two forms: an Employee ADA Accommodations Form and an Employee ADA Accommodation Medical Form for completion by a medical provider. Ms. Hale did not identify specific components of the clinical evaluation report she required, as I had requested. A copy of the April 15, 2026 email, Ms. Hale's April 16, 2026 response, and the two forms provided is attached as Exhibit F.

**18.** As of the date of this Declaration, I have not submitted the requested forms. I intend to complete the Employee ADA Accommodations Form and to obtain completion of the Employee ADA Accommodation Medical Form from an appropriate provider. The clinical evaluation report described in Section A is not being submitted to the employer in its entirety. The full report contains sensitive personal history information that is not material to the functional limitations relevant to the requested accommodations, and the ADA requires disclosure only of documentation sufficient to establish a disability and the associated functional limitations.

**D. Grievance Regarding Baltimore City HR Conduct**

**19.** On April 16, 2026, I filed a formal written grievance with Mr. Lionel Moore, Court Administrator for the Circuit Court for Baltimore City, regarding two separate incidents involving Ms. Pamela Jackson, a Baltimore City Human Resources representative. The first incident occurred on November 26, 2025, when I contacted Ms. Jackson regarding early dismissal policy. The second incident occurred on April 16, 2026, when Ms. Jackson contacted me at my workstation over Teams video regarding an alleged time discrepancy from March 16, 2026.

**20.** I identified Ms. Jacqueline Hale as professional in her interactions with me and clarified that my grievance was specific to Ms. Jackson's conduct rather than a general complaint about HR. I requested that the grievance be formally documented, that Ms. Jackson's conduct be reviewed, and that any future HR matters requiring direct contact be handled through a different representative or with a neutral third party present.

**21.** Mr. Moore responded by email at 1:08 PM the same day. He referred the matter to Ms. Hale as Ms. Jackson's immediate supervisor and stated that Ms. Hale would follow up with me after investigating my concerns. Because the grievance remains under institutional review, only the transmittal and response are attached as Exhibit E. The substantive content of the grievance is not

Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 6 of 7

attached at this time and may be submitted, subject to appropriate protective measures, if it becomes material to this litigation. As of the date of this Declaration, no follow-up from Ms. Hale investigating the grievance has been received.

**E. Request for Grant Position Documentation**

**22.** My current position is funded through the Jurisdictional Family Services Grant administered by the Administrative Office of the Courts. In light of the recurring modifications to my assigned duties, including the April 20, 2026 communication from Defendant Banister stating that further changes to my duties may occur at any time, on April 21, 2026 I submitted a written request to Ms. Hale for the FY25, FY26, and FY27 Jurisdictional Family Services Grant budget documents describing my position, including the position description, functional specifications, and documentation of the budgeted duties as submitted to the Administrative Office of the Courts.

**23.** I framed the request as necessary to apply my granted ADA accommodation, which requires written documentation of established procedures, to the threshold question of whether assigned tasks align with the funded scope of my position. Ms. Hale's out-of-office automatic reply referred me to Ms. Jackson for immediate assistance, notwithstanding that the grievance described in Section D of this Declaration had been referred to Ms. Hale the previous week for investigation of Ms. Jackson's conduct. A copy of the April 21, 2026 request and the automatic reply is attached as Exhibit G.

**F. Purpose of This Filing**

**24.** This Declaration is filed to preserve the factual record because no unconflicted internal avenue remains available to me. Every institutional channel through which an employee would ordinarily report the conduct described above is controlled by a named defendant or by counsel representing the named defendants. My direct supervisor is Defendant Banister. The Administrative Judge who adjudicated my ADA accommodation is Defendant Carrion. The Deputy Court Administrator for the Maryland Judiciary, through whom the accommodation decision was communicated and who serves as a designated ADA Coordinator, is Defendant Sanders. The Court Administrator for the Circuit Court for Baltimore City, to whom the grievance described in Section D was directed, is Mr. Lionel Moore, who referred the grievance to Ms. Hale. The Administrative Office of the Courts, which administers the grant funding my position, is Defendant Maryland Judiciary. The Baltimore City Human Resources representative who has engaged in the conduct described in Section D is supervised by Ms. Hale, who is also the ADA contact responsible for the pending interactive process described in Section C. The Office of the Attorney General represents the institutional defendants in this litigation and was the subject of my disqualification motion, which was denied on March 20, 2026 (ECF 31).

**25.** The combined effect of these institutional relationships is that any complaint, grievance, or request for clarification I raise internally routes back to the same defendants, their supervisors, or their counsel. This is not a theoretical concern. The April 21, 2026 sequence described in Section E illustrates the closed loop directly: a request to the Human Resources Officer for grant documentation produced an automatic reply referring me to the subject of a pending grievance. The April 16, 2026 grievance against a Baltimore City HR representative was referred by the Court Administrator to that representative's own supervisor for investigation. The ADA interactive

Case 1:25-cv-04220-BAH Document 38 *SEALED* Filed 04/22/26 Page 7 of 7

process runs through the same Deputy Court Administrator who transmitted the narrow partial grant and the retroactive reframing.

**26.** This Court is the only unconflicted forum remaining. Preserving the factual record through this Declaration is not an attempt to amend the pleadings or to relitigate matters already decided. It is an effort to ensure that the events described are documented in the federal record at the time they occurred, so that they are available for any future motion under Federal Rule of Civil Procedure 15, for any future request for injunctive relief, for discovery in the ordinary course, and for any other proceeding in which the factual accuracy and contemporaneous documentation of these events may become material.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Steven Anthony Wright

Plaintiff, Pro Se

[redacted]

(570) 494-8422

stevendiet@gmail.com

Dated: April 22, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of the foregoing Supplemental Declaration, together with Exhibits A through G, was served upon counsel for Defendants via the Court's CM/ECF system.

Steven Anthony Wright