ORIGINAL

HD
Rcv'd by: AW

USDC- BALTIMORE
'26 AUG 18 PM12:46

TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. PLAINTIFF'S CONCESSIONS (STATED AT THE THRESHOLD) ..... 2

III. STANDARD OF REVIEW ..... 3

ARGUMENT I. THE RELEASE DOES NOT SUPPORT DISMISSAL AT THIS STAGE AND DOES NOT REACH POST-REHIRE CLAIMS ..... 4

A. Threshold: an unpled affirmative defense not on the face of the First Amended Complaint. ..... 5

B. Considering the Haven Declaration requires Rule 12(d) conversion, which is premature; Plaintiff files herewith a Rule 56(d) affidavit. ..... 5

C. Voluntariness of a federal-rights waiver is a fact-bound totality question; the State bears the burden. ..... 6

D. The 24-hour window was employer-fixed boilerplate, and the declarant who swears Plaintiff requested it was not there. ..... 7

E. The window spanned no full business day and afforded no meaningful opportunity to obtain counsel. ..... 9

F. The resign-or-be-fired-for-cause framing fails: the asserted good cause is contested by the State's own documents. ..... 9

G. Plaintiff's same-day written protest is contemporaneous evidence that voluntariness cannot be resolved as undisputed. ..... 11

H. The rehire despite the Release's "never apply again" term bears on scope and implementation. ..... 12

I. Even a valid Release cannot reach the City, post-rehire conduct, or the counts the State itself omitted. ..... 12

J. Fallback and conclusion on Argument I. ..... 13

ARGUMENT II. ELEVENTH AMENDMENT IMMUNITY DOES NOT BAR THE CLAIMS AS PLEADED ..... 13

ARGUMENT III. THE EMPLOYER-IDENTITY AND EXHAUSTION GROUNDS FAIL ON THE STATE'S OWN PLEADINGS AND EXHIBITS ..... 17

ARGUMENT IV. THE INDIVIDUAL-CAPACITY CLAIMS ARE NOT BARRED BY QUALIFIED OR QUASI-JUDICIAL IMMUNITY ..... 22

ARGUMENT V. THE ACCOMMODATION AND SECTION 504 CAUSATION GROUNDS FAIL ..... 29

ARGUMENT VI. FLSA, MARYLAND WHISTLEBLOWER EXHAUSTION, IIED, AND COMPARATOR ..... 36

ARGUMENT VII. THE COURT SHOULD EXCLUDE THE STATE'S EXTRINSIC DECLARATIONS OR, IF IT CONVERTS, GRANT A RULE 56(d) CONTINUANCE ..... 37

CONCLUSION AND PRAYER FOR RELIEF ..... 40

# TABLE OF CITATIONS

**Cases**


Abril v. Commonwealth of Virginia, 145 F.3d 182 .......... 17
Adams v. Ferguson, 884 F.3d 219 .......... 16
Alden v. Maine, 527 U.S. 706 .......... 17
Alexander v. Gardner-Denver Co., 415 U.S. 36 .......... 6, 12
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 .......... 39
Ashcroft v. Iqbal, 556 U.S. 662 .......... 3
Baird v. Rose, 192 F.3d 462 .......... 33
Bd. of Regents v. Roth, 408 U.S. 564 .......... 27
Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356 .......... 14
Bell Atl. Corp. v. Twombly, 550 U.S. 544 .......... 3
Bosiger v. U.S. Airways, Inc., 510 F.3d 442 .......... 39
Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 .......... 26
Bush v. Rauch, 38 F.3d 842 .......... 22
Butler v. Drive Automotive, 793 F.3d 404 .......... 18
Cassiday v. Greenhorne & O'Mara, Inc., 220 F. Supp. 2d 488 (D. Md. 2002), aff'd, 63 F. App'x 169 .......... 6
Celotex Corp. v. Catrett, 477 U.S. 317 .......... 39
Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 .......... 27
Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474 .......... 14, 25
Cummings v. Premier Rehab Keller, 596 U.S. 212 .......... 17
E.M.D. Sales v. Carrera, 604 U.S. 45 .......... 36
Edelman v. Lynchburg College, 535 U.S. 106 .......... 20
Edwards v. City of Goldsboro, 178 F.3d 231 .......... 19
Erickson v. Pardus, 551 U.S. 89 .......... 24
Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp., 109 F.3d 993 .......... 4
Foman v. Davis, 371 U.S. 178 .......... 28
Forrester v. White, 484 U.S. 219 .......... 23
Fort Bend County v. Davis, 587 U.S. 541 .......... 22, 38
Foster v. Univ. of Md.-Eastern Shore, 787 F.3d 243 .......... 35
Garcetti v. Ceballos, 547 U.S. 410 .......... 25
Gay v. Wall, 761 F.2d 175 .......... 19
Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159 .......... 5, 38
Goodman v. Praxair, 494 F.3d 458 .......... 3

Green v. Mansour, 474 U.S. 64 ........ 16, 17
Hafer v. Melo, 502 U.S. 21 ........ 16, 26
Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454 ........ 33
Hannah P. v. Coats, 916 F.3d 327 ........ 33
Herkert v. Bisignano, No. 24-1420 ........ 35
Hutto v. S.C. Ret. Sys., 773 F.3d 536 ........ 13
Israelitt v. Enterprise Services, 78 F.4th 647 ........ 17
Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562 ........ 31
Jones v. Calvert, 551 F.3d 297 ........ 21
Kelly v. Town of Abingdon, 90 F.4th 158 ........ 29
Lane v. Franks, 573 U.S. 228 ........ 25
Martin v. Wood, 772 F.3d 192 ........ 16
McCray v. Md. Dep't of Transp., 741 F.3d 480 ........ 14
McGuire v. LORD Corp., 456 F. Supp. 3d 729 ........ 5
Muldrow v. City of St. Louis, 601 U.S. 346 ........ 34
Mylan Labs, Inc. v. Matkari, 7 F.3d 1130 ........ 3
Owens v. Balt. City State's Attorneys Office, 767 F.3d 379 ........ 24
Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176 ........ 4
Reyazuddin v. Montgomery County, 789 F.3d 407 ........ 33
Ridpath v. Bd. of Governors, 447 F.3d 292 ........ 27
Rogers v. Maryland, 2019 WL 2921785 (D. Md. 2019); In re Mills, 287 F. App'x 273 (4th Cir. 2008); Bush v. Rauch, 38 F.3d 842 ........ 22
Sciolino v. City of Newport News, 480 F.3d 642 ........ 27
Sigley v. ND Fairmont LLC, 129 F.4th 256 ........ 11
Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167 ........ 6
Strothers v. City of Laurel, 895 F.3d 317 ........ 36
Swierkiewicz v. Sorema, 534 U.S. 506 ........ 3
Sydnor v. Fairfax County, 681 F.3d 591 ........ 21, 22
Tekmen v. Reliance Standard Life Ins. Co., 55 F.4th 951 ........ 39
Thomas v. EOTech, LLC, No. 25-1094 (4th Cir. Mar. 4, 2026) ........ 12
Tinsley v. City of Charlotte, 854 F. App'x 495 ........ 37
Verizon Md. Inc. v. PSC, 535 U.S. 635, 645 ........ 15
Wells v. Fuentes, No. 23-1638 ........ 24
Will v. Michigan Dep't of State Police, 491 U.S. 58 ........ 3, 14
Ex parte Young, 209 U.S. 123 ........ 15, 16, 17, 28
Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597 ........ 4

Statutes, Rules, and Regulations: cited at the pages indicated in the text; principal provisions include 42 U.S.C. 12112, 12203; 29 U.S.C. 207; 42 U.S.C. 1983; Section 504 of the Rehabilitation Act; Fed. R. Civ. P. 8, 10, 12, 15, 56; 29 C.F.R. 541.200; 29 C.F.R. 1601.3(a).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STEVEN ANTHONY WRIGHT, | * | |
| Plaintiff, | * | Civil Action No. 1:25-cv-04220-BAH |
| | * | Hon. Brendan A. Hurson |
| v. | * | |
| MARYLAND JUDICIARY, | * | |
| ADMINISTRATIVE OFFICE OF | * | |
| THE COURTS, et al., | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

# PLAINTIFF'S OPPOSITION TO THE STATE DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiff Steven Anthony Wright, pro se, opposes the State Defendants' Motion to Dismiss (ECF 66). The First Amended Complaint alleges that Plaintiff disclosed a disability, requested accommodation, testified at a police trial board about document forgery, and reported court-records irregularities; that the institution terminated him three days later; and that after rehiring him it stripped his duties and disciplined him over a granted accommodation.

Rather than answer, the State attached three declarations and a General Release, and its heaviest grounds (II, employer status; III, the Release; V, EEOC exhaustion) are affirmative defenses or fact questions not resolvable on the pleading's face.

**The State filed the documents that impeach its own motion.** Haven swears Wisniewski told him Plaintiff refused a drop-off application over incomplete cover-sheet fields (Haven Decl. para 11); Wisniewski filed no declaration, and Haven's own March 4, 2025 email calls those fields "not fatal" with "no legal basis to require" them. He swears Plaintiff "requested 24 hours" (id. para 15); the attached form pre-prints that period, and Haven was not in the room. The State's

third declarant calls the EEOC charge "unperfected" (Hedges Decl. para 4) while attaching the Notice of Charge and the Right to Sue issued on it.

The Motion should be granted as to the Part II concessions and otherwise denied. If the Court considers the State's declarations, it should exclude them or convert and grant the Rule 56(d) continuance (Part III.B; Argument VII).

## II. PLAINTIFF'S CONCESSIONS (STATED AT THE THRESHOLD)

Plaintiff does not oppose the following. Each dismissal should be **without prejudice**, and in each instance the underlying factual allegations remain pleaded and are incorporated in the counts that survive.

(1) The 18 U.S.C. 1513 theory and the 42 U.S.C. 1985(2) limb within Count VI (Addendum 2). Count VI proceeds under 42 U.S.C. 1983 and the First Amendment. (2) The constructive-discharge label within Count IX; Count IX proceeds as ongoing, materially adverse retaliation. (3) ADA Title I money damages against the State entities and the official-capacity Defendants, and individual-capacity liability under Title I and Section 504; Plaintiff asks only that the ruling be written no more broadly than that, so that it does not reach the Section 504 damages track (which the State concedes is not immunity-barred), the prospective-relief track, or the individual-capacity Section 1983 claims that rest on independently pleaded constitutional rights. (4) Count X (Maryland Whistleblower Law), in full; this concession does not reach the reasoning of Ground IX (Argument VI.B). (5) Count XII's property-interest branch; the count proceeds on the liberty-interest, stigma-plus branch, which the Motion did not brief (Argument IV.F). (6) Count IX as to the INDIVIDUAL Defendants other than Banister; the count is preserved against the entity Defendants and against Defendant Banister in her official capacity (Argument IV.E). (7) Count VIII as presently pleaded. (8) Count XI (FLSA) as pleaded against the Maryland Judiciary and the Administrative Office of the Courts (Argument II.E-1). (9) Count XIII (intentional

infliction of emotional distress), in full; the conduct pleaded at FAC paragraph 93 remains pleaded and is incorporated in the counts that survive. (10) Official-capacity damages under 42 U.S.C. Sections 1983 and 1985 on Counts VI, VII, and XII; each proceeds only as an individual-capacity claim against the named Defendants personally. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

No other claim, theory, or remedy is conceded. Count V is otherwise defended, not conceded (Argument V).

## III. STANDARD OF REVIEW

**A. Fed. R. Civ. P. 12(b)(6): plausibility, facts as true, inferences to Plaintiff.** A complaint need only "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Through Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), the State asks whether "it appears certain that the plaintiff can prove no set of facts which would support its claim" (ECF 66-1 at 14-15), the retired Conley v. Gibson formulation. Twombly, 550 U.S. at 562-63.

Two corollaries control here. First, McDonnell Douglas "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002). Ground XII faults the pleading for not establishing a McDonnell Douglas comparator element, and Grounds VI and VII likewise convert proof standards into pleading requirements. Neither is a basis for dismissal. Second, a Rule 12(b)(6) motion "generally cannot reach the merits of an affirmative defense" unless "all facts necessary to the affirmative defense clearly appear on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (cleaned up; emphasis in original). The Release (Ground III), EEOC exhaustion (Ground V), and the FLSA exemption (Ground X) are affirmative defenses, and none appears on the complaint's face. Employer status (Ground II) is not an affirmative defense but an element, and the First Amended Complaint

pleads it; the State's contrary showing rests on control facts that are disputed and outside the pleading (Argument III.A).

**B. Rule 12(d): the declarations require either exclusion or conversion, and neither course supports immediate judgment on the disputed grounds.** The declarations and Release are outside the pleadings, and attachments are considered on Rule 12(b)(6) only if "they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015). If such matter "[is] presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (Addendum 7). Plaintiff asks the Court to exclude the sworn declarations and decide on the pleadings, Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp., 109 F.3d 993, 995 (4th Cir. 1997), in which event Grounds III, V and XIII lack record support. If the Court instead considers them, conversion follows and Rule 56(d) requires a reasonable opportunity for discovery. Argument VII develops both paths. Rule 12(d) binds Plaintiff equally: his declaration and Exhibits C and D go to the conversion branch alone; Exhibits A and B document the administrative history the First Amended Complaint pleads, and Exhibit E is an official publication of the District Court of Maryland offered for what it states on its face. Philips, 572 F.3d at 180.

## ARGUMENT I. THE RELEASE DOES NOT SUPPORT DISMISSAL AT THIS STAGE AND DOES NOT REACH POST-REHIRE CLAIMS

*(Answering Ground III, ECF 66-1 Section III, printed pp. 20-24.)*

The State argues the "Letter of Resignation and General Release" signed March 8, 2025 waived every Commissioner-era claim.

**A. Threshold: an unpled affirmative defense not on the face of the First Amended Complaint.**

Release is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and Goodman bars reaching it unless every fact necessary to it appears on the complaint's face. Part III.A; Goodman, 494 F.3d at 464. The First Amended Complaint neither attaches, quotes, nor concedes the Release. Paragraph 43 alleges an employer-imposed 24-hour Friday-afternoon deadline with no employment attorney reachable, that Plaintiff "signed the resignation under explicit written protest of duress," and that "[t]he resignation was not voluntary . . . ." ECF 24 at 12. A complaint pleading coercion is not one on whose face a valid release "clearly appear[s]." The State's own McGuire v. LORD Corp., 456 F. Supp. 3d 729, 738-39 (E.D.N.C. 2020), reached a release on a motion to dismiss only because that plaintiff pleaded it; this case is the opposite, and a district court decision cannot displace the Fourth Circuit's rule in Goodman.

**B. Considering the Haven Declaration requires Rule 12(d) conversion, which is premature; Plaintiff files herewith a Rule 56(d) affidavit.**

The Haven Declaration's sworn narrative is outside the pleadings and not integral to the First Amended Complaint. The Court should exclude it for the reasons stated in Argument VII and resolve Ground III under Goodman; if it considers them, Rule 12(d) requires conversion and the discovery specified in Plaintiff's Rule 56(d) Declaration. A judge of this Court took the first path on an identically captioned motion. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). To the extent the Court finds a contemporaneous attachment integral and authentic, it may consider that document for what it states on its face, but not for a declarant's disputed characterization of it. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 168 (4th Cir. 2016).

**C. Voluntariness of a federal-rights waiver is a fact-bound totality question; the State bears the burden.**

A release of federal antidiscrimination claims is enforceable only if the employee's consent was knowing and voluntary. A court must determine "at the outset that the employee's consent to the settlement was voluntary and knowing." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15 (1974); accord Kendall v. City of Chesapeake, 174 F.3d 437, 441-42 n.2 (4th Cir. 1999) (dictum). The burden of establishing the defense rests on the State. Goodman, 494 F.3d at 464. The District of Maryland totality test weighs education and experience, the parties' roles in setting the waiver's provisions, clarity, time to study, opportunity for counsel, and consideration. Cassiday v. Greenhorne & O'Mara, Inc., 220 F. Supp. 2d 488, 493-94 (D. Md. 2002).[1] How the promised consideration was delivered is itself a fact question. The Release promises that the Judiciary "agrees to withdraw its letter of termination of employment" (ECF 66-3, Attachment D), yet the Judiciary's own personnel record codes the separation "Termination," reason "Resigned in Lieu of Term - DNH" (Ex. D). Here the material factors favor Plaintiff or are disputed.

Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 174 (4th Cir. 1988), holds that a resignation "may be found involuntary if on the totality of circumstances it appears that the employer's conduct in requesting resignation effectively deprived the employee of free choice in the matter." Id. at 174. Stone supplies the governing factors, which the Motion itself block-quotes: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." Id.; ECF 66-1 at 22. Three of the four are answered against the State by its

[1] Cassiday upheld a release on a developed summary-judgment record and opposite facts. Id.

own Exhibit 1: the only alternative offered was a for-cause termination already declared effective, and a Defendant escorted Plaintiff from the building to his vehicle on March 7, the day before he executed the Release (factor 1; Wright Decl. paras 29, 33); the period was twenty-four hours running across a Friday evening and a weekend (factor 3, Argument I.E); and Plaintiff selected no effective date, the form pre-printing the instruction "(Tomorrow's Date and Time -24 hrs)" and Wisniewski filling it in (factor 4, Argument I.D; ECF 66-3, Attachment D). As to factor 2, the acknowledgment box states that the signature "in no-way indicates an execution of this form or my desire to resign in lieu of termination," which is at minimum a dispute about what Plaintiff understood he was choosing. Stone found voluntariness as a matter of law on materially different facts: good cause for the threatened termination established beyond dispute, a sophisticated thirty-year administrator, and five months of acquiescence before suit. Here the asserted good cause is impeached by the State's own exhibits (Argument I.F).

**D. The 24-hour window was employer-fixed boilerplate, and the declarant who swears Plaintiff requested it was not there.**

**Haven paragraph 15 is not made on personal knowledge.** A declaration offered on summary judgment must be made on personal knowledge and show the declarant competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4); see Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962 (4th Cir. 1996) (such affidavits "cannot be conclusory . . . or based upon hearsay"). Haven was not present on March 7, 2025; the persons present were Defendants Wisniewski and Ellingson. (Wright Decl. para 25.) He cannot testify to what Plaintiff asked for in a meeting he did not attend, and the two Defendants who were there filed no declaration, though one is the source he names for paragraphs 11 and 14.

The declaration's own drafting confirms the gap. Where Haven learned something secondhand he says so: at paragraph 11, "Administrative Commissioner Wisniewski told me," and at paragraph

14, "Administrative Commissioner Wisniewski informed me of this on March 6." Paragraph 15 attributes the twenty-four-hour request to no one, and states the surrounding events in the passive voice: "Mr. Wright was issued a termination letter." The blanket recital at paragraph 1 that Haven is "competent to testify, upon personal knowledge, to the facts set forth herein" cannot supply knowledge he does not have. The sentence carrying Ground III's central factual assertion is therefore inadmissible, and the employer's own form contradicts it in any event.

The employer's own form supplies the sentence Haven swears to: its pre-printed acknowledgment box reads "I am requesting 24 hours to deliberate and/or consult with counsel," and the deadline blank carries the instruction "(Tomorrow's Date and Time -24 hrs)." (ECF 66-3, Attachment D.) Plaintiff asked whether he could have time to decide; the only alternative offered was to sign at that moment. Administrative Commissioner Wisniewski then wrote the date, the time and the matching deadline on the form. Plaintiff wrote his name and signed. (Wright Decl. paras 25-28.) The termination letter states the period as a command: "you must return the Letter of Resignation and General Release to the Administrative Commissioner within 24 hours." Id., Attachment C. Plaintiff asked for time to decide. What he did not ask for, and could not select, was twenty-four hours: that period was pre-printed, and a clause an employee must sign to obtain any deliberation time at all fixes the employer's term, not the employee's request. Under Cassiday the parties' "respective roles . . . in determining the terms and conditions of the waiver," 220 F. Supp. 2d at 493, weigh for Plaintiff.

The same box disclaims execution: "My signature below only acknowledges my understanding of this time-frame and in no-way indicates an execution of this form or my desire to resign in lieu of termination." (ECF 66-3, Attachment D.) On the form's own terms the March 7 signature

was not an execution, and what the parties understood it to be cannot be resolved without discovery into the form's provenance. Fed. R. Civ. P. 56(d) (Addendum 8).

**E. The window spanned no full business day and afforded no meaningful opportunity to obtain counsel.**

The period ran from Friday 3:08 PM to Saturday 3:08 PM, spanned no full business day, and carried no revocation right. Plaintiff attempted the consultation the form itself invites "if I so desire": he contacted several law firms before the deadline and obtained no advice in time. (Wright Decl. para 32.) The time-to-study and counsel-opportunity factors weigh heavily against a knowing and voluntary waiver. See Cassiday, 220 F. Supp. 2d at 493-94.

**F. The resign-or-be-fired-for-cause framing fails: the asserted good cause is contested by the State's own documents.**

The State leans on Stone: a resign-or-be-fired choice is not, standing alone, involuntary. ECF 66-1 at 23. But Stone conditions that on good cause, "absent evidence that his superiors lacked good cause for the threatened termination." 855 F.2d at 177. The State's own filings supply that evidence.

The asserted cause is misconduct in processing charging applications. Three days before the termination Haven wrote Plaintiff that the cover-sheet fields he was later faulted for are not required: "There is no rule, statute, policy or procedure that requires the 'date' and 'place' on DC/CR 001 to be completed in order for probable cause to be established. . . . it is not fatal. . . . there is no legal basis to require it." (Haven Decl. Attachment A.) His declaration nonetheless asserts Plaintiff "refused because the date and location were not completed on the cover sheet." Haven Decl. para 11. Nor did Plaintiff refuse. Defendant Ellingson directed him to email Haven about the governing policy and told him she would hold the application until Haven answered; Haven did not answer until the next day; and from March 4, 2025 Plaintiff's duty station was

Essex, where he remained until the termination. (Wright Decl. paras 12-13.) The application was in his supervisor's hands, not his, and he never had the opportunity to complete it.

Nor is there one coherent separation reason. Haven attributes the separation to the March 5, 2025 charging incident, swearing Plaintiff "contacted a police detective and had him change the charges" (para 14), while the Memorandum states as to that same incident that Plaintiff "completed his review, did not find probable cause for first-degree murder, and found probable cause for second-degree murder." ECF 66-1 at 7-8. Both paragraphs rest on hearsay attributed to Wisniewski, who filed no declaration. Fed. R. Civ. P. 56(c)(4). The neutrality characterization rests on the same disputed account. The Memorandum asserts that "[b]y assisting law enforcement with adding a charge so that he could find probable cause, Mr. Wright compromised the neutrality of his position as a judicial appointee." ECF 66-1 at 8. That is a conclusion drawn from a telephone call no declarant with personal knowledge describes. Contacting the officer was the trained response to a defect, not a departure from the role: Plaintiff was trained that where a defect could result in the release of a person charged with a serious offense, the commissioner contacts the submitting officer so the defect can be corrected, and that charging documents were returned for correction routinely. Murder in the first degree was the only offense charged, so no probable cause on it meant release. Plaintiff swears he escalated to his Managing Commissioner by email before telephoning anyone, told her in advance that he would ask the officer whether he would add a charge and was not told not to call, did not tell the officer what to charge, and held the person without bond. (Wright Decl. paras 19-21.) Nor was this the addition of an unrelated offense: murder in the second degree is a lesser included offense of murder in the first degree. Plaintiff heard the State's Attorney's premeditation theory through his Managing Commissioner and did not adopt it. (Wright Decl. para 19.) The termination letter states the grounds as

"Violations of the MD Rules Titles 18-201.2, 18-202.2, and 18-202.5." (ECF 66-3, Attachment C.) The first two require a Commissioner to promote public confidence in "the independence, integrity, and impartiality of the judiciary" and to "perform all duties impartially and fairly." ECF 66-1 at 6. Declining the prosecuting authority's theory of an element is compliance with those rules.[2]

That same evening Defendant Ellingson wrote Plaintiff on the same matter, attributing the first-degree starting point to the State's Attorney and coaching him through premeditation. (Wright Decl. paras 6, 17-21; Ex. C.) A Defendant supervisor coached Plaintiff through the charging question after the conduct the State says required separation, and the day before Haven swears he learned of it. Haven Decl. para 14.[3]

**G. Plaintiff's same-day written protest is contemporaneous evidence that voluntariness cannot be resolved as undisputed.**

Plaintiff transmitted the executed Release to its designated recipient, Administrative Commissioner Wisniewski, copying Managing Commissioner Ellingson, and wrote in the body of that same email: "Administrative Commissioner Wisniewski, I am submitting my signed resignation; however, I want to make it clear that this decision was made under pressure, as I was not given sufficient time to consult with an attorney before the deadline imposed. Given the circumstances, I felt I had no real choice but to sign."

This is the "explicit written protest of duress" pleaded at paragraph 43, of record at ECF 11-21, and may be considered without conversion concerns. It is also sworn in the accompanying declaration. (Wright Decl. para 33.) Dated the day of signing, it is contemporaneous evidence

[2] The third, Md. Rule 18-202.5, requires compliance with "reasonable directives of a judge or other judicial appointee with supervisory authority." ECF 66-1 at 6. A directive to find probable cause on an element the commissioner does not find would offend the two charged before it.

[3] The State's point that misconduct, even disability-related, supports firing, Sigley v. ND Fairmont LLC, 129 F.4th 256, 261 (4th Cir. 2025), assumes the contested misconduct; Sigley affirmed on a developed record, not a disputed pleading-stage predicate.

against voluntary assent and against any inference of later acquiescence, and it is the antithesis of the five months of acquiescence that confirmed Dr. Stone's resignation was voluntary. Stone, 855 F.2d at 178.

**H. The rehire despite the Release's "never apply again" term bears on scope and implementation.**

The Release bars reapplication: "I also agree not to apply for employment with any unit of the Maryland Judiciary in the future." (ECF 66-3, Attachment D.) Defendant Banister swears that Plaintiff "applied for the position of paralegal" and that she sat on the 3-person panel that interviewed him; a Maryland Judiciary unit, the Circuit Court for Baltimore City, hired him on May 29, 2025. (Banister Decl. paras 4-5; ECF 34-2 para 5.) If the State's position that the two courts are "wholly separate legal entities" (ECF 66-1 at 28) is accepted, the scope of what the Release reached is disputed; if not, the same institution disregarded a material term it now invokes. The point goes to scope and implementation, not to formation.

**I. Even a valid Release cannot reach the City, post-rehire conduct, or the counts the State itself omitted.**

**1. The Release does not name or reach the Mayor and City Council of Baltimore City.** By its terms it runs only to "the Maryland Judiciary, its officers, agents and employees." (ECF 66-3, Attachment D.) The State has not established that a separately represented entity the Release never names falls within the parties it releases.

**2. The Release cannot reach post-rehire conduct.** Signed March 8, 2025, the Release purports to waive "any and all legal claims that I might have, now and in the future." (ECF 66-3, Attachment D.) Breadth is the defect, not the answer: the State cites no authority that this Release prospectively extinguishes ADA or Section 504 claims arising from conduct after its execution. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 51-52 (1974); cf. Thomas v. EOTech, LLC, No. 25-1094, slip op. at 4, 14 (4th Cir. Mar. 4, 2026) (published) (parties may not

prospectively render untimely a Title VII or ADEA suit). Whatever it reaches as to the March 2025 separation, it cannot reach the separate employment relationship beginning May 29, 2025. Outside any release scope: the post-rehire accommodation conduct (Counts I and III), the 2026 retaliation (Count IV), and the post-filing retaliation at the live core of Count IX.

**3. The Release cannot reach the counts the State itself did not list as released.** The State's Memorandum omits Count IX from its release lists, consistent with its separate position that Plaintiff "is still employed."

**J. Fallback and conclusion on Argument I.**

Even giving the Release effect, the correct disposition is not dismissal. The Court should decline to reach it under Rule 12(b)(6), Goodman, 494 F.3d at 464; if it is considered, conversion and the Rule 56(d) discovery must precede any voluntariness ruling; and in no event may the Release dismiss claims against the City or post-rehire conduct, including Count IX. The Release ground should be denied.

## ARGUMENT II. ELEVENTH AMENDMENT IMMUNITY DOES NOT BAR THE CLAIMS AS PLEADED

*(Answering Ground I, ECF 66-1 Section I, printed pp. 16-20.)*

Ground I is correct only as to official-capacity money damages; it does not reach Section 504, prospective relief, or individual-capacity damages.

**A. The State bears the burden; Ground I is pure law read against the complaint in Plaintiff's favor.** The Fourth Circuit treats Eleventh Amendment immunity as akin to an affirmative defense that the defendant bears the burden of demonstrating. Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014). It is therefore the State's burden to establish immunity, not Plaintiff's to disprove it.

**B. Plaintiff concedes the one thing the State gets right; the ruling should be narrow.**

Congress did not validly abrogate immunity for private Title I ADA money-damages suits. Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); McCray v. Md. Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014). Plaintiff does not oppose dismissal of Title I money damages in Counts I, III, IV, V and IX against the State entities and the official-capacity Defendants, or of official-capacity damages on the Section 1983 and 1985 counts. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

**C. The Section 504 counts are NOT barred; the State concedes it in footnote 6; federal funding waives immunity.** "To the extent Counts I, II, III, IV, V, and IX raise claims under Section 504 of the Rehabilitation Act, those claims are not barred by the Eleventh Amendment, though they should be dismissed on other grounds."

ECF 66-1 at 16 n.6. The merits are answered in Argument V.

The concession is correct: Garrett addressed abrogation, while Section 504 rests on waiver. Accepting federal financial assistance knowingly and voluntarily waives immunity to Section 504 suits, including money damages. 42 U.S.C. 2000d-7 (Addendum 6); Constantine v. Rectors & Visitors of George Mason University, 411 F.3d 474, 491-94 (4th Cir. 2005).

The FAC alleges the AOC "receives federal financial assistance, including through the Jurisdictional/Family Services Grant that directly funds Plaintiff's current paralegal position" and that "[b]y accepting federal financial assistance, Defendants waived Eleventh Amendment immunity from suit under Section 504." ECF 24 para 6; ECF 24 at 16, para 71. The funding allegation is taken as true on Rule 12(b)(6). Any program-nexus question is answered by the statute: "program or activity" reaches "all of the operations of" a state department or agency. 29 U.S.C. 794(b)(1)(A) (Addendum 5).

**D. Prospective injunctive and declaratory relief against the officials is NOT barred; Garrett footnote 9 says so.** Ex parte Young, 209 U.S. 123 (1908), permits prospective official-capacity relief from ongoing federal-law violations, and the inquiry asks whether the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). The State's lead authority preserves this track in the footnote it pins but does not quote: Title I "standards can be enforced ... by private individuals in actions for injunctive relief under Ex parte Young." Garrett, 531 U.S. at 374 n.9. Ground I addresses only money damages, but the State asks that Title I claims not "be brought against the State Defendants" at all (ECF 66-1 at 19), which its authority does not support. The Court's observation that immunity "would prevent a finding of likelihood of success" (ECF 23 at 9 n.6) measured the pre-amendment record against the preliminary-injunction standard; the Verizon inquiry on a Rule 12(b)(6) motion asks only whether the pleading alleges an ongoing violation and seeks prospective relief.

Both Verizon prongs are met on the pleading's face: the Prayer seeks prospective relief and the violation is ongoing.[4]

The track must remain open as to the officials who can deliver the relief. Under the Judiciary's own policy the accommodation decision rests with an "Administrative Head," which for a circuit court is "the Clerk of the Court for all employees under the Clerk's supervision, and the County Administrative Judge for all state employees under their supervision." Policy 2.1(b)(4)(C) (Addendum 12). Defendant Carrion holds that authority for state employees of the Circuit Court, and the policy's own scope clause confirms Plaintiff falls within it regardless of pay source: it covers "all persons employed by a court" "regardless of the source of the employee's

[4] The Prayer seeks prospective relief at items 9 and 13. As to the ongoing violation, the Banister Declaration confirms Plaintiff "is still employed" (ECF 66-4 para 9) and that only the written-instructions request was granted (id. para 8; id., Attachment B; see n.22), and the June 8, 2026 Letter of Warning is unrescinded (ECF 57-1).

compensation (e.g., county, state, federal, grant)." Policy 2.1(a)(2)(A)(ii)(II) (Addendum 12). Which side of the Clerk/Administrative-Judge line Plaintiff falls on is not a question this track needs to resolve now. The State cannot invoke immunity to erase the entire category of official its own policy vests with authority over the employment process while conceding prospective relief remains available.[5]

**E. The official-capacity "sweep" of the Section 1983/1985 counts reaches only official-capacity DAMAGES; individual-capacity damages survive.** Ground I sweeps Counts VI, VII, VIII, X, XI, XII, and XIII into the official-capacity bar and invokes Martin v. Wood against the individual-capacity labels. It reaches only official-capacity money damages: the Eleventh Amendment "does not erect a barrier against suits to impose 'individual and personal liability' on state officials under" Section 1983. Hafer v. Melo, 502 U.S. 21, 30-31 (1991). Martin v. Wood, 772 F.3d 192 (4th Cir. 2014), does not reach genuine individual-capacity claims.[6] The Fourth Circuit has refused to apply Martin's factors to Section 1983 claims, because doing so "would undermine the very purpose of" the statute. Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018). Plaintiff seeks personal damages from the individuals for their own retaliatory and unconstitutional conduct, not treasury-funded relief. Whether they state a claim or clear qualified immunity is Argument IV; the Eleventh Amendment does not dismiss them. Hafer addresses claims under 42 U.S.C. Section 1983 and is not offered on Count XIII.

**E-1. Count XI (FLSA) is withdrawn as pleaded against the Maryland Judiciary and the Administrative Office of the Courts; the pleaded violations are preserved.** Congress did not validly abrogate the States' Eleventh Amendment immunity from private Fair Labor Standards

---

[5] Ex parte Young does not reach purely retrospective relief. Green v. Mansour, 474 U.S. 64, 71-73 (1985). Under this track Plaintiff seeks only prayer items 9 and 13.

[6] Martin dismissed claims tied inextricably to official duties, where the relief sought (back pay) was payable from the treasury.

Act damages actions. Abril v. Commonwealth of Virginia, 145 F.3d 182, 189-91 (4th Cir. 1998). Plaintiff therefore withdraws Count XI as pleaded against the Maryland Judiciary and the Administrative Office of the Courts, without prejudice to the substantive violations alleged at FAC paragraph 89, which the Motion does not address, and without prejudice to any claim against any party not entitled to that immunity. Alden v. Maine, 527 U.S. 706, 756 (1999).

**F. Remedies discipline.** On the Section 504 counts against the entities Plaintiff seeks economic loss and equitable relief; emotional-distress damages are unavailable and are not sought. Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212 (2022). ADA Title I relief runs only against the officials in their official capacities under Ex parte Young, and is prospective injunctive and declaratory only. The ADA retaliation limb of Counts IV and IX seeks equitable relief only, because the ADA's own remedial chain ends there. Israelitt v. Enterprise Servs. LLC, 78 F.4th 647 (4th Cir. 2023).[7] The Section 504 limb therefore retains the make-whole damages described above, subject to Cummings. Section 1983 damages run against the individuals personally (Hafer) and prospective relief against the officials (Ex parte Young), not against the State or its agencies (Will). Declaratory relief is sought only as to ongoing violations and in aid of permissible prospective relief. Green v. Mansour, 474 U.S. 64, 71-73 (1985).

## ARGUMENT III. THE EMPLOYER-IDENTITY AND EXHAUSTION GROUNDS FAIL ON THE STATE'S OWN PLEADINGS AND EXHIBITS

*(Answering Ground II, ECF 66-1 Section II, printed p. 20; Ground V, Section V, printed pp. 29-31.)*

**A. GROUND II: employer status is a fact question the pleadings do not resolve.** Ground II rests on appointment authority alone: Commissioners "hold office at the pleasure of the Chief

[7] 42 U.S.C. 12203(c) points to 12117(a), which points to 2000e-5(g)(1), which lists equitable remedies (Addendum 3). That chain is ADA-specific and does not reach Section 504, whose remedies run through 29 U.S.C. 794a(a)(2) and Title VI (Addendum 4).

Judge of the District Court." CJP Section 2-607(b)(2) (memo Section II, printed p. 20). The State cites no case.

The hybrid control test pierces such formalities: "Otherwise, an employer who exercises actual control could avoid Title VII liability by hiding behind another entity." Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404, 415 (4th Cir. 2015); see Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440, 448 (2003). Control is foremost among the factors, which include hiring and firing, day-to-day supervision, workplace and equipment, payroll and records, and work integration. Butler, 793 F.3d at 414.

The Judiciary's own policies answer the payroll premise. Both reach every person employed by a judicial entity "regardless of the source of the employee's compensation." Policy 2.6(a)(2)(A); Policy 2.1(a)(2)(A) (Addendum 11, 12). Policy 2.2 goes further and places the AOC's Judiciary Human Resources Division inside the termination consultation and approval process. It names "District Court Commissioner" as a covered at-will Special Appointment, Policy 2.2(d)(7)(F), and requires the Administrative Head to consult the JHRD before terminating an at-will employee, providing that the termination "will not be approved" if the JHRD determines it violates law or the employee's constitutional rights. Id. 2.2(c). The JHRD is "[t]he division within the AOC" responsible for employer-employee relations. Id. 2.2(b) (Addendum 13). On the Judiciary's own terms an AOC division had to be consulted before this termination and could withhold approval of it.

The FAC pleads that control. The AOC "at all relevant times . . . exercised direct control over Plaintiff's employment, policies, disciplinary procedures, accommodation processes, and termination as a District Court Commissioner" (para 6), and "[t]he rehire required AOC-level authorization" while "[t]he Court Administrator confirmed in writing that Plaintiff holds judicial

employee status" (para 49). For the current paralegal role, the Circuit Court is pleaded as the "direct employer of record" (para 7) and the City as payroll entity and joint employer (para 8). The Motion's own quasi-judicial immunity ground rests on the allegation that Wisniewski's deletion of Plaintiff's case record "requir[ed] AOC-level JIS authorization." ECF 66-1 at 36-37 (quoting ECF 24 para 15). Joint employment is fact-intensive and seldom resolved on dismissal. The separately represented co-defendant City places that control elsewhere, stating that it "exerts no control over the hiring and firing decisions of the Maryland Judiciary." ECF 34-1 at 3.[8] Ground II also rests on the Hedges Declaration (ECF 66-5), matter outside the pleadings not integral to the FAC. Philips, 572 F.3d at 180. The Court should exclude it and deny Ground II on the pleadings. A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). On conversion Plaintiff must be afforded discovery on the control facts: notice of possible conversion "is only one of the requirements of Rule 12," and converting without a reasonable opportunity for discovery is an abuse of discretion. Gay v. Wall, 761 F.2d 175, 177-78 (4th Cir. 1985).[9] Even crediting appointment authority, the Circuit Court remains a named Defendant and the pleaded direct employer of record.

**B. GROUND V: the State's own Exhibit 3 defeats the "unperfected charge" and "no notice" theories.** Ground V makes four arguments (ECF 66-1 at 29-31): the charge was "unperfected"; a perfected charge would not have noticed the "true employer"; no charge was attached; and post-Right-to-Sue conduct is unexhausted.

[8] The City states that it "would properly be classified as Plaintiff's joint employer beginning May 30, 2025" for FLSA wage claims, and that it administers his payroll and personnel records. ECF 41 at 6; ECF 34-2 para 5. It made that statement arguendo.

[9] Gay reversed where "summary judgment was granted when the plaintiff had barely begun discovery." Id.

**Threshold.** Exhaustion is a forfeitable processing rule, not a jurisdictional bar (Argument VII.A-0). The FAC pleads a timely charge (No. 531-2025-03965), a Right to Sue issued December 19, 2025, and suit within 90 days. FAC para 4. Plaintiff does not resist consideration of the attached EEOC documents: the First Amended Complaint pleads the administrative timeline, so they are integral to it, and they defeat Ground V on their face. Only the declarant's characterization of them stays outside, which is the one thing Goines says a court should not credit. 822 F.3d at 168. Ground III is the opposite case: the First Amended Complaint neither attaches, quotes, nor relies on the Release's terms, so Goodman controls in full.

**V-1 does not establish nonexhaustion as a matter of law, and the State's own Exhibit 3 is why.** "Unperfected" is Hedges's word (Hedges Decl. para 4); it appears in neither attached EEOC document. Attachment A cuts against it: the EEOC "has received sufficient information from Charging Party for the agency to regard the communication as a Charge of Discrimination." Its further statement that respondent "will receive electronic notification when a perfected charge (EEOC Form 5) is received" shows perfection concerns a later transmission, not the charge's existence. Hedges swears his office received the Notice on June 19, 2025 and the Determination on that same charge number on December 19, 2025. Id. paras 4, 6. There is in any event no verification gap: the June 10, 2025 Form 5A is signed under its printed declaration "I declare under penalty of perjury that the above is true and correct." (Ex. A.) The Commission's own regulation defines "verified" to include a charge "supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. 1601.3(a); see Edelman v. Lynchburg College, 535 U.S. 106 (2002).

**The EEOC's own writing records that it docketed the matter as a Charge and notified the Respondent.** Its investigator wrote Plaintiff on July 17, 2025 that "[b]ecause we received your

signed EEOC Form 5A, EEOC has docketed this matter as a Charge, has notified Respondent that this Charge has been filed, and has otherwise taken the steps necessary to preserve your right to file a private civil action with respect to the issues in the Charge." (Ex. B.) The same email assigns perfection to the agency, which undertook to "draft and send" the Form 5 after the intake interview. Id. Plaintiff met the one precondition stated and no Form 5 ever reached him. (Wright Decl. paras 34-36; Ex. B.) Ground V faults Plaintiff for the absence of a document the agency undertook to prepare. Such "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." Love v. Pullman Co., 404 U.S. 522, 527 (1972).

**V-2 does not survive the undisputed fact of actual notice.** Suit scope is what is "reasonably related" to the charge, not its exact words. Sydnor v. Fairfax County, 681 F.3d 591 (4th Cir. 2012). The Notice of Charge is addressed to "Maryland Judiciary / District Courts / Circuit Courts (all counties and Baltimore City) / Courts of Appeals," care of Hedges at the AOC, and Hedges swears his office received it and the Right to Sue. Id. paras 4, 6. The agency's issue coding does not limit the suit, and the charge narrative alleges both failure to accommodate and retaliation under the ADA. Ex. A at 3.

**V-3 confuses allegation with attachment; the charge is filed herewith as Exhibit A.**[10]

**V-4 fails for three independent reasons.** First, Section 504 carries no EEOC exhaustion prerequisite: the charge requirement comes from Title VII, which ADA Title I incorporates while Section 504 incorporates Title VI. 42 U.S.C. 12117(a); 29 U.S.C. 794a(a)(2) (Addendum 3, 4). Second, retaliation for filing the charge may be raised first in the district court, without a second charge. Jones v. Calvert Group, Ltd., 551 F.3d 297, 302-03 (4th Cir. 2009), abrogated on other

[10] No charge need be attached at Rule 12(b)(6). Exhibit A is the June 10, 2025 Form 5A, naming "MARYLAND JUDICIARY" at the AOC's address.

grounds by Fort Bend, 587 U.S. 541. Third, whether a later accommodation limb is reasonably related to a charge concerning the same disability, the same accommodation subject and the same employer side is fact-specific and unsuited to dismissal. Sydnor, 681 F.3d 591.

**C. Institutional attribution.** It is the position of the Office of the Attorney General of Maryland, which represents the State Defendants (ECF 31), and of the Administrative Office of the Courts, as stated in Ground II at printed page 20, that "[n]either AOC nor its head . . . had or has authority to hire or terminate" Plaintiff and that he "has never been an employee of the AOC." That position sits against the AOC's own policy requiring a JHRD consult before this termination (Argument III.A) and against the EEOC's notice of the charge to Hedges at the AOC (Argument III.B). Employer status is not resolved on these pleadings.

## ARGUMENT IV. THE INDIVIDUAL-CAPACITY CLAIMS ARE NOT BARRED BY QUALIFIED OR QUASI-JUDICIAL IMMUNITY

*(Answering Grounds IV and VIII, ECF 66-1 at printed pp. 24-29, 35-37.)*

**A. Quasi-judicial immunity does not reach personnel and supervisory acts.** Ground VIII argues the individual Defendants performed "tasks integral to the judicial process," citing Rogers v. Maryland, No. 19-CV-1467-PWG, 2019 WL 2921785 (D. Md. July 8, 2019); Bush v. Rauch, 38 F.3d 842 (6th Cir. 1994); and In re Mills, 287 F. App'x 273 (4th Cir. 2008). Rogers and Davis concern a commissioner's own warrant and bond decisions. Bush and In re Mills reach administrative acts only at a judge's direction: Bush's administrator "was not acting in a judicial capacity" but was "carrying out the court order of Referee Rauch," 38 F.3d at 847, and In re Mills denied immunity because the act was "not specifically authorized by the judicial officer," 287 F. App'x at 279. No judicial direction is pleaded here.[11]

[11] None of the Ground VIII authorities is binding published Fourth Circuit authority on the question presented: Rogers and Pope v. Fletcher-Hill, No. 21-CV-2935-LKG, 2021 WL 5882464 (D. Md. Dec. 10, 2021), are unreported decisions of this Court; Davis v. DiPino, 337 Md. 642 (1995), is a state decision; Bush is out of circuit; and In re Mills is unpublished.

In re Mills also cuts the other way.[12]

Ground VIII omits the controlling authority. Forrester v. White, 484 U.S. 219, 224, 229-30 (1988), applying the functional test, held a judge's demotion and discharge of a court employee administrative rather than adjudicative and reversed the immunity grant.[13] Forrester left qualified immunity open, id. at 230, which Part B addresses. It controls the pleaded acts, none of which is a warrant approval, an original probable-cause finding, or a bail setting.[14]

Ground X contradicts the premise: commissioners are, "as a matter of law, . . . responsible for independent decision making in the determination of probable cause" and so "regularly exercise independent discretion in decision making." ECF 66-1 at 39. A supervisor's directive to change a determination the statute assigns to the commissioner is supervision of the adjudicator, not adjudication. Forrester, 484 U.S. at 229.

The State's own test defeats it on the third factor. The Motion asks whether "adequate procedural safeguards exist to protect against constitutional deprivations," ECF 66-1 at 35-36 (quoting Howard v. Food Lion, Inc., 232 F. Supp. 2d 585, 595 (M.D.N.C. 2002), citing Ostrzenski v. Seigel, 177 F.3d 245, 249 (4th Cir. 1999)). That factor was satisfied in Ostrzenski, which affirmed immunity, because state law gave the physician "notice and an opportunity for a hearing" before any disciplinary action. 177 F.3d at 251. The FAC pleads the reverse: a

---

[12] The panel affirmed the denial of a motion to dismiss because the claim ran not to "a quasi-judicial decision" but to "the defendants' decision of how to execute the warrant," holding the "state defendants clearly are not entitled to absolute quasi-judicial immunity." 287 F. App'x at 279.

[13] The Judiciary says the same of its own. Policy 2.1 reaches judges only "to the extent that certain judges serve as the Administrative Head of a judicial entity and, therefore, perform administrative duties consistent with this policy," and for the District Court those Administrative Heads include the Chief Judge and the Administrative Commissioner. Policy 2.1(a)(2)(B)(ii), (b)(4)(D) (Addendum 12).

[14] Haven's job-performance directive (FAC para 12); Bowen's promotion denials and role in the termination (para 13); Ellingson's and Wisniewski's roles in the termination (paras 14, 15, 79); Banister's post-filing cease-and-desist and duty removal (para 85); and Smoluk's charging-policy directives (para 18). Two acts stand apart: Ellingson's crossing out Plaintiff's name on a denied charging application and reissuing charges she selected (FAC paras 14, 25), and the JIS deletion of his determination (paras 15, 25). Neither is an original probable-cause finding; Plaintiff seeks no damages for any charging determination itself, and the alteration and deletion of the record of his completed determinations is pressed in Count VI as retaliatory interference and is otherwise motive evidence.

framework designed to deny pre-deprivation process (para 91), imposed by a 24-hour Friday ultimatum with no hearing (para 43).

Immunity is personal to the official who performed the function, never reaches the entity Defendants, and does not dispose of prospective relief. Congress restricted injunctive relief against a judicial officer only as to acts "taken in such officer's judicial capacity," 42 U.S.C. 1983 (Addendum 1), leaving administrative acts unaffected and keying to the same distinction Forrester draws.

**B. The State invoked qualified immunity but did not meaningfully brief the clearly-established prong.** Section IV recites that the Court must "decide whether the right was clearly established at the time of the violation," then supplies only the conclusion that Plaintiff "failed to allege a clearly established right was violated." ECF 66-1 at 24. The section names one of ten individual Defendants.

The State's own Fourth Circuit citation (ECF 66-1 at 35) answers Ground IV as well. In re Mills affirmed the denial of a Rule 12(b)(6) motion asserting qualified immunity, holding that "[t]here is no heightened pleading standard for qualified-immunity cases" and that a complaint need only give the defendant fair notice of the claim and its grounds. 287 F. App'x at 280 (citing Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001); Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam)). Section IV asks this Court to do at the pleading stage what the panel in the State's own authority refused to do. The burden is split: Plaintiff must show a violation, and the official must show the asserted right was less than clearly established. Wells v. Fuentes, No. 23-1638 (4th Cir. Jan. 22, 2025). The State left unbriefed the prong it bears.[15] Retaliatory motive (Counts VI, VII,

[15] At the pleading stage that defense "faces a formidable hurdle" and "is usually not successful." Owens v. Balt. City State's Attorney's Office, 767 F.3d 379, 396 (4th Cir. 2014).

IX) and the misconduct charge's falsity (Count XII) are fact questions not resolvable on allegations taken as true. Iqbal, 556 U.S. at 678-79.

**C. Count VII (First Amendment retaliation) states a clearly established claim; the State never engaged Lane v. Franks.** The State's Count VII analysis is one four-sentence paragraph citing no count-specific authority: it is "not clear what, if any, established right" is claimed, and the count "does not allege any action taken by any individual in retaliation for said speech." (ECF 66-1 at 25.)

The right is clearly established. "Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes." Lane v. Franks, 573 U.S. 228, 238 (2014). Plaintiff testified as a fact witness about an officer's bail-bond forgery, outside his commissioner duties: citizen speech at Lane's core.[16]

The "no action alleged" premise fails on the State's own recital that Plaintiff was "terminated three days after he testified." ECF 66-1 at 11-12. The FAC pleads that Wisniewski was "present at both the trial board and the termination," FAC para 79, and "participated in delivering Plaintiff's termination," FAC para 15. On a First Amendment retaliation claim a plaintiff must allege that the defendant "was aware of her engaging in protected activity" and some "degree of temporal proximity to suggest a causal connection." Constantine v. Rectors & Visitors of George Mason University, 411 F.3d 474, 501 (4th Cir. 2005). The FAC pleads both, and a plaintiff need not plead a prima facie case at all. This is knowledge by officials who participated in the termination plus a three-day interval, not temporal proximity alone.

**D. Count VI (witness retaliation) is not duplicative of Count VII; the 1983/First Amendment core survives.** Count VI rests on the same March 3 and 4, 2025 trial-board

[16] Count VII rests on citizen-speech predicates, not job-duty charging speech drawing a Garcetti v. Ceballos, 547 U.S. 410 (2006), objection.

testimony as Count VII but pleads a distinct constitutional theory and a broader course of retaliation: the termination itself (FAC para 79) and the alteration and deletion of the official record of his own adjudicative determinations (FAC paras 14, 15, 25, incorporated at para 78). The State's merits attack proceeds under 18 U.S.C. 1513 (ECF 66-1 Section IV.a), and Plaintiff concedes 1513 provides no private cause of action (Part II, item 1). Count VI is pleaded under Section 1983 as a First Amendment and due-process claim, citing 1513 only "as supporting federal policy" (FAC para 1); striking the label leaves the Section 1983 claim intact.[17]

**E. Count IX (post-filing retaliation) survives; only the constructive-discharge label is conceded.** The State argues Plaintiff "remains very actively employed" and so "cannot currently have a claim of constructive discharge." ECF 66-1 at 26. Correct, but only as to a label not pressed (Part II, item 2). The retaliation claim requires no resignation; an action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). The cease-and-desist, duty removal, operational exclusion and unsafe reassignment (FAC para 85) qualify, and the State's own Exhibit 2 establishes the continuing employment relationship. Count IX is pressed under 42 U.S.C. 12203 and Section 504; its First Amendment theory is pleaded and briefed as Count VII. Because neither statute imposes individual-capacity liability, the proper damages respondents are the entity Defendants, which answer for the retaliatory acts of the supervisor they employ, with Defendant Banister remaining in her official capacity for prospective relief.

**F. Count XII (procedural due process): the State briefed only the property prong, ignoring the liberty/stigma-plus interest.** The FAC pleads both interests: "Plaintiff had protected

[17] The State reads FAC paragraph 79's phrase "by individuals acting in their official capacities" as defeating individual capacity (ECF 66-1 at 25). Section 1983 permits individual-capacity damages suits against state officers for acts taken in their official capacities. Hafer v. Melo, 502 U.S. 21 (1991).

property and liberty interests in his commissioner employment and professional reputation." (FAC para 91.) The State's IV.d attacks only the property prong (ECF 66-1 at 26-27, distinguishing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)), which Plaintiff does not press here (Part II, item 5). The live liberty/stigma-plus branch went unaddressed; an argument not made is not a ground for dismissal.

A stigmatizing charge attached to a separation requires a name-clearing hearing where the charge stigmatizes the employee's reputation, is made public by the employer, attaches to the termination, and is false. Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007) (vacated and remanded on the denial of leave to amend, id. at 645). The employee must allege a likelihood of inspection, satisfied by a practice of releasing files to inquiring employers or an intent to apply to one to whom the employer releases them. Id. at 650. The right is clearly established.[18]

The State did not move against the liberty branch, and the Sciolino elements are met or answered on this record. (1) The March 7, 2025 separation was for-cause on Maryland judicial-ethics rule violations per the State's own termination letter (ECF 66-3), stigmatizing on its face. (2) Publication. The State does not contest this element. Sciolino requires a likelihood that an employer to whom Plaintiff applies requests the file, not a certainty. 480 F.3d at 650. That file codes the separation "Resigned in Lieu of Term - DNH". (Ex. D; Wright Decl. para 7.) Should the Court find the allegation thin, Sciolino supplies the remedy: it vacated because refusing leave to amend on this element was an abuse of discretion. Id. at 645. (3) The charge and coding attach to the separation itself. (4) Falsity is contested and impeached by the State's own documents

[18] See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292 (4th Cir. 2006) (affirming denial of qualified immunity on a stigma-plus claim); Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972).

(Argument I.F); a Rule 12(b)(6) motion "does not resolve contests surrounding the facts." Edwards, 178 F.3d at 243.

**G. Count VIII is not pressed as presently pleaded and may be dismissed without prejudice.** Plaintiff does not oppose dismissal of Count VIII as pleaded, without prejudice, for the reasons stated at Part II, item 7. Ground IV.e requires no further answer. The pleaded coordination facts remain incorporated in Counts IV, VI, VII and IX as evidence of motive, knowledge and pretext.

**G-1. Personal involvement is pleaded, actor by actor.** Section 1983 liability requires personal participation, and the First Amended Complaint identifies for each individual the actor, the act and the resulting injury, which is what Rule 8 requires. Iqbal, 556 U.S. at 676-77.[19]

**H. Containment of the Part II concessions.** These concessions do NOT dismiss: (a) the ADA Title I claims against the official-capacity Defendants for prospective relief under Ex parte Young, preserved by Garrett footnote 9 (Argument II); (b) the Section 504 damages claims against the entities (footnote 6; Constantine; 2000d-7); or (c) the individual-capacity Section 1983 claims (Counts VI, VII and XII), each of which rests on an independently pleaded constitutional right.

**I. Fallback and Rule 56(d).** If reached now, qualified immunity cannot be resolved on these pleadings, where the defense "faces a formidable hurdle." Owens, 767 F.3d at 396. If the Court reads the surplus labels as controlling, Plaintiff requests leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962). Any qualified-immunity ruling should be limited to damages; on

[19] Haven received the March 4, 2025 written disclosure and signed the March 7, 2025 termination letter (FAC para 12; Haven Decl. para 12; ECF 66-3, Attachment C); Wisniewski was present as a fact witness at the March 3, 2025 trial board, participated in delivering Plaintiff's termination, and caused the deletion of Plaintiff's original case determination from JIS (paras 15, 79); Ellingson mocked Plaintiff on the March 4, 2025 call at which he made his second disclosure and crossed out his name on a denied charging application (paras 14, 41); Bowen denied the promotions and participated in the termination (para 13); Smoluk issued the charging-policy directives (para 18); and Banister issued the January 2026 cease-and-desist, removed Plaintiff's core duties effective February 3, 2026, and directed the reassignment (paras 57, 58, 60, 85).

conversion, Plaintiff's Rule 56(d) affidavit identifies the discovery needed on motive and falsity (Argument VII).

## ARGUMENT V. THE ACCOMMODATION AND SECTION 504 CAUSATION GROUNDS FAIL

*(Answering Grounds VI and VII, ECF 66-1 Sections VI-VII, printed pp. 31-35.)*

Grounds VI and VII convert what a plaintiff must PROVE into a PLEADING requirement, contrary to Rule 12(b)(6), Erickson, 551 U.S. at 94 (pro se construction), and Swierkiewicz, 534 U.S. at 510-15 (no prima facie pleading bar).

**A-0. The disability element is pleaded and the State did not move on it.** The FAC pleads diagnosed OCPD, ADHD and PTSD substantially limiting major life activities, and qualified-individual status. ECF 24 paras 5, 69. Any challenge first raised in reply is waived.

**A. GROUND VI: Plaintiff made an adequate accommodation request.** The State argues the March 4, 2025 email "falls well short of a request for an accommodation," "nothing more than an ordinary request for clarification of policies" (ECF 66-1, Section VI), citing Kelly v. Town of Abingdon, 90 F.4th 158, 165-67 (4th Cir. 2024).

**A.1. The March 4, 2025 email satisfies Kelly's "logical bridge" test.** Kelly requires no magic words, only "a logical bridge connecting the employee's disability to the workplace changes he requests," Kelly, 90 F.4th at 166-67. The email names the disability and the functional limitation: "I have what's called Obsessive-Compulsive Personality Disorder (OCPD), which means that I tend to adhere strictly to rules and guidelines. . . . When I've been trained on certain policies and I follow them, only to later be told that my approach is wrong or misunderstood with little explanation, it can be very frustrating. . . . the uncertainty around these policy differences makes it hard for me to feel confident in my decisions."

It then requests clear guidance, for peace of mind, to stop dwelling on possible mistakes; the State reproduced the paragraph. ECF 11-22; ECF 66-1, printed pp. 6-7. The Kelly bridge is complete: impairment (OCPD), functional limitation (rule-adherence rigidity, rumination, lost confidence when directives conflict), requested change (clear guidance). At most the email admits two readings, and Rule 12(b)(6) requires the plaintiff-favorable one.

**A.2. Kelly is the State's own case; its facts are the inverse.** Plaintiff's email is the mirror image of Kelly's: no title at all, and content naming the impairment, the functional limitation, and the change requested.[20] Kelly therefore defeats dismissal on that ground.

**A.2-1. Substance controlled, not Plaintiff's own label.** The Charge says he "did not initially realize [his] disclosure constituted a request for reasonable accommodation," and that he "now understand[s] that it did." (Ex. A at 3.) Neither clause is the test; substance controls, not title. Kelly, 90 F.4th at 166-67. The Judiciary's own policy makes an ADA Coordinator "an employee responsible for receiving and facilitating a request for a disability accommodation," and requires that the "supervisor, manager or ADA coordinator shall memorialize" an oral request and "immediately send a copy" to the Administrative Head and the ADA officer. Policy 2.1(b)(2), (f)(2)(B)-(C) (Addendum 12). The First Amended Complaint pleads that Defendant Wisniewski was "the designated ADA Coordinator for Baltimore County District Court Commissioners," "bore specific institutional responsibility for initiating and overseeing the ADA interactive process," and "took no action." FAC para 15.

**A.3. A Defendant swears the Judiciary treated a materially similar 2026 request as cognizable and granted it.** The January 2026 request, written guidance when directed to deviate from Maryland Rules, was granted, and Defendant Banister swears it: "On February 18, 2026,

[20] Kelly affirmed dismissal because its letter, titled "Accommodations Requests," was a twelve-item office-culture letter whose "content has no connection to anyone's disabilities," and because "[t]he substance of the employee's communication, not its title, determines whether the ADA applies." Kelly, 90 F.4th at 166-67.

Deputy Court Administrator Sophia Sanders informed me that Mr. Wright's request for receiving written instructions was granted such that he would receive written instructions for certain tasks that involved core validity requirements." (ECF 66-4, para 8.) A grant aimed at the same functional problem undercuts the claim that the earlier request was not cognizable.

**A.4. The "no specific accommodation denied" fallback fails.** The accommodation, clear guidance when directives conflict with the rules, is in the email; the "denial" was non-response followed by termination. FAC paras 40, 73. Where an employee identifies a reasonable accommodation and the employer refuses to discuss it and then terminates him, a factfinder may find bad faith in the interactive process. Jacobs v. N.C. Administrative Office of the Courts, 780 F.3d 562, 581-82 (4th Cir. 2015).[21] The accommodation Plaintiff identified was never provided, and any deliberation is in Defendants' exclusive possession.

**A.5. The State does not contend the interactive process occurred.** Its Section VI heading states that the District Court "DID NOT ENGAGE IN THE INTERACTIVE PROCESS BECAUSE MR. WRIGHT DID NOT ADEQUATELY COMMUNICATE HIS DESIRE FOR AN ACCOMMODATION." A.1 through A.4 defeat the premise; the account of non-engagement is the State's own. With the request adequate (A.1-A.4), that concession makes refusal of an identified accommodation plausible, not the interactive-process-gap-alone theory the Court addressed on the preliminary-injunction record (ECF 23 at 8). Notice is conceded: Haven Decl. para 12 admits the March 4, 2025 OCPD disclosure. That evening Plaintiff also told Defendant Ellingson he had bought books about the diagnosis five weeks earlier, and she said she would speak to Administrative Commissioner Wisniewski. (Wright Decl. para 16.) Nothing shows she did.

---

[21] In Jacobs the supervisors "refused to discuss Jacobs's accommodation request," and she was fired "without first discussing her accommodation request"; the panel reversed summary judgment for a state Administrative Office of the Courts.

**A.6. Ground VI does not reach the independent 2026 limb of Count III.** Ground VI attacks only the "failure to accommodate claim concerning his previous employment." (ECF 66-1, printed p. 33.) Accommodation #1 was granted, Plaintiff objected in writing on February 26, 2026 that "the interactive process remains incomplete" (ECF 11-17), and the March 6, 2026 final response disposed of each remaining request by deeming it outside the ADA or subsumed in the prior grant, which is a denial.[22] The Count III Section 504 limb is not immunity-barred (Argument II); if the ADA limb narrows, the 504 limb carries.

**A.7. The employer's own policy names the officials who owed the response and the deadline they missed.** The same policy vests the accommodation decision in an "Administrative Head," requires that every request go "immediately" to that official, and requires a "formal response ... within 30 calendar days." Policy 2.1(a)(2)(A)(ii), (b)(4)(D), (f)(2)(C), (f)(5)(B), (f)(5)(D) (rev. Oct. 30, 2024) (Addendum 12).

Measured against that policy, the March 4, 2025 request produced no formal response within thirty days, no interactive-process meeting, and no documented resolution. It produced a termination three days later, effected by the Chief Judge of the District Court on the recommendation of the Administrative Judge (ECF 66-3, Attachment C). Plaintiff does not contend the policy supplies the cause of action; the ADA and Section 504 do. The policy matters because an employer's departure from the standard it wrote for itself, in the very process at issue, makes discriminatory intent plausible rather than speculative. Iqbal, 556 U.S. at 678-79.

**B. GROUND VII: Section 504's "solely by reason of" is a proof standard, not a heightened pleading bar.** The State argues the Section 504 limbs of Counts II, IV, V, and IX fail because the statute requires causation "solely by reason of" disability and the FAC pleads concurrent

[22] The March 6, 2026 response states that #2 "would generally be outside the scope of the ADA," #3 "would be handled outside the ADA," and #4 was "addressed in the accommodation that was granted." (ECF 19-1.)

causes. (ECF 66-1, Section VII; Halpern v. Wake Forest University Health Sciences, 669 F.3d 454, 461 (4th Cir. 2012); Hannah P. v. Coats, 916 F.3d 327, 342 (4th Cir. 2019).)

**B.1. The "solely" clause does not reach most of the counts the State attacks.** Counts IV, V and IX are pleaded under both the ADA and Section 504, and the ADA imposes no "solely by reason of" standard. Baird ex rel. Baird v. Rose, 192 F.3d 462, 469 (4th Cir. 1999) (contrasting the two statutes' causation language). Counts IV and IX sound in retaliation under 42 U.S.C. 12203, and Halpern says nothing about retaliation causation. The statute settles it: for employment claims Section 504 borrows the ADA's standards, including "the provisions of sections 501 through 504, and 510, of the [ADA] (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment." 29 U.S.C. 794(d) (Addendum 14). Section 12203 sits inside that range, so a Section 504 retaliation limb is measured by the ADA standard the State never addresses, not by the status-discrimination formula of Section 794(a). Causation must be plausibly alleged at this stage, not proved: a plaintiff need not plead a prima facie case, Woods v. City of Greensboro, 855 F.3d 639 (4th Cir. 2017); Swierkiewicz, 534 U.S. at 510-15, and need not establish but-for causation at the prima facie stage, Foster, 787 F.3d at 251.

**B.2. Count III and the Section 504 accommodation limb incorporated into Count II are FAILURE-TO-ACCOMMODATE claims, where the concurrent-cause attack has nothing to attach to.** In a failure-to-accommodate claim the adverse action is the refusal to accommodate, inherently disability-connected; there is no separate inquiry into the employer's motive. See Hannah P., 916 F.3d at 337. The Section 504 failure-to-accommodate elements are disability, employer notice, ability to perform the essential functions with an accommodation, and refusal to accommodate. Reyazuddin v. Montgomery County, 789 F.3d 407, 414 (4th Cir.

2015). None asks why the employer refused, so the "solely" clause has no causal allocation to govern.[23]

**B.3. As to the termination and the non-selections alike, there are no concurrent causes to reconcile.** The State draws its "concurrent causes" from allegations about different adverse actions.[24] The termination allegation is that Defendants "terminated Plaintiff's employment three days after his written accommodation request . . . because of his disability and accommodation requests." FAC para 69. Those are not two competing causes under one standard: the disability limb is the Section 504 discrimination claim, and the accommodation-request limb is retaliation under 42 U.S.C. 12203, which carries no "solely" requirement. The same answer covers the non-selections: the "institutional filter" allegation pleads the mechanism through which the disability-based and retaliatory non-selection operated, FAC para 77, not a competing cause, and a plaintiff need not negate alternative explanations at the pleading stage. Swierkiewicz, 534 U.S. at 510-15.

**B.4. If any allegation is read as pleading concurrent causes for the same adverse action, Rule 8(d) permits it.** "A party may set out 2 or more statements of a claim . . . alternatively or hypothetically," Fed. R. Civ. P. 8(d)(2) (Addendum 10), regardless of consistency, id. 8(d)(3).[25]

**B.5. "Cease-and-desist is not an adverse action" applies the wrong standard.** The correct thresholds are Muldrow v. City of St. Louis, 601 U.S. 346 (2024) (discrimination: "some harm respecting an identifiable term or condition of employment," which need not be significant, 601 U.S. at 354-55), which the Fourth Circuit has applied to Rehabilitation Act discrimination

[23] The Section 504 employment claim survived in Reyazuddin; the separate ADA Title II employment claim failed because public employees cannot use Title II to bring employment discrimination claims against their employers, id. at 409, and Plaintiff pleads no Title II claim.

[24] The "Annapolis relationships" filter (FAC para 77) pleads how the non-selection operated under Count V, and the trial-board testimony (para 79) grounds Count VI's witness-retaliation theory. Pleading alternative statutory and constitutional theories for the same termination is expressly permitted, Fed. R. Civ. P. 8(d)(2)-(3), and supplies no concurrent cause under Section 504.

[25] Halpern arose on a developed summary judgment record, and its academic-deference posture does not fit a public employer's discipline. Halpern, 669 F.3d at 461-62. Hannah P. recites "prima facie case" burdens, which need not be pleaded. Swierkiewicz, 534 U.S. at 510-15.

claims, Herkert v. Bisignano, No. 24-1420 (4th Cir. Aug. 14, 2025) (published) (vacating summary judgment for the employer), and Burlington Northern (retaliation, 548 U.S. at 68). The FAC pleads the directive issued "seven days after the ADA request" with "no citation to any rule, policy, or supervisory authority," and that it barred Plaintiff from "writing notes in the case management system regarding compliance deficiencies," a core function. FAC para 57. Whether the directive was disciplinary or, as the State says, "a directive regarding compliance with chain-of-command," is a merits characterization.

**B.6. The "he does not allege what duties" move fails on the pleading itself.**[26]

**B.7. Footnote 9's argument that Count II "does not contain an independent claim itself" fails.** Count II incorporates all preceding paragraphs. Fed. R. Civ. P. 10(c); FAC para 70. It adds two Section 504-specific matters: the federal-financial-assistance nexus and the Eleventh Amendment waiver (Argument II; Constantine, 411 F.3d at 494; 2000d-7).

**B-1. Count IV retaliation (2025 accommodation request): the pleaded causation chain exceeds temporal proximity.** The State never engages Count IV's termination-retaliation chain except through grounds answered elsewhere (Arguments I-III; Section B). The chain from the March 4, 2025 disclosure and request (Section A.1) to the termination: (1) written knowledge in the official who signed: the disclosure went to Haven, who signed the March 7, 2025 termination letter (ECF 66-3, Attachment C) and admits it (Haven Decl. para 12); (2) that evening, direct supervisor Defendant Ellingson mocked Plaintiff on a video call, where Plaintiff made a second disability disclosure (FAC para 41); (3) termination three days later; (4) the State's shifting termination reasons contradict its own filed documents (Argument I.F; Argument VII.B), supporting a retaliation inference. Foster v. Univ. of Md.-Eastern Shore, 787 F.3d 243, 250 (4th

[26] FAC para 58 (all core paralegal review duties stripped effective February 3, 2026); para 57 (the case-management-notes function removed); para 60 (reassignment to a location with "no telephone, no emergency alarm, and a prior history of litigant aggression").

Cir. 2015). The Court's observation that "[t]emporal proximity alone is insufficient to prove causation" (ECF 23 at 9) is met, as for Count VII (Argument IV.C): knowledge, contemporaneous hostile conduct, and pretext accompany the three-day interval, and the prima facie causation burden is not onerous. Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018).

**C. Fallback.** Considering the Haven Declaration on Ground VI converts under Rule 12(d), and conversion carries Plaintiff's right to a reasonable opportunity for discovery. Gay, 761 F.2d at 177-78.

## ARGUMENT VI. FLSA, MARYLAND WHISTLEBLOWER EXHAUSTION, IIED, AND COMPARATOR

*(Answering Grounds X (ECF 66-1 pp. 38-39), IX (37-38), XI (39-40), XII (40-41).)*

**A. GROUND X (FLSA, Count XI).** Count XI is not pressed as pleaded, for the Eleventh Amendment reasons stated at Argument II.E-1, and Ground X requires no further answer. The withdrawal is without prejudice to the substantive violations pleaded at FAC paragraph 89, and Plaintiff concedes no element of the administrative exemption, which remains an affirmative defense the State bears the burden to prove. E.M.D. Sales, Inc. v. Carrera, 604 U.S. 45 (2025).

**B. GROUND IX (Count X) is moot, and its reasoning does not transfer.** Count X is not pressed and Plaintiff does not oppose its dismissal without prejudice. Part II, item 4. Ground IX requires no ruling. A remedy reaching only employees "in the Executive Branch," SPP 5-301(a), cannot be one a Judicial Branch employee failed to exhaust. The protected-activity facts remain pleaded and are the predicate for Counts IV, VI and VII by incorporation.

**C. GROUND XI (IIED, Count XIII).** Count XIII is not pressed and Plaintiff does not oppose its dismissal without prejudice. Part II, item 9. Ground XI requires no further ruling. The conduct pleaded at FAC paragraph 93 remains in the case as evidence on the ADA, Section 504, First

Amendment and retaliation counts, none of which requires proof of a severely disabling emotional response.

**D. Ground XII requests no relief and identifies no count; in any event a comparator is a method of proof, not a pleading element.** Section XII ends by asserting the allegations are "not sufficient to adequately allege that Commissioner Latoya is a comparator." ECF 66-1 at 41. It names no count and asks the Court to dismiss nothing. A discrimination plaintiff need not plead a prima facie case or a valid comparator. Swierkiewicz, 534 U.S. at 510-15.[27] The comparator is in any event named: LaToya Jenifer-Evans, a fellow District 8 Commissioner on the same second shift under the same supervisory chain, whose conduct Plaintiff reported to Defendant Ellingson in writing on December 25, 2024, and who is listed as an active District 8 Commissioner, while Plaintiff is listed as former, on the Judiciary's own Commissioner ID list as revised July 22, 2026 (Ex. E; Wright Decl. para 10). The institution's disposition of that report is in Defendants' possession.

The embedded premise that Plaintiff "violated the MCCJA" (ECF 66-1 at 41) is a disputed fact the Court cannot assume on a motion to dismiss, and it is contradicted by the record built at Argument I.F. The primary request is denial under Swierkiewicz; if the Court treats the ground as evidentiary sufficiency, Plaintiff requests a Rule 56(d) continuance.

## ARGUMENT VII. THE COURT SHOULD EXCLUDE THE STATE'S EXTRINSIC DECLARATIONS OR, IF IT CONVERTS, GRANT A RULE 56(D) CONTINUANCE

Ground XIII seeks summary judgment in a two-sentence section citing no authority. ECF 66-1 at 41.

[27] The State's sole authority, Tinsley v. City of Charlotte, 854 F. App'x 495, 501 (4th Cir. 2021), resolved comparator similarity "as a matter of law" on a post-discovery record; importing that posture into the pleading stage is the error Swierkiewicz forbids.

**A-0. Rule 12(b)(1) does not open the record.** The State recites that on a Rule 12(b)(1) challenge a court may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment," ECF 66-1 at 15 (quoting Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)), but never says which ground is jurisdictional. Only Ground I invokes sovereign immunity. The charge-filing requirement on which Ground V rests "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." Fort Bend County v. Davis, 587 U.S. 541, 551 (2019). Ground V is therefore Rule 12(b)(6), and the Hedges Declaration is subject to Rule 12(d).[28]

**A. Exclude the declarations and decide the Motion on the pleadings.** Under Rule 12(d) the court may exclude matter outside the pleadings and should exclude the sworn narrative paragraphs of ECF 66-3, 66-4 and 66-5. Finley Lines, 109 F.3d at 995.[29] They are not integral to the FAC, Philips, 572 F.3d at 180, and are post-pleading sworn advocacy on affirmative defenses and fact questions not resolvable on the pleadings (Arguments I, III, VI). Plaintiff does not ask the Court to disregard the contemporaneous writings attached to them, whose authenticity is undisputed and which Plaintiff cites for what they say on their face, not for any declarant's characterization. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159 (4th Cir. 2016), draws exactly this line. A movant-submitted document may be considered where it is "integral to the complaint and there is no dispute about the document's authenticity," id. at 166, but that inquiry "is particularly important where the document is one prepared by or for the defendant," because

[28] Where "the jurisdictional facts are intertwined with the facts central to the merits of the dispute," the allegations carry a presumption of truthfulness and Plaintiff must receive "the procedural safeguards - such as discovery" that a merits attack would afford. Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

[29] Plaintiff cites those declarations only for the declarants' admissions against the movants' own positions (Haven Decl. para 12; Banister Decl. paras 8-9; Hedges Decl. paras 4, 6), on which he relies in the alternative, if the Court considers those declarations and converts under Rule 12(d), as opposing-party statements. Fed. R. Evid. 801(d)(2)(A), (D).

such documents "may reflect the defendant's version of contested events or contain self-serving, exculpatory statements," id. at 168.

**B. On conversion, summary judgment fails: the State's declarations create the genuine disputes.** The accompanying Declaration of Steven Anthony Wright supplies the material facts on personal knowledge, without qualification. Conversion was appropriate in Bosiger v. U.S. Airways, Inc., 510 F.3d 442, 451 (4th Cir. 2007), "[g]iven the development of the record"; here there has been no discovery at all, and Ground XIII identified no undisputed fact and mapped no declaration to any element. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All justifiable inferences run to the nonmovant, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and the State's "so one-sided" standard, Tekmen v. Reliance Standard Life Ins. Co., 55 F.4th 951, 959 (4th Cir. 2022), is not met:

Four genuine disputes defeat conversion, each from the State's own filings: the shifting separation reasons (Argument I.F); the Release's voluntariness (Arguments I.C, I.D, I.G); the accommodation response, which Banister paragraph 7 describes as a referral to Human Resources rather than engagement; and the "unperfected" label (Argument III.B).

**C. Alternatively, Rule 56(d) entitles Plaintiff to a continuance.** Rule 56(d) motions are "broadly favored and should be liberally granted," and are proper "where the main issue is one of motive and where most of the key evidence lies in the control of the moving party." McCray, 741 F.3d at 484. Motive and voluntariness are dispositive; discovery has not begun. The accompanying Rule 56(d) Declaration specifies the facts Plaintiff cannot present without discovery, each essential and in Defendants' control. No continuance is needed to reach the purely legal grounds, which are resolved on the pleadings; the rest are fact-bound. Ground XIII should be denied.

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. **Grant the Motion only as to the theories Plaintiff does not oppose**, on the terms stated at Part II and no more broadly, each dismissal without prejudice.

2. **Deny the Motion as to every remaining count**: Counts I (prospective relief), II, III, IV and V; Counts VI, VII and XII against the individual Defendants personally; and Count IX (ongoing retaliation, as to the entity Defendants and Banister officially).

3. **Exclude the sworn narrative paragraphs of the declarations** (ECF 66-3, 66-4, 66-5) as affirmative support for the Motion under Fed. R. Civ. P. 12(d), without prejudice to Plaintiff's reliance on any statement in them as a party admission, and consider any attachment the Court finds integral only for what it states on its face.

4. **If the Court converts**, deny summary judgment on the disputes at Argument VII.B, or defer for the Rule 56(d) discovery.

5. **Grant leave to amend rather than dismiss with prejudice** as to any count Plaintiff presses that the Court finds insufficiently pleaded. Fed. R. Civ. P. 15(a)(2).

Respectfully submitted,

Steven Anthony Wright, Pro Se
Phone: (570) 494-8422
Email: stevendiet@gmail.com
Dated: August 18, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STEVEN ANTHONY WRIGHT, | * | |
| Plaintiff, | * | Civil Action No. 1:25-cv-04220-BAH |
| | * | Hon. Brendan A. Hurson |
| v. | * | |
| MARYLAND JUDICIARY, | * | |
| ADMINISTRATIVE OFFICE OF | * | |
| THE COURTS, et al., | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2026, copies of the following were filed with the Clerk of Court for the United States District Court for the District of Maryland, which will be served on all registered counsel of record through the Court's CM/ECF system, including Bryan A. Upshur, AAG, Office of the Attorney General of Maryland (bupshur@oag.state.md.us), and Elisabeth Brevet Hofmann, Esq., Baltimore City Department of Law (elisabeth.hofmann@baltimorecity.gov), constituting service under Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 102.1.c:

1. Plaintiff's Opposition to the State Defendants' Motion to Dismiss the First Amended Complaint, with Table of Contents and Table of Citations;

2. Declaration of Steven Anthony Wright in Support of the Opposition, with Exhibits A through E;

3. Declaration of Steven Anthony Wright Under Federal Rule of Civil Procedure 56(d);

4. Addendum of Statutes, Rules, and Policy Provisions;

5. Index of Exhibits;

6. Exhibit Cover Sheets; and

7. [Proposed] Order.

Steven Anthony Wright, Pro Se
Phone: (570) 494-8422
Email: stevendiet@gmail.com
Dated: August 18, 2026