**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STEVEN ANTHONY WRIGHT, | * | |
| Plaintiff, | * | Civil Action No. 1:25-cv-04220-BAH |
| | * | Hon. Brendan A. Hurson |
| v. | * | |
| MARYLAND JUDICIARY, | * | |
| ADMINISTRATIVE OFFICE OF | * | HD |
| THE COURTS, et al., | * | |
| | * | Rcv'd by: |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

USDC- BALTIMORE
'26 AUG 18 PM12:47

# DECLARATION OF STEVEN ANTHONY WRIGHT IN OPPOSITION TO THE STATE DEFENDANTS' MOTION TO DISMISS (ECF 66)

I, Steven Anthony Wright, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the following is true and correct. I make this declaration on my own personal knowledge. I am over eighteen years of age and competent to testify to the matters stated below.

**1.** I am the Plaintiff in this action and I appear pro se.

**2.** I was employed by the Maryland Judiciary as a Courtroom Clerk in Baltimore County beginning in June 2019. In May 2021 I became a District Court Commissioner. I held that position until March 7, 2025.

**3.** Since May 29, 2025 I have been employed as an Administrative Paralegal in the Family Division of the Circuit Court for Baltimore City. I remain employed in that position today.

**4.** Exhibit A is a true and correct copy of the Charge of Discrimination I signed and submitted to the United States Equal Employment Opportunity Commission, except that my home address has

been redacted from the Personal Information block on page 1 in accordance with this Court's Order of June 3, 2026 (ECF 52, paragraph 1(e)). No other part of the document has been altered. It is EEOC Form 5A. The signature on the signature line is mine. I signed it on June 10, 2025, under the declaration printed on the form, which reads: "I declare under penalty of perjury that the above is true and correct." I sent it to the EEOC Baltimore Field Office by email on June 10, 2025, in response to a request the EEOC sent me that same day, and I received an automated confirmation of receipt from the EEOC the same day. I will provide an unredacted copy to the Court or to counsel upon request.

**5.** Exhibit B is a true and correct transcription of my email correspondence with the United States Equal Employment Opportunity Commission in Charge No. 531-2025-03965 between July 16 and July 24, 2025, including the July 17, 2025 message I received from Investigator Leila Santiago. I sent the messages shown as sent by me and received the messages shown as received by me, in my email account, and I have kept them since. It reproduces the text of the messages, with the investigator's direct telephone number omitted. The native messages are available to the Court or to counsel on request.

**6.** Exhibit C is a true and correct transcription of an email I received from Colleen Ellingson on the evening of March 5, 2025. I received it in my Maryland Judiciary email account while employed as a Commissioner. The native message is available to the Court or to counsel on request.

**7.** Exhibit D is a true and correct copy of a page from my Maryland Judiciary personnel file, produced to me in April 2026 in response to my public-records request for my own personnel file. It is a Job Data record concerning my March 2025 separation, and it records the action

"Termination" with the reason "Resigned in Lieu of Term - DNH." The same record shows a Termination Date and a Last Date Worked of March 7, 2025, and an Effective Date of March 8, 2025, which is the date the recorded action took effect rather than the date my employment ended. My employment ended on March 7, 2025. The only alterations are that my Employee Identification number, position number, department number, and establishment identification number have been redacted. No other part of the page has been altered. I will provide an unredacted copy to the Court or to counsel upon request.

**8.** The Maryland Judiciary Policy on Accommodation of Disabilities, Policy 2.1 of the Maryland Judiciary Employee Handbook (effective July 1, 2017; revised October 30, 2024), and the Maryland Judiciary Policy Prohibiting Discrimination, Harassment, and Retaliation, Policy 2.6 of the same Handbook, excerpts of both of which are reproduced in the Addendum filed with the Opposition, are the Judiciary's published policies on those subjects. Both applied to my employment as a District Court Commissioner, and both apply to my current employment as an Administrative Paralegal in the Family Division of the Circuit Court for Baltimore City. The current versions are publicly posted on the Judiciary's website at mdcourts.gov.

**9.** I have been diagnosed with Obsessive-Compulsive Personality Disorder. I have also been diagnosed with attention-deficit/hyperactivity disorder and post-traumatic stress disorder. On April 7, 2026 I received a diagnosis of Autism Spectrum Disorder, Level 1 from Philip Stoner, Ph.D., a Maryland-licensed psychologist. I reported that diagnosis in writing to the Human Resources Officer of the Circuit Court for Baltimore City on April 15, 2026.

**10.** The Commissioner whose conduct I reported to Colleen Ellingson in writing on December 25, 2024 was LaToya Jenifer-Evans, a District 8 Commissioner on the same second shift and

under the same supervisory chain as I was. The District Court of Maryland publishes a Commissioner ID list that states, for each commissioner, whether that commissioner is active or former. Exhibit E is a true and correct copy of the District 8 page of that list as revised July 22, 2026, except that the rows of the twenty-five other Commissioners listed on that page have been redacted. No other part of the page has been altered, and I will provide an unredacted copy to the Court or to counsel upon request. It lists LaToya Jenifer-Evans, ID 8121, as active, and lists me, ID 8127, as former.

**11.** On March 3, 2025, and again on March 4, 2025, I testified as a witness at a Baltimore County Police Department trial board concerning the conduct of Officer Jervon M. Junior in a bail bond matter I had encountered in my work as a Commissioner. I testified truthfully.

**12.** On March 3, 2025, at the Towson courthouse, a fellow commissioner offered me a charging application he had accepted from a Baltimore County police officer, and I took it. In my office I reviewed it and found it was not completed. I brought it to Colleen Ellingson and raised my concern. She told me the application was fine to process. I asked her how, given the missing information. She was unable to give me an explanation and said only that that was how it had always been done, so I kept asking. I told her that in District 10 I had been trained that an application that was incorrect, blank, or carried the wrong date was grounds for denial. She told me that per Baltimore County I was good to process it. I asked her where that policy was written. She became frustrated and told me to contact Mr. Haven if I did not believe her. I emailed Mr. Haven that day. Ms. Ellingson told me that she would hold the application until he responded. I did not refuse to process the application, and the application was not in my possession after that conversation.

**13.** Mr. Haven did not respond to my policy question until March 4, 2025. After he responded, Ms. Ellingson called me, asked whether I had read his response, and made a comment to the effect that she had told me so. Beginning March 4, 2025 my duty station was the Essex courthouse, and I did not work at the Towson courthouse again before my employment ended on March 7, 2025. I never had the opportunity to complete the drop-off application Ms. Ellingson had held.

**14.** On March 4, 2025 at approximately 5:10 p.m. I sent an email to Timothy D. Haven. In that email I disclosed that I have Obsessive-Compulsive Personality Disorder, described how it affects my work when I am trained on a policy, follow it, and am then told my approach is wrong without explanation, and asked for clear guidance so that I could stop dwelling on whether I had made mistakes.

**15.** Later on March 4, 2025 I spoke with Colleen Ellingson by video call. I was at the Essex courthouse during that call. During that conversation I again stated that I have Obsessive-Compulsive Personality Disorder. Commissioner Michael Streb was working at a desk positioned across from mine at the time and the call audio was audible from my monitor.

**16.** During that same conversation I told Ms. Ellingson that I had bought books to learn more about my diagnosis. On January 28, 2025, before any of the events of March 2025, I had ordered four books about Obsessive-Compulsive Personality Disorder: The OCPD Advantage: Harnessing Your Drive for Excellence Without Losing Yourself; The Healthy Compulsive: Healing Obsessive Compulsive Personality Disorder and Taking the Wheel of the Driven Personality; Obsessive-Compulsive Personality Disorder; and Too Perfect: When Being in Control Gets Out of Control. Ms. Ellingson said that she would speak to Administrative

Commissioner Whitney Wisniewski about what I had told her. No one followed up with me about it.

**17.** On the evening of March 5, 2025 I was assigned to the Essex courthouse. I received in my Maryland Judiciary email account an on-view charging document transmitted from a Baltimore County Police Department precinct. It charged a single offense, murder in the first degree. The person charged was already under arrest. I read that document in the course of my duties that evening. That transmission is still in my Maryland Judiciary email account, in the form in which it was sent to me. I did not delete it. I do not have the separate drop-off application described in paragraphs 12 and 13, which my Managing Commissioner kept.

**18.** I read the written probable cause statement submitted with that charging document. I did not find in it facts establishing premeditation. When a commissioner finds no probable cause on the only offense charged, the person is released on his own recognizance, without conditions. That was the disposition required on the account submitted.

**19.** I raised the matter with Colleen Ellingson, my Managing Commissioner. That evening I forwarded to her by email the transmission containing the charging document, and I telephoned her to ask her opinion. She read the document and we discussed it. I told her that I did not see premeditation on the account submitted. She explained that the State's Attorney's position was that the time between the decision to shoot and the shooting could itself establish premeditation. That explanation did not change my conclusion. On that reasoning the moment of deciding to shoot would itself be premeditation, and there would be no distinction between murder in the first degree and murder in the second degree. I was trained that a commissioner makes the probable cause determination independently. I also told her that if Baltimore County followed

the practice taught at headquarters, which is to charge every offense the account supports, the question would not have arisen. I told her that I was going to call the detective to ask whether he would add another charge. Ms. Ellingson did not tell me not to make that call, and she did not direct me to handle the matter in any other way. Later that evening she sent me an email about premeditation, attaching a printout of the first degree murder statute. That email is Exhibit C. I forwarded the transmission to her before I telephoned the police precinct as described in the next paragraph.

**20.** I was trained that when a defect in a charging document could result in the release of a person charged with a serious offense, the commissioner contacts the submitting officer so that the defect can be corrected. In my experience charging documents were returned to officers for correction routinely. Murder in the first degree was the only offense charged, so a finding of no probable cause on it would have required that the person be released. I also telephoned the police precinct that had submitted the charging document. The submitting officer was a detective. I had no means of contacting him directly; contact with an officer runs through the precinct. He was not at the precinct and telephoned me back. I told him that on the account he had submitted I did not find probable cause for premeditation, which is required for murder in the first degree. I told him that on the account submitted there were two possible outcomes: additional charges could be submitted, or I would find no probable cause and release the person without conditions. He told me he was at his home and that this made it difficult for him to make corrections. He then asked whether I would find probable cause for murder in the second degree. I answered that I saw murder but did not see premeditation. He said he would send a new set of charging documents. I did not tell him what charge to bring.

**21.** A charge of murder in the second degree was afterward added to the charging document. Before Ms. Ellingson's email reached me that evening, and based on a notice I saw in the METERS law enforcement database, I sent an email at 7:38 p.m. to a United States Probation officer stating that the person would be seen that evening for first and second degree murder. I completed my review that evening. I did not find probable cause for murder in the first degree, I found probable cause for murder in the second degree, and I held the person charged without bond. The initial appearance concluded at approximately 8:10 p.m. Ms. Ellingson's email reached me after that. I did not refuse to process the charging document.

**22.** A commissioner who has questions about a matter may ask another commissioner to take it. That evening I asked the other commissioner working in the office for his opinion of the premeditation question, and he agreed with Ms. Ellingson's view. While I was still on the telephone with the detective, who expressed frustration about having to come in, I said that I could ask a coworker to take the matter. The other commissioner, who could hear the call, answered before I put any question to him directly and made clear he would not take it. I told the detective that the option was not available. I did not ask him to take the matter or to make the determination for me, and I completed the review myself.

**23.** My scheduled duty station for March 7, 2025 was the Essex courthouse. On that day I received a text message directing me to report instead to the Towson courthouse. I reported to Towson as directed.

**24.** I was told at Towson on March 7, 2025 that my employment was ending, and I was handed a termination letter. I was not given advance notice that the meeting would concern my

employment status, I was not told beforehand of any charges against me, and I was not given an opportunity to respond before the decision was presented to me as final.

**25.** At that meeting I was presented with a document titled "Letter of Resignation and General Release." It was a pre-printed form. I did not draft it, propose it, or negotiate any of its terms. The persons present were Administrative Commissioner Whitney Wisniewski and Managing Commissioner Colleen Ellingson. Timothy D. Haven was not present at that meeting, and he was not present at any point on March 7, 2025 when the termination letter or the Letter of Resignation and General Release was presented to me. I was not given an original of that form to keep. A photocopy was made in my presence, and the photocopy is what I was given.

**26.** When the form was handed to me I asked whether I could have time to decide. The only alternative presented to me was to sign it at that moment. The twenty-four hour period was already printed on the form before it was handed to me. I did not ask for twenty-four hours, I did not select that period from any set of options, and I was not offered any longer period.

**27.** After I asked for time, Administrative Commissioner Whitney Wisniewski wrote the date and time in the acknowledgment box and wrote the corresponding deadline date and time. I did not write those entries and I did not choose them. My own handwriting on the form consists of my printed name, my two signatures, and the dates and time I entered beside my signatures. The text of the form, including the twenty-four hour period, was pre-printed.

**28.** The signature I placed in the acknowledgment box on March 7, 2025 at 3:08 p.m. was placed under pre-printed text stating that the signature "only acknowledges my understanding of this time-frame and in no-way indicates an execution of this form or my desire to resign in lieu of termination." I understood that signature to acknowledge the deadline and not to resign.

**29.** On March 7, 2025, after I was told my employment was ending, Colleen Ellingson escorted me to collect my personal belongings and then walked me out of the building to my vehicle. I did not return to work at the Maryland Judiciary after that day. I signed the Letter of Resignation and General Release the following day.

**30.** While we were outside the building I became distressed and cried. I told Ms. Ellingson that I had thought the Commissioner position was a good fit for me because the work was rule bound. Ms. Ellingson responded sympathetically, appeared to me to be tearful, and said that something else was waiting for me.

**31.** I did not feel free to decline. I was told at that meeting by Administrative Commissioner Whitney Wisniewski that if I did not sign within the printed period I would be terminated for cause and barred from future employment with the State of Maryland, not only with the Maryland Judiciary. That consequence was material to my decision. Had I not been told that, I would not have signed.

**32.** March 7, 2025 was a Friday. Before the deadline printed on the form expired, I tried to reach an attorney for advice about the document I had been given. I contacted several law firms. I did not obtain any legal advice before the deadline.

**33.** I signed the Letter of Resignation and General Release on March 8, 2025. I transmitted the signed document by email to Administrative Commissioner Whitney Wisniewski, copying Colleen Ellingson, and in the body of that same email I wrote: "Administrative Commissioner Wisniewski, I am submitting my signed resignation; however, I want to make it clear that this decision was made under pressure, as I was not given sufficient time to consult with an attorney

before the deadline imposed. Given the circumstances, I felt I had no real choice but to sign." I wrote and sent that message. It is of record in this action as Exhibit 20 to ECF 11 (ECF 11-21).

**34.** I never received from the EEOC any document titled EEOC Form 5 for my review and signature. I have no record of any such form in my email account, and I have never seen one.

**35.** An intake interview in my EEOC charge took place on July 24, 2025. Reaching it took two scheduled appointments, the first of which did not occur and the second of which did not occur as scheduled. After the first, I received no call, and my call log showed none. A second call was set for noon on July 24, 2025; I attempted to reach the investigator several times at the number she had given me and was told she was unavailable. I waited about twenty minutes and then contacted the office, after which she called me back. The delay cut into the time I had available. During the call it was difficult to hear her because of background noise on her end, and I was not confident that all of the information I needed to convey was communicated. I described this to the EEOC in writing on August 29, 2025.

**36.** Between the July 24, 2025 interview and the Determination and Notice of Rights dated December 19, 2025, I received no communication from the EEOC concerning my charge.

**37.** On January 16, 2026 I submitted a written request for accommodation in my position with the Circuit Court for Baltimore City.

**38.** As of the date of this declaration I have received no response, in the form of an accommodation determination, to my March 4, 2025 disclosure and request, and no meeting was ever scheduled with me to discuss an accommodation while I was a Commissioner.

**39.** No discovery has taken place in this action. There has been no conference under Rule 26(f) and no scheduling order. I have had no opportunity to depose any declarant or to obtain documents from the Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 18, 2026.

Steven Anthony Wright, Pro Se
Phone: (570) 494-8422
Email: stevendiet@gmail.com