FOR THE DISTRICT OF MARYLAND

USDC- BALTIMORE
'26 AUG 18 PM12:47

IN THE UNITED STATES DISTRICT COURT

HD
Rcv'd by: AV

* * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| STEVEN ANTHONY WRIGHT, | * | |
| Plaintiff, | * | Civil Action No. 1:25-cv-04220-BAH |
| | * | Hon. Brendan A. Hurson |
| v. | * | |
| MARYLAND JUDICIARY, | * | |
| ADMINISTRATIVE OFFICE OF | * | |
| THE COURTS, et al., | * | |
| | * | |
| Defendants. | * | |

# DECLARATION OF STEVEN ANTHONY WRIGHT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)

I, Steven Anthony Wright, declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the following is true and correct:

1. I am the Plaintiff in this action and I appear pro se. I make this declaration in support of my Opposition to the State Defendants' Motion to Dismiss the First Amended Complaint (ECF 66), and specifically to the request in that Motion, at page 41 of the supporting memorandum (ECF 66-1), that the Court in the alternative treat the Motion as one for summary judgment and enter summary judgment against me. I have personal knowledge of the matters stated below except where stated on information and belief.

2. The State Defendants filed their Motion with three sworn declarations and documentary attachments that are outside my First Amended Complaint: the Declaration of Timothy Haven with the Letter of Resignation and General Release and related attachments (ECF 66-3), the Declaration of R. Suzanne Banister with the paralegal job posting (ECF 66-4), and the Declaration of Warren Hedges with the Equal Employment Opportunity Commission notices

(ECF 66-5). If the Court considers the sworn declarations, or any other matter outside the pleadings that is not integral to the First Amended Complaint, the Motion is converted to one for summary judgment under Federal Rule of Civil Procedure 12(d).

3. No discovery has occurred in this action. No conference under Federal Rule of Civil Procedure 26(f) has been held, and no scheduling order has issued. The individual State Defendants and the Circuit Court for Baltimore City were not represented by counsel until June 18, 2026 (ECF 64), the Motion was filed four days later on June 22, 2026 (ECF 66), and the Clerk's Rule 12/56 notice issued on June 23, 2026 (ECF 67). I have served no interrogatories, requested no documents, and taken no depositions, because no discovery period has opened.

4. For the specified reasons stated below, I cannot present facts essential to justify my opposition to summary judgment on the fact-bound grounds of the Motion. The facts I would need are within the exclusive or superior possession and control of the Defendants, and on the central issues of this case, motive and voluntariness, the evidence lies with the Defendants. I respectfully request that, if the Court converts the Motion, it defer or deny summary judgment and permit discovery under Rule 56(d)(1) and (2). I identify the specified facts and the discovery needed as follows.

5. Release voluntariness. I have set out on personal knowledge the facts I do have bearing on the involuntariness of the Letter of Resignation and General Release, including the pre-printed twenty-four-hour deadline, the Friday afternoon in which it ran, my unsuccessful attempts to reach counsel, and my same-day written protest. I cannot present the internal, comparative and corroborating facts necessary to test the State's contrary showing without discovery of: the provenance and drafting history of the pre-printed form; other executed exemplars of the same form; the internal communications among Defendants Morrissey, Wilson, Haven, and

Wisniewski concerning the decision to terminate me and to offer resignation in lieu of termination; the source and fixed character of the twenty-four-hour deadline that appears in pre-printed type on the form; and any records showing whether other separating employees were afforded more than twenty-four hours to consider a comparable release. These facts bear directly on whether my execution of the release was knowing and voluntary, an issue the Haven Declaration places in dispute and that the State's own Attachments C and D do not resolve in the State's favor. These records are in the Defendants' exclusive control. I also require the Judiciary's separation reason-code table and any guidance governing the selection of a separation code, and the records showing what consideration, if any, was furnished to me for the release.

6. The reason for my termination. I cannot present the facts establishing the actual reason for my termination without discovery of: the actual March 5, 2025 charging documents at issue; the Judicial Information System audit trail for those records; all communications between Defendants Wisniewski and Haven, and among the Commissioner-era supervisors, concerning the events of March 4, 2025 through March 7, 2025; and the duty-assignment and Judicial Information System activity records showing the duties I was permitted to perform, and the release and charging determinations I continued to process, from March 5, 2025 through March 7, 2025. The Haven Declaration states that "[d]ue to" the March 5, 2025 incident "management decided to separate Mr. Wright" (para 14); the employer's own records of what duties and authority I retained after that asserted decision bear on when the decision was actually made and on what basis. The Haven Declaration relays the asserted reason secondhand from Defendant Wisniewski, who filed no declaration, and the State's own papers assert more than one reason. The primary records and the decisionmakers' communications are needed to determine the actual reason, and they are in the Defendants' control. I also require the policies, procedures, directives

and training materials governing a commissioner's handling of a charging document on which probable cause is in question, including any directive concerning contact with the charging officer, and the Commissioner's Procedure Manual, including the edition of the District Court of Maryland's published Charging Language in force between October 1, 2024 and March 7, 2025, and any post orders or administrative directives of the Administrative Office of the Courts stating the conduct standards governing a commissioner's removal. The March 7, 2025 termination letter cites violations of the Maryland Rules without specifying any facts (ECF 66-3, Attachment C), and on March 3, 2025 I wrote to the Director of Commissioners that I "couldn't find anything in the Commissioner Manual about this" (ECF 66-3, Attachment A). The governing standards are necessary to test the cause asserted, and they are the employer's records. I also require the Judicial Information System audit trail for the deletion and re-entry of my own charging determination alleged in the First Amended Complaint at paragraphs 25 and 28, and the original and the substitute charging documents for that determination. I further require all communications between the officer who submitted the March 5, 2025 on-view charging document and any employee or official of the Maryland Judiciary, including any Commissioner, Managing Commissioner, Administrative Commissioner, or member of management, concerning me, that matter, or any charging document I reviewed. The Motion asserts that my contact with the submitting officer compromised my neutrality and required my separation. I possess no communications between that officer and any member of Judiciary management. If any member of Judiciary management communicated with that officer about this matter, that communication bears directly on the reason asserted for my termination and it is within the Defendants' exclusive control. I further require the records governing and documenting the deletion of any case or determination of mine from the Judiciary's case management systems, including the Judiciary

directive on case deletions and any successor policy, the deletion form required by that directive, the supervisor approval it requires, the confirmation it requires that there was no other way to correct the case, the email the directive requires be sent, and the audit record of any such deletion. The directive circulated to Commissioners states that it is based on an Office of Legislative Audits and Internal Audit finding and that compliance is mandatory. Whether that procedure was followed as to my determination is a fact I cannot establish without the employer's records. I further require all communications between the Maryland Judiciary and the Office of the State's Attorney for Baltimore County, and between the Maryland Judiciary and any District Court administrative judge, concerning charging standards, the completeness requirements for charging applications and their cover sheets, or the handling of police drop-off applications. During my employment, when I asked for the written basis of an instruction I had been given, I was at times told that a practice was what the State's Attorney's Office wanted or what the administrative judge wanted, and I was not shown any written source. Whether such communications exist, and what they say, bears directly on whether the standard I was disciplined for questioning existed in writing at all, and those records are in the Defendants' possession, not mine.

7. **Employer status.** I cannot present the facts establishing the joint-employer relationship without discovery of the supervision, payroll, discipline, work-assignment, account provisioning, and Judicial Information System authorization records of the Administrative Office of the Courts, the District Court, and the Circuit Court for Baltimore City, and of the Baltimore City payroll and Workday records that the City's own custodian has sworn reflect my employment. These records are needed to develop the control analysis the Motion resolves on a single declaration, and they are in the Defendants' possession. I also require discovery of the records of

the Judiciary Human Resources Division's involvement in my termination, including any referral of the termination to that Division, the identity of the persons who participated, the materials furnished to them, any review of the legality of the termination, whether the termination was approved, any exception invoked under the Judiciary's at-will employment policy, and any decision that a consultation was unnecessary. These records bear directly on the Motion's assertion that neither the Administrative Office of the Courts nor its head had authority to terminate me, and they are in the Defendants' control.

8. **Retaliatory motive.** I cannot present the facts establishing retaliatory motive without discovery of the decisionmakers' communications concerning the removal of my job duties, the posting and funding of the position that assumed the duties removed from me, the handling of my accommodation requests, and the discipline imposed after an accommodation had been granted, together with the identity and knowledge of each decisionmaker. This includes the basis for the characterization in paragraph 7 of the Banister Declaration that my accommodation request was referred to Human Resources, and what was in fact done with it. Motive is the central issue on the retaliation counts, and the evidence of motive lies with the Defendants.

9. **Comparator treatment.** I cannot present the facts establishing how a similarly situated employee was treated without discovery of the internal records concerning the disposition of the comparator matter identified in the First Amended Complaint, including any investigation, discipline, or non-discipline of that employee. Those personnel records are in the Defendants' exclusive control. I further require the records establishing who holds and exercises disciplinary authority over Commissioners in Baltimore County, District 8, including any policy, directive, delegation, or practice designating the official who imposes or approves discipline, and the disciplinary records for conduct comparable to that asserted against me, including matters

involving a Commissioner's relationship with a law enforcement officer. Whether the same official decided the comparator matter and my separation is a fact I cannot establish without these records, and it bears directly on whether the comparison is between similarly situated employees. I further require the Commissioner's Procedure Manual, the Maryland Judiciary employee handbook provisions governing employee conduct and discipline, and any District 8 post orders or administrative directives, to the extent any of them distinguishes between a concern raised internally within the office and a written complaint received from outside the office as a predicate for discipline or removal. My Managing Commissioner described such a distinction to me in explaining why my December 25, 2024 report was not acted upon. Whether that distinction exists in the Defendants' written policies is a fact I cannot establish without their records, and it bears both on the disposition of the comparator matter and on the stated grounds for my own separation.

10. Promotion and selection records. I cannot present the facts establishing the reasons I was not selected for the promotional positions I sought in 2024 without discovery of the selection records. In 2024 I applied for three Commissioner-track positions: Administrative Commissioner for Harford County (Job Opening ID 11652), Administrative Commissioner for District 10 (Job Opening ID 11801), and Commissioner Education and Training Coordinator (Job Opening ID 11940). For the Commissioner Education and Training Coordinator position, the process included a pre-interview presentation exercise scored on content, design, and presentation, followed by an interview at which the presentation was used, and that posting stated that the application package would be used to determine eligibility, qualifications, and ranking. On March 6, 2026 and again on March 12, 2026 I requested in writing the evaluation criteria, interview documentation, selection records, and decision communications for those positions.

What I received was limited to hiring and onboarding materials, and the personnel records produced to me in April 2026 contain no ranking, no scoring instrument, no panel notes, and no stated reason for my non-selection. The evaluation materials, interviewer communications, and announcement records for these three selections are in the Defendants' exclusive control. The First Amended Complaint alleges that those materials will establish pretext. FAC paras 33-36, 77.

11. Actual commissioner duties. Should any claim turn on the nature of those duties, including any claim against a party not entitled to Eleventh Amendment immunity, I cannot present the facts establishing the nature of my actual duties as a District Court Commissioner, and the degree of independent judgment those duties permitted, without discovery of the records of my actual duties and of the management directives that constrained my judgment. Whether the acts on which the Motion's quasi-judicial immunity ground rests were adjudicative or administrative turns on my actual duties rather than on the statutory description, and those records are the employer's.

12. **Exhaustion and EEOC processing.** The Motion contends (Ground V), relying on the Hedges Declaration's characterization of my charge as "unperfected," that I did not perfect it and that my "true employer" was not on notice. I cannot present the complete facts of the processing of EEOC Charge No. 531-2025-03965 without discovery of: the Defendants' internal records and communications concerning the EEOC's June 19, 2025 Notice of Charge and the December 19, 2025 Determination and Notice of Rights, including which entities and officials received, routed, or responded to those notices; any position statement or other response the Defendants submitted to the EEOC; and the Defendants' records showing how the employing entities are identified to the EEOC. The Hedges Declaration characterizes the charge as "unperfected," a word that

appears in neither EEOC document he attaches; the records showing what the Defendants actually received and did with the EEOC notices are in the Defendants' control, and the EEOC's own file is obtainable in discovery.

13. Depositions. I cannot present the facts described above without deposing the persons with knowledge of them. The Motion rests on three declarations, and I have had no opportunity to examine any declarant. I require the depositions of Timothy D. Haven, R. Suzanne Banister and Warren Hedges, each of whom submitted a declaration in support of the Motion, and of Whitney Wisniewski and Colleen Ellingson, who were the persons present when the termination letter and the Letter of Resignation and General Release were presented to me on March 7, 2025 and neither of whom submitted a declaration. Their testimony bears on what was said at that meeting, what alternatives if any were offered, whether I requested the twenty-four-hour period that Mr. Haven, who was not present, states I requested, the reason for my separation, and the handling of my accommodation requests. Each is a Defendant or an employee of a Defendant, and their testimony is not available to me without discovery.

14. Each of the facts described above is essential to my opposition, is specified, and is within the Defendants' exclusive or superior possession and control. No discovery has occurred, and I have had no opportunity to obtain these facts. I make this request no later than the deadline for responding to the Motion, as reset by the Court's Order of July 15, 2026 (ECF 78).

15. I therefore respectfully request that, if the Court considers the State Defendants' extrinsic materials and converts the Motion to one for summary judgment, the Court defer consideration of the Motion or deny it, and permit discovery under Federal Rule of Civil Procedure 56(d), before any summary-judgment motion is entertained.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 18, 2026.

Steven Anthony Wright, Pro Se
Phone: (570) 494-8422
Email: stevendiet@gmail.com