IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN ANTHONY WRIGHT, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 25-4220-BAH |
| MARYLAND JUDICIARY, ADMINISTRATIVE OFFICE OF THE COURTS ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Steven Anthony Wright ("Plaintiff") brings suit against the Maryland Judiciary, Administrative Office of the Courts, the Baltimore City Circuit Court, the Mayor and City Council of Baltimore City, Chief Judge John P. Morrissey, Administrative Judge Dorothy J. Wilson, Administrative Judge Audrey J.S. Carrion, Timothy D. Haven, Rachel Bowen, Colleen Ellingson, Whitney Wisniewski, R. Suzanne Banister, Sophia Sanders, and Grant Smoluk (collectively "Defendants").[1] ECF 24 (amended complaint).[2] Plaintiff asserts a variety of claims arising from alleged discriminatory and retaliatory acts surrounding his termination and subsequent re-employment with the court systems of Baltimore County and Baltimore City. *Id.* at 16–21 ¶¶ 68–93.[3]

[1] Plaintiff sues each individual defendant in both their official and individual capacities. ECF 24, at 1. The official role of each defendant is available in the caption of the amended complaint. *Id.*

[2] The unredacted version of this document is located at ECF 18 under seal. The Court will cite to the publicly available version located at ECF 24. The only difference between the two documents is the inclusion of Plaintiff's address.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Pending before the Court is Plaintiff's motion for a preliminary injunction ("the motion"), ECF 44,[4] as well as a variety of other motions the Court will not decide at this time. Defendants filed a response in opposition to the motion, ECF 65, to which Plaintiff replied, ECF 73. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).[5] For the reasons stated below, the motion is DENIED.

## I. **BACKGROUND**

The Court assumes familiarity with its prior memorandum opinion and order dated March 11, 2026, adjudicating Plaintiff's second temporary restraining order ("TRO") request. *See* ECF 23.[6] Plaintiff alleges that he was "unlawful[ly] terminat[ed]" from his role as district court commissioner in the Maryland district courts of Baltimore County, Carroll County, and Howard County on March 7, 2025. ECF 24, at 3 ¶ 5, at 7 ¶ 19. Plaintiff avers that his termination occurred three days after he disclosed his disabilities to his supervisors and testified as a witness in an "official proceeding regarding a bail bond forgery." *Id.* at 16 ¶ 69, at 18 ¶ 79. He therefore contends that his termination was unlawfully based on his disability status, his testimony, or both. *Id.*

---

[4] The unsealed, redacted version of ECF 44 is available at ECF 53-9.

[5] Although Plaintiff requested a hearing on the motion, *see* ECF 44, at 5, "[b]ecause the Court is able to fully consider the motion for a preliminary injunction on the parties' filings and declines to issue an injunction, no hearing on the motion is necessary." *Silver Star Props. REIT, Inc. v. Hartman vREIT XXI, Inc.*, Civ. No. BAH-23-2720, 2024 WL 308945, at *5 (D. Md. Jan. 26, 2024) (citing *Rullan v. Goden*, Civ. No. CCB-17-3741, 2023 WL 3093406, at *1–3 (D. Md. Apr. 26, 2023), *reconsideration denied*, 2023 WL 5674156 (July 27, 2023)); *see also Doe v. Bd. of Regents of Univ. Sys. of Md.*, Civ. No. SAG-25-03239, 2025 WL 2897343, at *1 n.3 (D. Md. Oct. 10, 2025) ("This Court has previously recognized that Rule 78(b) provides for, and Rule 65 does not explicitly restrict, a court's discretion to determine a preliminary injunction motion on briefs, without oral hearings." (citing *Fundamental Admin. Servs., LLC v. Anderson*, Civ. No. JKB-13-1708, 2015 WL 2340831, at *1 (D. Md. May 13, 2015)).

[6] Also available at *Wright v. Md. Judiciary, Admin. Off. of the Cts.*, Civ. No. BAH-25-4220, 2026 WL 691637 (D. Md. Mar. 11, 2026).

After his termination, Plaintiff began a new role within the Maryland court system as an administrative paralegal on May 30, 2025. *Id.* at 12 ¶ 49. He alleges that after he initiated this lawsuit by filing the original complaint on December 19, 2025, he began to experience what he characterizes as retaliatory and discriminatory adverse employment actions. *Id.* at 13–14 ¶¶ 53–61. In particular, Plaintiff contends that he has been "stripped [ ] of all core paralegal review duties," excluded from a "Microsoft Teams operational group" within his department, and has suffered alleged defects in the decision-making process for his requested Americans with Disabilities Act ("ADA") accommodations. *Id.* at 14–15 ¶¶ 58–59, 66.

The motion contains additional alleged adverse employment actions, such as a letter of warning from Plaintiff's direct supervisor dated May 20, 2026 ("May 20 Letter") advising Plaintiff that he cannot dispense legal advice and directing him to "cease and desist from telling domestic violence petitioners they cannot file petitions" in the court. *See* ECF 44-1, at 3 (May 20 Letter); *see also* ECF 44-22, at 8 (memorandum of law). Plaintiff alleges that following his receipt of the letter of warning he was moved to a different workstation that does not contain the documents necessary to complete his responsibilities and is "accessible only via elevators that everyone is forced to use[,] with one that has not been inspected since 2017 and that has been the subject of multiple repair notices." ECF 44-22, at 8; ECF 44, at 3 ¶ 7. Plaintiff avers that Defendants also imposed a "compliance deadline of June 1, 2026, that is structurally impossible to meet given the operational circumstances Defendants themselves created."[7] ECF 44, at 1 ¶ 1. The amended complaint contains thirteen claims, but Plaintiff appears to rest his request for a preliminary injunction on Count III, "ADA [f]ailure to [a]ccommodate and [i]nteractive [p]rocess"; Count VII, First Amendment retaliation brought under 42 U.S.C. § 1983; and Count IX, post-filing retaliation and constructive discharge. ECF 24 at 16–17 ¶¶

[7] It is unclear from the record what obligations the compliance deadline imposed. *See generally* ECF 44.

72–73, at 18–19 ¶¶ 80–81, 84–85; *see also* ECF 44-22, at 11–14 (raising likelihood of success on the merits arguments that appear to relate to these claims).

Plaintiff has twice moved for a TRO, and both motions were denied. *See* ECF 12; ECF 23. Plaintiff now moves for a preliminary injunction, *see* ECF 44, seeking a range of remedies, including among other requests, the rescission of the May 20 Letter, the engagement of an independent ADA coordinator, relocation to a more favorable workstation, and a requirement that Defendants provide Plaintiff with written notice at least 48 hours in advance of "any disciplinary or adverse personnel action against Plaintiff that is based on, or arises from, conduct related to Plaintiff's accommodation requests, EEO complaints, or this litigation." ECF 44-25, at 2–3 ¶¶ 1–11 (proposed order). Defendants opposed the motion, ECF 65, and Plaintiff filed a reply, ECF 73.[8]

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, at 689–90 (2008)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). To succeed on a motion for a preliminary injunction, a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery*

[8] Plaintiff also filed a supplement to his motion. ECF 57. The Court notes that Plaintiff did not file a motion for leave to supplement, but in any event will construe Plaintiff's filing as such and deny the motion, "because the supplemental exhibits"—describing a disciplinary letter similar to the one Plaintiff describes at length in the motion, *see generally* ECF 57—"'will not aid in this Court's decision' whether to grant" the preliminary injunction. *Rucker v. Branch Banking and Tr. Co.*, Civ. No. GJH-20-0881, 2021 WL 962516, at *1 n.1 (D. Md. Mar. 14, 2021) (quoting *Styles v. Triple Crown Publ'ns*, Civ. No. WDQ-11-3759, 2012 WL 1964443, at *2 (D. Md. May 30, 2012)).

*Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (citing *Winter*, 555 U.S. at 20) (alteration in *Centro Tepeyac*). "To secure a preliminary injunction, a plaintiff must 'make a "clear showing" that [he is] likely to succeed at trial, [but he] need not show a certainty of success." *Ass'n of Am. Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 388 (D. Md. 2022) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)).

## III. ANALYSIS

### A. Likelihood of Success on the Merits[9]

#### 1. Plaintiff has not demonstrated a likelihood of success on his disability-based claims.

The Court previously noted that "to the extent Plaintiff seeks preliminary injunctive relief from officials of the State of Maryland, questions of sovereign immunity would prevent a finding of likelihood of success on the merits." *See* ECF 23, at 9 n.6 (citing *Tall v. P'ship Dev. Grp., Inc.*, Civ. No. RDB-15-3352, 2016 WL 1696466, at *5 (D. Md. Apr. 28, 2016), *aff'd*, 669 F. App'x 679 (4th Cir. 2016); *McCray v. Md. Dept. of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014)). Plaintiff contends that his claims are not barred by sovereign immunity because he seeks only prospective injunctive relief and Defendants' immunity is therefore waived under the ADA and *Ex parte Young*, 209 U.S. 123 (1908), and additionally argues that his Rehabilitation Act claims parallel his ADA claims and permit him

[9] As an initial matter, very few of the specific acts Plaintiff challenges or seeks to enjoin by the present motion are alleged in the amended complaint. *See* ECF 44-25 (proposed order) (seeking an order addressing various actions that took place after the filing of the amended complaint in March 2026); *see generally* ECF 23. "[A] plaintiff seeking preliminary injunctive relief must demonstrate 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *White v. Morrell*, No. 9:24-cv-03821-JDA, 2025 WL 3705217, at *6 (D.S.C. Dec. 19, 2025) (quoting *Omega World Travel, Inc. v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997)). Plaintiff contends that the events giving rise to the present motion are part of "an institutional escalation event," but does not provide a more specific theory connecting the present claimed injuries with the harms alleged in the complaint. ECF 44-22, at 1. Although Plaintiff has not drawn a clear relationship between the events described in the motion for a preliminary injunction and the alleged harms included in the complaint, the Court affords Plaintiff a generous construction as a pro se litigant and proceeds with the analysis.

the benefit of the Rehabilitation Act's waiver of sovereign immunity. *See* ECF 44-22, at 11. The Court addresses each argument in turn.

Plaintiff appears to rely on Title I of the ADA, which prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).[10] However, as Judge Bennett explained in *Tall*,

> while Congress certainly *intended* for Title I of the ADA to apply to the states, the Constitution does not allow for such broad congressional authority. Eleventh Amendment immunity thus bars suits for money damages under Title I of the ADA in federal court against the states, state agencies (and any sub-agencies therein), and state officials.

2016 WL 1696466, at *5 (emphasis in original) (citations omitted) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364, 374 (2001)). Plaintiff attempts to sidestep this rule by arguing that the *Garrett* bar "is not implicated here because Plaintiff seeks only prospective injunctive relief in this [m]otion." ECF 44-22, at 11. However, *Winter* requires a likelihood of success on the *merits* for a movant to obtain preliminary injunctive relief, 555 U.S. at 20, and Plaintiff ultimately seeks an array of monetary damages. *See* ECF 24, at 22 (requesting "[c]ompensatory damages for lost wages, lost benefits, lost earning capacity, emotional distress, and all other compensable injuries," back pay, and punitive damages); *see also Cho v. Phelan*, Civ. No. RDB-26-0548, 2026 WL 522884, at *15 (D. Md. Feb 25, 2026) ("Absent a showing of a likelihood of success on the merits of at least one claim, this Court cannot grant the extraordinary remedy of preliminary injunctive relief." (citing *Am. Fed'n of Teachers v. Bessent*, 152 F.4th 162, 169 (4th Cir. 2025))). Plaintiff therefore has not established a

---

[10] Plaintiff "pleads in the alternative" liability under Title II of the ADA, ECF 44-22, at 11, which contains a different sovereign immunity waiver, but that provision applies to the "services, programs, or activities of a public entity," not the employment-based claims Plaintiff asserts. *See* 42 U.S.C. § 12132; *see also Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 421 (4th Cir. 2015) ("Based on the text and structure of Title II and the ADA, we agree with the majority of circuits to have considered the question that Title II unambiguously does not provide a vehicle for public employment discrimination claims.").

likelihood of success on the argument that his claims can proceed under the limited waiver of sovereign immunity that exists under Title I of the ADA.

Plaintiff additionally relies on *Ex parte Young*, ECF 44-22, at 11, a Supreme Court case that "allows suits against state officers for prospective equitable relief from ongoing violations of federal law." *Lytle v. Griffith*, 240 F.3d 404, 408–09 (4th Cir. 2001) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)). This exception to sovereign immunity is also limited to prospective injunctive relief, and Plaintiff's ability to establish a likelihood of success on the merits therefore fails on the same grounds as his arguments regarding the ADA waiver. *See Caldwell v. Nottoway Cnty*, No. 3:22-cv-636–HEH, 2023 WL 4850156, at *8 (E.D. Va. July 28, 2023) ("Back pay and benefits, compensatory damages, and punitive damages are all retrospective, monetary relief and barred under *Ex parte Young* doctrine."); *see also Williams v. Univ. of Md. College Park*, Civ. No. PJM-22-131, 2023 WL 5570196, at *2 (D. Md. Aug. 29, 2023) (explaining that "the *Ex parte Young* doctrine does not extend to cases where plaintiffs seek monetary damages from state officials acting in their official capacity").

Finally, Plaintiff contends that his section 504 Rehabilitation Act claim provides its own sovereign immunity waiver which should, in Plaintiff's view, cover his ADA claims as well, since "[s]ection 504 standards parallel ADA Title I standards." ECF 44-22, at 11. "The Fourth Circuit has held 'that state agencies that knowingly and willingly accept clearly conditioned federal funding validly waive their Eleventh Amendment immunity with respect to claims for damages under § 504 of the Rehabilitation Act.'" *Scott v. Malone*, Civ. No. JRR-25-1587, 2026 WL 380533, at * 7 (D. Md. Feb. 11, 2026) (quoting *Spencer v. Earley*, 278 F. App'x 254, 259 n.3 (4th Cir. 2008)). Additionally, the Fourth Circuit has explained that "[t]o the extent possible, we construe the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). However, the two statutes do not provide identical causes of action—"[a] crucial distinction

between the ADA and the Rehabilitation Act is found in the third element . . . that is, causation." *Coursey v. Univ. of Md. Eastern Shore*, 577 Fed. App'x 167, 174 (4th Cir. 2014).

Despite the possibility of collecting damages against an otherwise-immune sovereign under the Rehabilitation Act, Plaintiff has not drawn any connection between his substantive arguments regarding success on the merits and his particular Rehabilitation Act claim. *See* ECF 44-22, at 12–14. Plaintiff's arguments at subsections 1 and 4 of the likelihood of success on the merits portion of his brief invoke specific ADA subsections and make no mention of the Rehabilitation Act. *Id.* Subsections 2 and 3 do not refer to *any* of Plaintiff's particular claims, and the case law Plaintiff cites in support of those arguments does not clarify the issue, since none of the cases deal with ADA or Rehabilitation Act claims. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 138 (2000) (analyzing Age Discrimination in Employment Act claim); *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004), *abrogated in part by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009) (same); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999), *abrogated by Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024) (analyzing Title VII claim); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 372 (4th Cir. 2004), *abrogated by Muldrow*, 601 U.S. 346 (same); *see also* ECF 44-22, at 12–13 (citing each of those cases in likelihood of success analysis). In order to warrant preliminary injunctive relief, the movant must draw a connection between the claim upon which they are likely to succeed and the relief sought. *See Byrd v. N.C. Dept. of Health and Hum. Servs.*, No. 1:23CV320, 2024 WL 624047, at *3 (M.D.N.C. Feb. 14, 2024) (explaining that "[i]njunctive relief . . . must be tailored to remedy the specific harm alleged" (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009)); *see also Alston v. Dept. of Health*, Civ. No. PWG-18-2361, 2019 WL 4447234, at *5 (D. Md. Sep. 17, 2019) ("The injunction must be tailored to the Court's finding of discrimination."). Plaintiff has not made that showing here.

2. <u>Plaintiff has not shown a likelihood of success on his First Amendment claims.</u>

"A plaintiff seeking to assert a § 1983 claim on the ground that he experienced government retaliation for his First Amendment-protected speech must establish three elements: (1) his speech was protected, (2) the 'alleged retaliatory action adversely affected' his protected speech, and (3) a causal relationship between the protected speech and the retaliation." *Mathis v. McDonough*, Civ. No. ELH-13-2597, 2015 WL 3853087, at *28 (D. Md. June 19, 2015) (quoting *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015)).

Plaintiff's First Amendment claim rests in part on his allegation that he disclosed an internal directive outlining his employer's requirements to petition for a temporary protective order to the Baltimore Banner on May 13, 2026. ECF 44-24, at 2 ¶ 10, at 3 ¶ 14 (Plaintiff's declaration); ECF 44-22, at 14. The Supreme Court explained in *Connick v. Myers* that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. 138, 147 (1983). Plaintiff contends that the disclosure was on "a matter of public concern" since it related to "the institutional treatment of domestic violence petitioners by a state court." ECF 44-22, at 14. Courts must consider "the content, form, and context of a given statement" to determine whether it pertains to a matter of public concern. *Connick*, 461 U.S. at 147–48. "As to content, the Court cautioned against presuming 'that all matters which transpire within a government office are of public concern.'" *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (quoting *Connick*, 461 U.S. at 148). "To determine the protected status of an employee's speech, *Connick* directed us to scrutinize the comments to assess whether they are intended 'to evaluate the performance of the office'—which would merit constitutional protection—or merely 'to gather ammunition for another round of controversy' with superiors—which would not." *Id.* While Plaintiff seeks to frame the content of the disclosure

as broadly relating to the court's treatment of domestic violence petitioners, the precise nature of Plaintiff's dispute—whether or not "biological children's full names and dates of birth be added to the petition at the bottom of page 1 and on the Addendum (page 4) of CC-DC-DV-001," ECF 44-24, at 2 ¶ 10—is narrow in scope and appears more pertinent to Plaintiff's ongoing dispute with his supervisors over his desire to strictly adhere to written directions. *See, e.g.*, ECF 24, at 14 ¶ 55 (seeking, among other accommodation requests, "protection from being required to implement practices inconsistent with the Maryland Rules without written authorization"). Plaintiff has not identified any case law supporting his position that his disclosure was on a matter of public concern, and the Court finds that he is unlikely to succeed on the merits of this argument.

Plaintiff also appears to rest his First Amendment claim on his contention that the May 20 Letter imposes "a prior restraint on future protected petitioning." ECF 44-22, at 15. The letter instructs Plaintiff that "[o]nce a detailed instructional task sheet is provided to you, the task shall be followed per the written instructions. No back-and-forth emailing regarding the tasks will be read or tolerated." ECF 44-1, at 2. It is unclear what "petitioning" Plaintiff fears will be restrained by this directive. ECF 44-22, at 15. However, the text of the letter appears only to restrict the manner in which Plaintiff receives and executes instructions from his supervisors. The type of speech restricted by the letter of warning is likely not a "matter of public concern," as is required for government employee's speech to be protected under the First Amendment. *See Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 600 (2008) ("[T]he First Amendment protects public employee speech only when it falls within the core of First Amendment protection—speech on matters of public concern."). "Government employers enjoy considerable discretion to manage their operations, and the First Amendment 'does not require a public office to be run as a roundtable for employee complaints over internal office affairs.'" *Liverman v. City of Petersburg*, 844 F.3d 400, 406 (4th Cir. 2016) (quoting *Connick*,

461 U.S. at 149). Plaintiff therefore cannot establish a likelihood of success on this aspect of his First Amendment claim either.

**B. Irreparable Harm**

In the absence of likelihood of success on the merits, the Court need not analyze any further *Winter* factors. *See Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018). However, the Court briefly addresses irreparable harm without reaching the final two factors. The second *Winter* factor requires a showing of irreparable harm. "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). Additionally, to be considered irreparable, the harm must be such that "it cannot be fully rectified by the final judgment after trial." *Maryland v. Noem*, 823 F. Supp. 3d 560, 570 (D. Md. 2026) (internal quotations omitted) (quoting *Mountain Vally Pipeline, LLC*, 915 F.3d at 216). "Harm is not considered irreparable if it can be compensated by money damages during the normal course of litigation." *McGean v. Montgomery Cnty., Md.*, 87 F.3d 1309 (Table) (4th Cir. 1996) (citations omitted).

Plaintiff argues that he is suffering ongoing irreparable harm in the form of "progressive discipline," "structural conditions" making Plaintiff's "compliance impossible," an at-the-time imminent compliance deadline, a prohibition on "back-and-forth emailing" that allegedly chills Plaintiff's protected activity, and finally relocation to a workstation that "interacts with Plaintiffs documented PTSD, OCPD, ADHD, and Autism Level 1 in ways that money cannot remedy." ECF 44-22, at 15. Plaintiff additionally contends that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.*

Aside from the alleged loss of First Amendment freedoms,[11] the workplace harm Plaintiff describes is not of the type that courts have found irreparable. *See Rydie v. Biden*, 572 F. Supp. 3d 153, 161–62 (D. Md. 2021), *reversed on other grounds*, Civ. No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) (explaining that a "[f]inding that Plaintiffs' employment-based harms are not irreparable is also consistent with various recent decisions in similar cases" and collecting cases). Rather, these alleged harms are the type of injury that monetary damages were created to redress. *See* 42 U.S.C. §§ 1981a(2), 1981a(b)(3) (describing the availability of "compensatory damages . . . for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" for an action brought under the ADA); *see also Johnson v. Sullivan*, 764 F. Supp. 1053, 1066 (D. Md. 1991) (noting that "the Supreme Court did authorize the award of back pay under the Rehabilitation Act as an equitable remedy" (citing *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 630 (1984))); ECF 24, at 22 (seeking a variety of remedies, including compensatory damages and back pay).

Because Plaintiff has failed to make a clear showing on the first two *Winter* factors, the Court need not address the remaining two factors. *See Henderson for Nat'l Lab. Rels. Bd.*, 902 F.3d at 439 (explaining that the *Winter* test requires the moving party to satisfy each factor, and "the Court indicated that it was unnecessary to address all four factors when one or more had not been satisfied" (citing *Winter*, 555 U.S. at 20)).

[11] The Fourth Circuit has explained that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Doe by and through Next Friend Doe v. Mast*, 173 F.4th 524, 533 (4th Cir. 2026) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). However, since the Court has already found that Plaintiff has not established a likelihood of success on his First Amendment claims, a preliminary injunction may not be granted on that basis. *See supra* Section III.A.2. And in any event, it is unclear how the requested relief is tailored to the First Amendment harms Plaintiff alleges. *See Byrd*, 2024 WL 624047, at *3 (explaining that "[i]njunctive relief . . . must be tailored to remedy the specific harm alleged" (citations omitted)).

## IV. CONCLUSION

For the foregoing reasons, the motion is **DENIED**. A separate implementing Order will issue.

Dated: November 9, 2026

/s/
Brendan A. Hurson
United States District Judge